UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------- x

IN RE MDL 1720 DAMAGES CLASS SETTLEMENT DISPUTES

REPORT AND RECOMMENDATION OF SPECIAL MASTER

------------------------------------------------------- x

1:24-MC-03415-BMC-JAM

IN RE MDL 1720 DAMAGES CLASS SETTLEMENT DISPUTE CONFLICT ID NUMBERS:

1:26-MC-02692-BMC-JAM

187082 (COMMACK HOTEL LLC),
187083 (HILLWOOD HOTEL LLC),
187084 (HARMONY HOTEL LLC),
187106 (HAMILTON HOSPITALITY INC.),
187114 (MEADOWLANDS HOTEL LLC, and
187130 (PALMER HOTEL LLC).

------------------------------------------------------- x

**Parties**:

Class Action Associates LLC ("CAA")

Optium Capital, LLC ("Optium")

**Representatives**:

Howard Rothschild
Class Action Associates LLC
580 Fifth Avenue, Suite 820
New York, NY 10036
212-300-6938
HRothschild@classactionassociates.com
Representative of CAA

Hugh Alexander, General Counsel
Optium Capital, LLC
620 Newport Center Drive, Suite 670
Newport Beach, CA 92660
415-805-8137
claim@optiumcapital.com
Representative of Optium

I. Background

The parties to the conflicts listed in the caption have both registered with the Class Administrator claims for a share of the proceeds of the damages class settlement fund in *In re Payment Card Interchange Fee Merchant Discount Antitrust Litigation*, Dkt. no. 05-MD-1720 (E.D.N.Y.) ("*MDL 1720*") arising out of the payment card transactions of the following six merchants, each identified by name and the last four digits of its Taxpayer Identification Number ("TIN"): Commack Hotel LLC (1689), Hillwood Hotel LLC (6193), Harmony Hotel LLC (3237), Hamilton Hospitality Inc. (5497), Meadowlands Hotel LLC (0601), and Palmer Hotel LLC (1741). Each of those merchants is a member of the *MDL 1720* damages settlement class, and all are owned by HMB Management, Inc. ("HMB").

On November 3, 2021, HMB sold the merchants' *MDL 1720* damages claims to Optium. *See* Letter from Optium dated August 28, 2025 ("Optium 8/28/25") at 1 & Ex. A (Claim Purchase Agreement dated Nov. 3, 2021 ("Optium CPA"). In doing so, HMB represented and warranted that it had "good, valid and marketable title" to those claims and sold them "free and clear of any mortgage, pledge, lien, security interest, claim, set-off or encumbrance of any kind or nature." Optium CPA § 3.3. On the same date, HMB executed a Notice of Transfer and Assignment of Right addressed to the Class Administrator stating that it had "absolutely, unconditionally and irrevocably transferred and assigned to [Optium] all of [HMB's] rights, title and interest in and to or associated with, or connected in any manner to, any claim against and settlement, judgment or recovery of funds or other consideration … arising from the class action litigation of [*MDL 1720*]." *Id*. Ex. B. The Notice referred to an attached exhibit listing the specific merchants whose claims HMB had transferred to Optium. *Id*. Optium has provided the

relevant excerpt of that exhibit, which lists nine entities, including all six of the merchants at issue here. *Id.* Ex. C.

CAA contends that (1) "any rights Optium acquired are expressly subject to HMB's binding obligations to CAA[,]" and (2) "[i]n addition, CAA holds a 25% interest in those claims." Letter from CAA dated September 17, 2025 ("CAA 9/17/25") at 1. CAA has not submitted any document that purports either to impose on HMB any binding obligations to CAA or to convey a share of HMB's *MDL 1720* damages claims to CAA. The only document in the record before me evidencing any relationship between CAA and HMB is a "Letter of Agency" dated August 31, 2013, and executed by HMB's Director of Finance ("LOA").[1] That letter reads as follows, in pertinent part:

> 1. HMB … and all of its affiliated entities and/or related entities … (collectively, "Claimant") hereby appoints [CAA] as its true and lawful exclusive agent and attorney-in-fact, granting full authority to CAA to process, sign and file Claimant's present and subsequent [*MDL 1720* settlement claims]. Claimant authorizes CAA to communicate, receive all correspondence., communications, payments and other items, from Claims Administrator with regard to the Settlement on behalf of Claimant.
>
> 2. Claimant authorizes CAA to communicate. retrieve all documentation, credit card transaction statements and other relevant data from Claimant or other[s] … that is necessary or appropriate in order to file claims for the Settlement. This Letter of Agency authorizes, but does not require, CAA to take any actions for Claimant. Any person or entity that receives a copy of this Letter of Agency is authorized to release to CAA credit card transaction statements and other relevant data.

LOA at 1. The letter's second and last page sets out a "List of Hotels Owned By HMB" that includes all six of the merchants whose TINs are at issue in the instant conflict. *Id*. at 2.

