UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------- x

| | |
|---|---|
| IN RE MDL 1720 DAMAGES CLASS SETTLEMENT DISPUTES | REPORT AND RECOMMENDATION OF SPECIAL MASTER |
| | 1:24-MC-03415-BMC-JAM |
| IN RE MDL 1720 DAMAGES CLASS SETTLEMENT APPEALS OF REGISTRANT MONETA ENTERPRISES LLC. | 1:26-MC-03201-BMC-JAM |

---------------------------------------------------------- x

**Parties**:

Moneta Enterprises, LLC, doing business as CourtMoney.com ("Moneta").

Rule 23(b)(3) Class Plaintiffs (the "Class")

**Counsel**:

Joe Helleny, President/CEO
Moneta Enterprises LLC
PO Box 578
Marion, IL 62959
(618) 993-9079
joe@courtmoney.com
Representative of Moneta

Alexandra S. Bernay
Robbins Geller Rudman & Dowd LLP
655 Wests Broadway, Suite 1900
San Diego, CA 92101
(619) 231-1058
xanb@rgrdlaw.com
Class Counsel

I. Background

Between December 18, 2023, and October 29, 2024, Moneta registered a total of 358 Taxpayer Identification Numbers ("TINs") with the Class Administrator seeking to recover proceeds from the damages class settlement in *In re Payment Card Interchange Fee & Merch.*

*Disc. Antitrust Litig.*, 05-MD-01720-BMC-JAM (E.D.N.Y.) ("*MDL 1720*"). The Class Administrator has designated Moneta as a Payment Facilitator with respect to all of those TINs, and Moneta seeks review of that designation. As explained below, I respectfully recommend that the Court find that Moneta is not a class member because the payment processing service it provides does not constitute "acceptance" of payment cards for purposes of the settlement agreement.

Four prior decisions, all arising from the litigation in *MDL 1720*, provide the legal context for this dispute. First, when the Court gave final approval to the proposed damages class settlement, it endorsed the settling parties' definition of the class as consisting of "[a]ll persons, businesses, and other entities that have accepted any Visa-Branded Cards and/or Mastercard-Branded Cards in the United States at any time" during the relevant period, with exceptions not pertinent here. *See MDL 1720*, 2019 WL 6875472, at *31 (E.D.N.Y. Dec. 16, 2019) (the "Approval Order") (quoting Superseding Settlement Agreement ¶ 4) ), *aff'd sub nom. Fikes Wholesale, Inc. v. HSBC Bank USA, N.A.*, 62 F.4th 704 (2d Cir. 2023) ("*Fikes*"). In doing so, the Court overruled an objection from a group of franchisee entities that owned and operated gas stations (the "Branded Operators") that the use of "accepted" might allow their franchisor oil company suppliers to supplant them as class members and that uncertainty about that issue made class membership impossible to determine. *See id*.

Second, in affirming the Approval Order, the Second Circuit likewise rejected the Branded Operators' arguments. After acknowledging the ambiguity of the word "accepted," *Fikes,* 62 F.4th at 715, the court clarified the core question those arguments raised:

> The dispute is not over which group of class members will get the recovery; the dispute is over which claimants are within the class. Whoever "accepted" the payment cards is by definition in the class, gets compensation, and is bound by

> the release; an entity that did not accept the payment is by definition excluded from the class and is not bound by the settlement.

*Id*. at 717. Because that dispute did not implicate the requirement that a class must have ascertainable membership to be certified, the court did not need to decide who – as between franchisors and franchisees – had "accepted" payment cards and were therefore class members. *See id*. at 718.

Third, in *MDL 1720*, 735 F. Supp. 3d 249 (E.D.N.Y. 2024), *reconsideration denied*, 2025 WL 2490442 (E.D.N.Y. Aug. 29, 2025) ("*PayFacs I*"), *aff'd*, 2026 WL 1210154 (2d Cir. May 4, 2026) ("*PayFacs II*"), Judge Brodie ruled that two payment facilitators – Block, Inc., f/k/a Square, Inc. ("Square"), and Intuit Inc. and Intuit Payment Solutions, LLC (collectively, "Intuit") – had not "accepted" payment cards used to pay for goods and services sold by their merchant clients and therefore were not members of the Class. *See id*. 735 F. Supp. 3d at 252. To reach that conclusion, Judge Brodie considered several factors, as summarized on review by the Second Circuit:

