UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------- x

IN RE MDL 1720 DAMAGES CLASS SETTLEMENT DISPUTES

REPORT AND RECOMMENDATION OF SPECIAL MASTER

---------------------------------------------------------- x

1:24-MC-03415-BMC-JAM

IN RE MDL 1720 DAMAGES CLASS SETTLEMENT APPEAL OF REGISTRANT ORIGIN SETTLEMENT ADVISORS LLC, on behalf of ALLPAID, INC.

1:26-MC-03315-BMC-JAM

---------------------------------------------------------- x

**Parties**:

Origin Settlement Advisors LLC ("Origin").

Rule 23(b)(3) Class Plaintiffs (the "Class")

**Counsel**:

Andrea Akel, Founder
Origin Settlement Advisors
49 Acacia Dr.
Orinda, CA 94563
(415) 355-4675
andrea@originsettlement.com
Representative of Origin

Alexandra S. Bernay
Robbins Geller Rudman & Dowd LLP
655 West Broadway, Suite 1900
San Diego, CA 92101
(619) 231-1058
xanb@rgrdlaw.com
Class Counsel

I. Background

Origin Settlement Advisors LLC ("Origin") is a third-party filer ("TPF") that has registered approximately 900 Taxpayer Identification Numbers ("TINs") with the Class

Administrator seeking to recover proceeds from the damages class settlement in *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 05-MD-01720-BMC-JAM (E.D.N.Y.) ("*MDL 1720*").[1] *See* Email from Andrea Akel dated June 29, 2026 ("Origin 6/29/26"). On January 31, 2024, Origin registered the TIN of its client AllPaid, Inc. ("AllPaid"). The Class Administrator notified Origin on September 5, 2024, that AllPaid is ineligible to file a claim because it is a payment facilitator and not a member of the settlement class. Origin disputed that designation in a letter to the Class Administrator with two exhibits. *See* Letter from Andrea Akel dated Sept. 25, 2024 ("Origin 9/25/24"). Origin later sent me an email in support of its position. Origin 6/29/26.[2] As explained below, I respectfully recommend that the Court find that AllPaid is not a class member because it did not "accept" payment cards for purposes of the Superseding Settlement Agreement, ECF 7257-2 ("Settlement Agreement").

---

[1]A TPF is a business that enters into agreements with merchants to register and prosecute their claims of settlement funds in exchange for a portion of the merchants' recovery. *See MDL 1720*, 2014 WL 4966072, at *4 (E.D.N.Y. Oct. 3, 2014) (describing "the business of third-party claims filing companies").

[2] On May 22, 2025, the Class Administrator notified Origin that before the dispute could be considered further, Origin must submit proof of its authority to act on AllPaid's behalf .The notice was designed for the more typical circumstances of disputes involving payment facilitators. In most instances, the issue has arisen in the context of the payment facilitator directly registering the TINs of its many merchant clients, rather than by means of a TPF registering only the payment facilitator's own TIN. *See*, *e.g.*, *In re MDL 1720 Damages Class Settlement Disps.*, 2026 WL 825503, *1 (E.D.N.Y. Mar. 17, 2026) ("*Teleflora R&R*"), *adopted in part*, 2026 WL 1729167, *1 (E.D.N.Y. June 16, 2026) ("*Teleflora*") (adopting in part report and recommendation) (payment facilitator registered 35,310 TINs based on the transactions of 35,909 merchant clients).

The Class Administrator sent out such deficiency notices before the Court issued its decision in *Teleflora*. There, the Court adopted my recommendation to find that the payment facilitator registrant was not a class member and on that basis declined on mootness grounds to adopt my recommendation to require the company to submit its contracts with each of the thousands of merchants whose TINs it had registered. *See Teleflora* 2026 WL 1729167, at *3; *Teleflora R&R*, 2026 WL 825503, *9-10). In light of that ruling, I suspended the contract-filing requirement (which Origin had in any event already fulfilled) and asked AllPaid to submit any further argument supporting its position on class membership.