[1] In its letter to me, CAA asserts that it "pre-registered HMB's claim years before Optium's purchase" but provides no supporting evidence. *See* CAA 9/17/25 at 1. The Class Administrator has provided me a copy of the LOA, which CAA submitted to it on November 13, 2023.

The record includes no underlying contract between CAA and HMB, and the Letter of Agency explicitly provides that it "does not require CAA to take any actions" on HMB's behalf. Nevertheless, for purposes of analysis, I assume that at some point before HMB sold its *MDL 1720* damages claims to Optium, HMB entered into an agreement with CAA. I further assume for purposes of analysis that the assumed agreement provided that in the event of a class settlement in *MDL 1720*, CAA would be obliged to file HMB's claims with the Class Administrator in exchange for 25 percent of the resulting recovery.

## II. Analysis

### A. CAA's Agreement With HMB Does Not Convey Ownership

Most of CAA's letter to me argues that Optium is an assignee of HMB's *MDL 1720* claims, and as such,

> [HMB] cannot obtain greater rights than the assignor possessed. Because HMB had already contracted with CAA, Optium's acquisition is necessarily subject to that contract. CAA is not seeking to impose obligations on a stranger; it is exercising its contractual rights as the duly authorized filer under an agreement that, by its terms, binds successors – an arrangement long recognized and enforced by the courts.

CAA 9/17/25 at 1. Whatever its legal merit, that argument is inapposite.

Before CAA can benefit from establishing that Optium has no greater rights than HMB had after entering into its agreement with CAA it must establish what those rights are and how the agreement with HMB limited them. It has not done so. CAA merely asserts without explanation that it "holds a 25% interest in" the relevant settlement claims. *Id*. The contract CAA describes, however – and that I assume to exist as described, notwithstanding the absence of supporting evidence – does not purport to convey ownership interest in the claims. Instead, it is "a valid written agreement under which *HMB appointed CAA to file and administer claims on HMB's behalf*." *Id*. (emphasis added). CAA further asserts – and again, I assume – that its

"agreement with HMB was supported by consideration, fully executed, and enforceable." *Id.* CAA has not identified any contractual term that conveyed ownership of 25 percent of HMB's *MDL 1720* damages claims. It has done no more than assert the existence of an agreement under which HMB appointed CAA to perform a service. The LOA supports that understanding: its sole description of CAA's role with respect to HMB and HMB's *MDL 1720* damages claims is that of an "agent" authorized to act on HMB's behalf in prosecuting those claims with the Class Administrator.

The evidentiary record easily establishes that Optium is the owner of whatever *MDL 1720* damages claims HMB owned as of November 3, 2021 (the date of the Optium CPA). CAA does not appear to contest that point. Instead, CAA argues that what HMB owned and Optium purchased in 2021 was only 75 percent of the claims HMB originally owned, and that CAA acquired the remaining 25 percent in 2013. The record does not support that assertion. I therefore respectfully recommend that the Court find that Optium, as HMB's successor in interest, is the sole owner of the *MDL 1720* damages claims at issue in this conflict.

B. <u>The Claims' Owner Has the Power to Decide Who May File Its Claims</u>

It is blackletter law that a principal generally has the power to revoke an agent's authority, regardless of the existence of any contract between the two under which that revocation may constitute a breach. *See, e.g.*, *United Ins. Co. v. World Wide Web*, 2011 WL 1870599, at *2-3 (E.D.N.Y. Apr. 27, 2011) ("a principal has an inviolate right to revoke its agency at any time[;]" if "in doing so, the principal violates its obligations to the agent under their contract, the agent retains the legal recourse of bringing a breach of contract claim") (citing

cases), *report and recommendation adopted* 2011 WL 1843280 (E.D.N.Y. May 16, 2011); Restatement (Third) Of Agency § 3.06 (2006).[2]

Accordingly, as the owner of the relevant claims, Optium has the authority to choose an agent to register those claims on its behalf with the Class Administrator or to do so itself. Regardless of any contractual rights CAA may have as a result of its (assumed) agreement with HMB, it has no power to override Optium's choice of agent. I therefore respectfully recommend that the Court permit Optium, and not CAA, to file the claims at issue here.

C. The Court Should Decline to Review CAA's Potential Contract Claims

As noted above, the resolution I recommend does not resolve any potential contract-based claim CAA may have against Optium or HMB. I conclude that I have no authority as Special Master to determine whether CAA has any such enforceable right and I therefore respectfully recommend that the Court likewise decline to review that question.