> (1) Square's merchant agreement, which states that Square allows merchants "to *accept* Cards from customers," *id.*; (2) Square's Complaint, which alleges that Square "helps Sellers (merchants who utilize Square to *accept* payment cards ...) start, run, and grow their businesses, including by enabling Sellers to *accept* card payments," *id.*; (3) Visa's rules, which distinguish between a "Payment Facilitator" and a "Merchant" and provide that an entity cannot simultaneously act as both a payment facilitator and a merchant, *id.* at 265; (4) Mastercard's rules, under which Sellers "accept" payment cards while payment facilitators facilitate the acquiring of transactions, *id.* at 266; (5) the Square Sellers' own declarations, which describe themselves as businesses that *accept* credit and debit cards, *id.*; (6) the "way real-world transactions are conducted" in which the "cardholder hands her card to a Seller, who 'accepts' it for payment at the point of sale," *id.* at 264; and (7) the incongruence of interpreting the word "accepted" to mean that Square "'accepts' a payment card, but the [Square] Seller 'accepts' cash, for two otherwise identical transactions," *id.* at 265.

*PayFacs II*, 2026 WL 1210154, at *1.[1]

Finally, in *Teleflora*, as in this case, a payment facilitator ("Teleflora") challenged the CA's determination that it was not a class member and therefore ineligible to register a claim. In seeking my review, Teleflora noted a number of ways in which its contracts with merchant clients differed from the contracts between Square and Intuit and their respective clients. I analyzed those arguments in detail and concluded that they either replicated arguments by Square and Intuit that Judge Brodie explicitly rejected in *PayFacs I* or were not meaningfully different for purposes of determining class membership. *See In re MDL 1720 Damages Class Settlement Disputes*, 24-MC-03415-BMC-JAM (E.D.N.Y.), ECF 2 at 5-11 (Mar. 17, 2026). I therefore recommended that this Court find that Teleflora had not accepted payments for its merchant clients' transactions and was not a class member. *Id*. at 17. This Court adopted that recommendation, reasoning as follows:

> Teleflora points to a number of factors that purportedly distinguish its situation from the situation presented in *PayFacs I*. The Court disagrees, and not just because many of these factors were actually considered in *PayFacs I*. Rather, it simply does not matter how many and in what ways Teleflora differs from Square and Intuit because they are the same in the one respect that matters: they don't accept payment cards.

*Teleflora* 2026 WL 1729167, at *2.

Moneta acknowledges that it became a payment facilitator in 2017. Email to Special Master from Moneta President/CEO Joe Helleny dated July 1, 2026 ("7/1/26 Email"). Before

---

[1] In affirming Judge Brodie's analysis, the court observed that "[f]ew persons are in a better position to understand the meaning of a settlement than the district judge who oversaw and approved it[.]" *Id*. at *2 (quoting *W. Alton Jones Found. v. Chevron U.S.A., Inc.*, 97 F.3d 29, 33 (2d Cir. 1996) (cleaned up)). At the time Judge Brodie oversaw and approved the *MDL 1720* damages class settlement, I was the magistrate judge assigned to the case. In that role, I sat on the bench with Judge Brodie for oral argument of the objections to the proposed settlement. *See* MDL 1720, ECF 7774 (minute entry dated Nov. 7, 2019).

2017, Moneta contends that it did not operate as a payment facilitator. *Id*. Moneta does not label the electronic payment processing service it provided during that earlier period in its 7/1/26 Email. However, in the pre-2017 sample contracts attached to that submission, Moneta described itself as a "cash facilitator." *See* CourtMoney.com Management Agreement with the Kane County Sheriff dated May 19, 2009 ("Kane Cty. Agrmt.") § 1; CourtMoney.com Management Agreement with the Carrier Mills [Illinois] Water Dept, dated Nov. 2, 2015 ("Carrier Mills Agrmt.") § 1; CourtMoney.com Contract with the Williamson County Sheriff's Office dated July 21, 2004 ("Williamson Cty. Agrmt.") § 1.

The merchant agencies' agreements with Moneta themselves add some nuance to that description. In particular, each one makes clear that while Moneta serves as a contractor for the client agency, it is the agency itself that receives payment from cardholders. *See* Kane Cty. Agrmt. § 1 ("The payment received by Client is money belonging to the Cardholder and is not CM's money."); Carrier Mills Agrmt. § 1 (same); Williamson Cty. Agrmt. § 1 ("The person wanting to pay a Cash Bail, Fine, or other Fees to THE AGENCY by credit card may do so by calling the COURTMONEY.com office for instructions."). Further, each of the sample agreements reflects that while Moneta processes payments to the agencies made by payment cards, people can make payments to those agencies in other forms that the agreements with Moneta do not address. *See* Kane Cty. Agrmt. § 3 ("The Client agrees to post information regarding the [Moneta] payment option in all location where information about other payment options are available."); Carrier Mills Agrmt. § 3 (same).