Four prior decisions, all arising from the litigation in *MDL 1720*, provide the legal context for this dispute. First, when the Court gave final approval to the Settlement Agreement, it endorsed the settling parties' definition of the class as consisting of "[a]ll persons, businesses, and other entities that have accepted any Visa-Branded Cards and/or Mastercard-Branded Cards in the United States at any time" during the relevant period, with exceptions not pertinent here. *See MDL 1720*, 2019 WL 6875472, at *31 (E.D.N.Y. Dec. 16, 2019) (the "Approval Order") (quoting Settlement Agreement ¶ 4) ), *aff'd sub nom. Fikes Wholesale, Inc. v. HSBC Bank USA, N.A.*, 62 F.4th 704 (2d Cir. 2023) ("*Fikes*"). In doing so, the Court overruled an objection from a group of franchisee entities that owned and operated gas stations (the "Branded Operators") that the use of "accepted" might allow their franchisor oil company suppliers to supplant them as class members and that uncertainty about that issue made class membership impossible to determine. *See id.*

Second, in affirming the Approval Order, the Second Circuit likewise rejected the Branded Operators' arguments. After acknowledging the ambiguity of the word "accepted," *Fikes,* 62 F.4th at 715, the court clarified the core question those arguments raised:

> The dispute is not over which group of class members will get the recovery; the dispute is over which claimants are within the class. Whoever "accepted" the payment cards is by definition in the class, gets compensation, and is bound by the release; an entity that did not accept the payment is by definition excluded from the class and is not bound by the settlement.

*Id*. at 717. Because that dispute did not implicate the requirement that a class must have ascertainable membership to be certified, the court did not need to decide who – as between franchisors and franchisees – had "accepted" payment cards and were therefore class members. *See id*. at 718.

Third, in *MDL 1720*, 735 F. Supp. 3d 249 (E.D.N.Y. 2024), *reconsideration denied*, 2025 WL 2490442 (E.D.N.Y. Aug. 29, 2025) ("*PayFacs I*"), *aff'd*, 2026 WL 1210154 (2d Cir. May 4,

2026) ("*PayFacs II*"), Judge Brodie ruled that two payment facilitators – Block, Inc., f/k/a Square, Inc. ("Square"), and Intuit Inc. and Intuit Payment Solutions, LLC (collectively, "Intuit") – had not "accepted" payment cards used to pay for goods and services sold by their merchant clients and therefore were not members of the class. *See id*. 735 F. Supp. 3d at 252. To reach that conclusion, Judge Brodie considered several factors, as summarized on review by the Second Circuit:

> (1) Square's merchant agreement, which states that Square allows merchants "to *accept* Cards from customers," *id.*; (2) Square's Complaint, which alleges that Square "helps Sellers (merchants who utilize Square to *accept* payment cards ...) start, run, and grow their businesses, including by enabling Sellers to *accept* card payments," *id.*; (3) Visa's rules, which distinguish between a "Payment Facilitator" and a "Merchant" and provide that an entity cannot simultaneously act as both a payment facilitator and a merchant, *id.* at 265; (4) Mastercard's rules, under which Sellers "accept" payment cards while payment facilitators facilitate the acquiring of transactions, *id.* at 266; (5) the Square Sellers' own declarations, which describe themselves as businesses that *accept* credit and debit cards, *id.*; (6) the "way real-world transactions are conducted" in which the "cardholder hands her card to a Seller, who 'accepts' it for payment at the point of sale," *id.* at 264; and (7) the incongruence of interpreting the word "accepted" to mean that Square "'accepts' a payment card, but the [Square] Seller 'accepts' cash, for two otherwise identical transactions," *id.* at 265.

*PayFacs II*, 2026 WL 1210154, at *1.[3]

Finally, in *Teleflora*, a payment facilitator ("Teleflora") challenged the Class Administrator's determination that it was not a class member and therefore ineligible to register a claim. In seeking my review, Teleflora noted a number of ways in which its contracts with merchant clients differed from the contracts between Square and Intuit and their respective

---

[3] In affirming Judge Brodie's analysis, the court observed that "[f]ew persons are in a better position to understand the meaning of a settlement than the district judge who oversaw and approved it[.]" *Id*. at *2 (quoting *W. Alton Jones Found. v. Chevron U.S.A., Inc.*, 97 F.3d 29, 33 (2d Cir. 1996) (cleaned up)). At the time Judge Brodie oversaw and approved the *MDL 1720* damages class settlement, I was the magistrate judge assigned to the case. In that role, I sat on the bench with Judge Brodie for oral argument of the objections to the proposed settlement. *See MDL 1720*, ECF 7774 (minute entry dated Nov. 7, 2019).

clients. I analyzed those arguments in detail and concluded that they either replicated arguments by Square and Intuit that Judge Brodie explicitly rejected in *PayFacs I* or were not meaningfully different for purposes of determining class membership. *See Teleflora R&R*, 2026 WL 825503, at *4-7. I therefore recommended that this Court find that Teleflora had not accepted payments for its merchant clients' transactions and was not a class member. *Id*. at *10. This Court adopted that recommendation, reasoning as follows:

> Teleflora points to a number of factors that purportedly distinguish its situation from the situation presented in *PayFacs I*. The Court disagrees, and not just because many of these factors were actually considered in *PayFacs I*. Rather, it simply does not matter how many and in what ways Teleflora differs from Square and Intuit because they are the same in the one respect that matters: they don't accept payment cards.