In its order approving the damages class settlement, the Court retained jurisdiction over three specified groups of parties: "the members of the Rule 23(b)(3) Settlement Class Plaintiffs, the members of the Rule 23(b)(3) Settlement Class, and the Defendants." *MDL 1720*, Doc. 7818 (the "Final Judgment") ¶ 18. Moreover, it did so only for a specific purpose: "to implement, administer, consummate, and enforce the [Settlement], including any disputes relating to, or

[2] The general rule does not apply when the authority granted to the agent is a "power given as a security." *See*, *e.g.*, *Gov't Guarantee Fund of Republic of Finland v. Hyatt Corp.*, 95 F.3d 291, 300 (3d Cir. 1996). However, a third-party filer's agreement to file a claim on behalf of a merchant in exchange for a portion of the merchant's recovery does not create a power given as a security; it creates no more than a revocable agency relationship. *See* Restatement (Third) Of Agency § 3.12, illus. 4 (2006) ("P develops a mechanical invention and engages A to patent the invention…. P authorizes A to file patent documents on P's behalf…. P agrees … to pay A half of P's profits. Even if A's authority is stated to be irrevocable, A does not hold a power given as security.")

arising out of, the release and covenant not to sue of the Rule 23(b)(3) Settlement Class or any claim for payment from the Class Settlement Cash Escrow Account." *Id*.

CAA is not a plaintiff, class member, or defendant in *MDL 1720*.[3] And while both HMB and Optium have at different times qualified as class members for present purposes (by virtue of owning the pertinent merchants' damages claims), that alone does not mean that the Court reserved jurisdiction over non-party CAA's potential claims against either of them. If the Court adopts the recommendation to resolve the instant conflicts in Optium's favor, resolving CAA's potential contract-based claims against Optium or HMB will not in any way promote the Court's ability to "implement, administer, consummate, and enforce" the settlement agreement. On the other hand, if the Court rejects that recommendation and finds that CAA owns 25 percent of the HMB merchants' damages claims, that will moot any contract-based claims CAA might assert against Optium or HMB.

Either way, the Court will have no reason to review the merits of those claims. Regardless of whether Optium or HMB is deemed liable to CAA for breach of the agreement between CAA and HMB or under quasi-contract theories, Optium will still be entitled to receive a pro-rata share of the settlement funds. A court resolving CAA's potential contract-based claims would merely decide whether some other party (presumably Optium or HMB) must pay CAA an amount calculated with reference to the recovery at issue here as a contingency fee under the terms of the CAA's agreement with HMB. That determination will turn on an issue of contract interpretation under state law (although in the absence of the actual agreement between CAA and HMB, I cannot identify which state's law would apply). It will not hinge on an interpretation of

[3] While CAA may itself be a member of the plaintiff class in *MDL 1720* on the basis of having accepted payments for its services from clients using Visa or MasterCard payment cards, its potential claims against the HMB or Optium would be unrelated to that status.

either the legal issues in *MDL 1720* or the terms of the damages class settlement agreement and it therefore will have no impact on this Court's ability to implement, administer, consummate, or enforce that agreement. *See MDL 1720*, 348 F.R.D. 151, 172 (E.D.N.Y. 2024) (adopting identical reasoning by Judge Marutollo).[4] Accordingly, the Court's reservation of jurisdiction does not apply to CAA's potential contract-based claims against Optium or HMB.

## III. Recommendation

For the reasons set forth above, I respectfully recommend that the Court permit Optium, and not CAA, to file claims on behalf of the merchants listed in the caption. I further respectfully recommend that the Court decline to review any potential claims arising from CAA's agreement to file claims on behalf of HMB.

## IV. Objections

This Report and Recommendation will be served on all registrants who are parties to the instant conflict via the Court's ECF system, and the Class Administrator will also promptly provide a copy to all such registrants. Any interested party shall have 21 days from today's date to file objections to the Special Master's report and recommendation with the Court. Such objections should be filed only on the dispute-specific miscellaneous docket (1:26-MC-02692-BMC-JAM). Any responses to objections may be filed within 21 days thereafter. No replies regarding objections shall be filed without the Court's permission. If any party objects to this Report and Recommendation, the evidence considered by the Special Master in making or

[4] In the cited decision, the Court also adopted Magistrate Judge Marutollo's explanation of why the All Writs Act did not give the Court jurisdiction over a contract dispute between two third-party filers. *Id.* at 168-173. The same reasoning applies with equal force here.

recommending any findings of fact shall be filed on the dispute-specific miscellaneous docket.[5] Such evidence may be filed under seal to protect confidentiality and the identities of claimants, as appropriate. The Court shall review the Special Master's reports and recommendations *de novo*. *See* Revised Order Appointing Special Master, 1:24-MC-03415-BMA-JAM, Doc. 3, ¶ 4.

Dated: June 26, 2026

*/s/ James Orenstein*
Special Master

[5] In preparing this Report and Recommendation, I have considered the following submissions, including their exhibits: (1) Letters from Optium dated August 28, 2025; September 12, 2025; and September 17, 2025; (2) Letter from CAA dated September 17, 2025.