Moneta describes the salient aspects of its pre-2017 contracts as (1) Moneta's government agency clients did not pay processing fees to Moneta; (2) Moneta assumed responsibility for interchange fees and related costs and chargebacks; (3) Moneta remitted fees

through a separate processing company; (4) Moneta derived its compensation from service fees that cardholders paid. *See* 7/1/26 Email. It further asserts that the "this matter has already undergone review by the Settlement Administrator" and that the latter found Moneta to be an eligible claimant, approved its claim, and distributed settlement funds to it. *See id*. Based on those assertions, Moneta seeks to reverse the determination that it is not a class member eligible to register the TINs at issue.

## II. Analysis

### A. Class Membership

Moneta argues primarily that it should not be deemed a payment facilitator because it actually paid interchange fees generated by its clients' transactions. It does not, however, address the two most important and interrelated issues: whether Moneta "accepted" payment card transactions within the meaning of the Settlement Agreement with respect to the TINs at issue, and whether, as a result, it is a member of the settlement class. The record before me plainly establishes that Moneta did not accept payment card transactions and is not a class member.

The fact that Moneta submitted interchange payments arising from its clients' transactions does not mean that Moneta replaces those clients as a class member. *See PayFacs II*, 2026 WL 1210154, at *1 ("we reject the … argument that the district court must resolve disputes over class membership by identifying the party that *directly paid* Defendants for payment card processing services") (emphasis in original); *PayFacs I*, 735 F. Supp. 3d at 256-257; *Teleflora R&R*, 2026 WL 825503, at *6. Throughout the relevant period – both before and after 2017 – Moneta offered a payment facilitation service to its clients under which it collected money from cardholders as the clients' agent and paid interchange fees on the clients' behalf that were incurred because of the clients' transactions with cardholders. Moneta's contracts with clients

make it clear that the clients will direct customers offering payment via credit or debit cards to Moneta's website to submit the payment but leaves it to the client to determine the amount and forms of payment the client will accept in exchange for goods and services.

Moreover, as was the case in *PayFacs* and *Teleflora*, Moneta's agreements with its clients govern only the clients' payment card transactions. With regard to "other payment options" that the agreements explicitly acknowledge, *see*, *e.g.*, Kane Cty. Agrmt. § 3, Moneta does not and cannot claim to have accepted payment on the clients' behalf. That fact is fatal to Moneta's position, because "it would strain the meaning of the word 'accepted' to interpret it to mean that [a payment processing service provider] 'accepts' a payment card, but the [service provider's client] Seller 'accepts' cash, for two otherwise identical transactions." *PayFacs I*, 735 F. Supp. 3d at 265; *see also Teleflora R&R*, 2026 WL 825503, at *6 (quoting same).

In *Teleflora*, this Court summed up the relevant holding of the *PayFacs I* decision, "which withstood Second Circuit review." 2026 WL 1729167, at *2. First "only one entity in a payment chain can be a class member." *Id.* Second, "in a payment chain containing a merchant who accepts cards, and a payment facilitator who enables the merchant to accept cards, the merchant is the class member and the payment facilitator is not." *Id*. Whatever label Moneta has attached to its services at different times, its role has consistently been to enable its clients to accept payment cards. As the Court concluded in *Teleflora*:

> The question before the Court is whether Teleflora gets to be a class member not by virtue of its own sales, but by virtue of its member florists' sales which it facilitates. Logic must prevail here: Teleflora is not the one accepting cards for the member florists' transactions, so Teleflora is not the one that gets to "accept" the settlement proceeds relating to those transactions.

*Id*. So, too, here: Moneta seeks to be treated as a class member because of the client transactions it facilitates rather than by virtue of its own sales. Under the reasoning of both *PayFacs* and

*Teleflora*, the Court should reject that position and find that Moneta is not a class member and therefore ineligible to register merchant TINs.[2]

B. Prior Distributions to Moneta

Moneta writes that "[p]erhaps most importantly, this matter has already undergone review by the [Class] Administrator." 7/1/26 Email. It notes that it "submitted extensive documentation describing its business model, contractual relationships, and supporting evidence demonstrating that it—not its governmental clients—paid the interchange fees." *Id*. Moneta then notes that after reviewing its submissions, the Class Administrator "determined that Moneta qualified as an eligible claimant," approved "Moneta's claim," and distributed settlement funds to Moneta. *Id*. The imprecision of that description elides some important facts.