*Teleflora* 2026 WL 1729167, at *2.

II. <u>Analysis</u>

Origin has not argued, in any of the submissions to the Class Administrator or to me, either that it accepted payment cards within the meaning of the Settlement Agreement or that it is a member of the class. Nor could it reasonably do so based on its own description of its business:

> AllPaid is a leading service provider, *enabling government entities to accept various types of payments*, such as bail, court fines, traffic violations, taxes, and utilities by credit, debit, and prepaid cards. It's important to emphasize that AllPaid was not designated as a payment facilitator ("PayFac") until September 17, 2016, when it signed a PayFac agreement with Vantiv (agreement attached for your reference). It then took a number of months for AllPaid to actually become a PayFac as the Company used this interval to meet all the conditions required to operate as a PayFac. It wasn't until May 2017 that AllPaid transitioned to a functional PayFac. AllPaid operated as a non-PayFac prior to May 2017 and should be fully compensated for the interchange fees it paid from the beginning of the class period through May 2017.
>
> Furthermore, AllPaid should benefit from the settlement for all the interchange fees it paid throughout the entire class period even after AllPaid transitioned into a PayFac. According to AllPaid's General Counsel, Brian Kibble-Smith ("AllPaid GC"), who began his tenure in January 2010, AllPaid's business model is and was historically based on AllPaid, not its customers, bearing all card processing fees. AllPaid bundles processing fees with other costs of services sold, such as training,

> telephone support, counter equipment, management information systems, promotional materials, a guarantee against payment chargeback, and other services AllPaid provides to a customer base consisting overwhelmingly of government entities.

Origin 9/25/24 at 2 (boldface in original removed, italics added).

Applying the reasoning of the cases discussed above, AllPaid is plainly not a class member. As it notes, the service it provided is "enabling government entities to accept various types of payments." *Id*. Regardless of how its business model may have changed in other ways when AllPaid transitioned to calling itself a Payment Facilitator toward the end of the class period, nothing in any of its submissions suggests that that critical aspect of its service – enabling its clients to "accept" payments for the goods and services those clients provided to cardholders – has ever been different.

Origin makes two arguments about why AllPaid is entitled to a portion of the settlement fund. First, it relies on "a statutory carveout present … in every state to enable government agencies within each state to accept compelled payments for obligations such as taxes[.]" *Id*. Those state laws are designed "to provide to payers the convenience of paying with a card while making card acceptance cost-neutral to state and local agencies by passing them on to the payer." *Id*. Origin cites examples of such statutes, including California's, which allows government agencies to "accept electronic payments for amounts owed to them" by contracting "with financial institutions and payment processors to facilitate electronic transactions" and to "impose a 'convenience fee' or surcharge to cover" processing costs. *Id*. at 3 (citing Cal. Gov. C. § 6159). This argument, however, only bolsters the conclusion that AllPaid did not accept card payments and is not a class member. To the contrary, such laws do no more than allow government

agencies to engage the services of payment processing vendors in accepting payments owed by cardholders to the agencies.[4]

Second, Origin argues that AllPaid is entitled to participate in the settlement because it, rather than its government agency clients, directly paid interchange fees. *See id*. at 2-3; Origin 6/29/26. Both this Court and Judge Brodie have previously rejected the same argument made by others. *See Teleflora* 2026 WL 1729167, at *2 & n.1; *PayFacs I*, 735 F. Supp. 3d at 260. Origin adds that beyond not having to directly pay interchange fees, "the government entities using Allpaid's services were insulated from the increased interchange costs." Origin 6/29/26. Origin's earlier and more expansive explanation of its arrangements with clients adds important nuance to that assertion:

> AllPaid framed its business model to add to the compelled payment, with its customers' consent, the bundled fee its government customers were allowed to pass on to the payers. For efficiency, AllPaid collected both the fee and the principal in a single payment transaction, transferring without offset the entire principal to its government customer while retaining the bundled fee as its compensation for providing services which government could not. Government entities were not directly harmed by the allegedly elevated interchange fees.