After reading the 7/1/26 Email, I asked the Class Administrator to explain how Moneta's account of the results of prior review could be consistent with the fact that the Class Administrator has designated Moneta as a payment facilitator with respect to all of the TINs it registered. In response, the Class Administrator reported that it distributed settlement funds to Moneta as the registrant of eight TINs based on data that did not include a "Payment Facilitator" flag. Those distributions were only partial payments of the settlement funds to be allocated to the eight TINs, and the combined payments totaled only $2,406.30. The Class Administrator did not make a substantive determination that Moneta qualified as an eligible claimant as to those eight TINs and later updated the status of those TINs to reflect the Payment Facilitator designation. That report contradicts Moneta's assertion that "the [Class] Administrator determined that

[2] To the extent Moneta may have accepted payment cards as payment from its clients or others for goods and services that it sold to them, such transactions are not at issue here. Moneta may well be a member of the class with respect to such transactions. *See Teleflora*, 2026 WL 1729167, at *3 n.2.

Moneta qualified as an eligible claimant." *Id*. Moreover, in asserting that "Moneta's claim was approved" and that "settlement funds were distributed to" it, Moneta does not make clear that those assertions apply only to partial payments to eight of the 358 TINs it registered.

Even taking Moneta's assertions at face value, Moneta does not explain why the Class Administrator's initial action in distributing funds for eight TINs provides more authoritative guidance than it's later determination that *all* of the TINs Moneta registered should be withdrawn based on the determination that Moneta is a payment facilitator. If Moneta were correct that the initial distributions accurately reflected the Class Administrator's view as to whether Moneta is a class member, the Class Administrator would have had no reason to deem Moneta ineligible to register TINs later. As Moneta acknowledges, there was no "change in the underlying facts" that prompted such a change. On the other hand, the sequence of events is readily explained by the Class Administrator's report that the initial distributions were the result of a data entry error that the Class Administrator later found and corrected.

In any event, the Class Administrator's purported determination that Moneta is eligible to register TINs is subject to this Court's review and it plainly does not dictate the outcome of that review. If the facts establish that Moneta did not accept payment cards within the meaning of the Settlement Agreement and therefore is not a class member, that would mean no more than that it should not have received any distribution of settlement funds. It would not mean that a non-member of the settlement class should receive still more funds. I therefore conclude that the past payments Moneta cites do not suffice to transform Moneta into an eligible class member.

## III. Recommendation

For the reasons set forth above, I respectfully recommend that the Court find that Moneta is not a member of the settlement class and that the Class Administrator therefore need not grant it authority to submit its claims.

## IV. Objections

This Report and Recommendation will be served on Moneta via the Court's ECF system and also by the Class Administrator.[3] Any interested party shall have 21 days from today's date to file objections to the Special Master's report and recommendation with the Court. Such objections should be filed only on the dispute-specific miscellaneous docket (1:26-MC-03201-BMC-JAM). Any responses to objections may be filed within 21 days thereafter. No replies regarding objections shall be filed without the Court's permission. If any party objects to this Report and Recommendation, the evidence considered by the Special Master in making or recommending any findings of fact shall be filed on the dispute-specific miscellaneous docket. Such evidence may be filed under seal to protect confidentiality and the identities of claimants,

---

[3] In this case, where the issue is a single registrant's status rather than a conflict between two or more registrants, the only party to be served in the first instance is Moneta. While the hundreds of merchants associated with the TINs Moneta has registered (or their successors in interest) may have a potential interest in the outcome here, neither the Class Administrator nor I (nor the Court) necessarily has contact information for all of them. If the Court adopts the foregoing recommendations, the lack of notice will not prejudice any such merchant. However, in the event the Court rejects or modifies the recommendation and finds that the Class Administrator should not designate Moneta as an authorized registrant as to some TINs. In some such cases, Moneta's registration of a TIN may be in conflict with other filers' registrations of the same TINs. I respectfully recommend that where such conflicts arise, the Class Administrator should provide a copy of the Court's decision and this report and recommendation to all parties to the conflict. I further recommend that merchants involved in such conflicts retain the right to contest Moneta's class membership on the ground that it did not accept payment cards within the meaning of the Settlement.

as appropriate. The Court shall review the Special Master's reports and recommendations *de novo*. *See* Revised Order Appointing Special Master, 1:24-MC-03415-BMA-JAM, ECF 1, ¶ 4.

Dated: August 6, 2026

/s/ *James Orenstein*
Special Master