Origin 9/25/24 at 2.

"[D]irectly" does a lot of work in the last sentence in that passage. Origin does not assert that it shielded its government agency clients from the financial burden caused by elevated interchange fees, only that such burdens did not fall "directly" on them. And in asserting that those agencies "were insulated from the increased interchange costs," Origin does not say that they were also insulated from AllPaid passing along increases in interchange costs by raising the fees the agencies remitted to AllPaid for its services.

---

[4] The statutory permission to impose surcharges is in tension with payment network rules that in many instances would prohibit surcharging. The class had challenged such rules, among others, in the litigation resulting in its settlement with the defendants in *MDL 1720*.

There is no reason AllPaid should have kept its fees steady while its costs increased, and no reason to believe that it was indifferent to the economic harm it would incur by doing so. But even if it did absorb increases in interchange fees without recouping the resulting loss from its clients, that would not change the outcome. Either way, AllPaid did not "accept" payment cards within the meaning of the Settlement Agreement.

In *Teleflora*, this Court summed up the relevant holding of the *PayFacs I* decision, "which withstood Second Circuit review." 2026 WL 1729167, at *2. First "only one entity in a payment chain can be a class member." *Id.* Second, "in a payment chain containing a merchant who accepts cards, and a payment facilitator who enables the merchant to accept cards, the merchant is the class member and the payment facilitator is not." *Id*. As the Court concluded:

> The question before the Court is whether Teleflora gets to be a class member not by virtue of its own sales, but by virtue of its member florists' sales which it facilitates. Logic must prevail here: Teleflora is not the one accepting cards for the member florists' transactions, so Teleflora is not the one that gets to "accept" the settlement proceeds relating to those transactions.

*Id*. So, too, here: Origin seeks to have AllPaid treated as a class member because of the client transactions AllPaid facilitated rather than by virtue of AllPaid's own sales. Under the reasoning of both *PayFacs* and *Teleflora*, the Court should reject that position and find that AllPaid is not a class member, and therefore ineligible to have Origin register its TIN.[5]

---

[5] To the extent AllPaid may have accepted payment cards as payment from its clients or others for goods and services that it sold to them, such transactions are not at issue here. AllPaid may well be a member of the class with respect to such transactions. *See Teleflora*, 2026 WL 1729167, at *3 n.2. However, it is AllPaid's burden (or that of its agent, Origin), and not the Class Administrator's to identify any transactions within that category.

## III. Recommendation

For the reasons set forth above, I respectfully recommend that the Court find that AllPaid is not a member of the settlement class and that the Class Administrator therefore need not grant Origin the authority to submit AllPaid's claim.

## IV. Objections

This Report and Recommendation will be served on Origin via the Court's ECF system and also by the Class Administrator.[6] Any interested party shall have 21 days from today's date to file objections to the Special Master's report and recommendation with the Court. Such objections should be filed only on the dispute-specific miscellaneous docket (1:26-MC-03315-BMC-JAM). Any responses to objections may be filed within 21 days thereafter. No replies regarding objections shall be filed without the Court's permission. If any party objects to this Report and Recommendation, the evidence considered by the Special Master in making or recommending any findings of fact shall be filed on the dispute-specific miscellaneous docket. Such evidence may be filed under seal to protect confidentiality and the identities of claimants,

[6] In this case, where the issue is a single registrant's status rather than a conflict between two or more registrants, the only party to be served in the first instance is Origin. While AllPaid's clients (or their successors in interest) may have a potential interest in the outcome here, neither the Class Administrator nor I (nor the Court) necessarily has contact information for all of them. If the Court adopts the foregoing recommendations, the lack of notice will not prejudice any such client. However, in the event the Court rejects or modifies the recommendation Origin's registration may be in conflict with other filers' registrations. I respectfully recommend that where such conflicts arise, the Class Administrator should provide a copy of the Court's decision and this report and recommendation to all parties to the conflict. I further recommend that class members involved in such conflicts retain the right to contest AllPaid's class membership on the ground that it did not accept payment cards within the meaning of the Settlement Agreement.

as appropriate. The Court shall review the Special Master's reports and recommendations *de novo*. *See* Revised Order Appointing Special Master, 1:24-MC-03415-BMA-JAM, ECF 1, ¶ 4.

Dated: August 17, 2026

*/s/ James Orenstein*
Special Master