UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------- x

IN RE MDL 1720 DAMAGES CLASS SETTLEMENT DISPUTES

REPORT AND RECOMMENDATION OF SPECIAL MASTER

---------------------------------------------------------- x

1:24-MC-03415-BMC-JAM

IN RE MDL 1720 DAMAGES CLASS SETTLEMENT APPEALS OF REGISTRANT DRIFTWOOD IX FUNDING LLC CONCERNING TRANSACTIONS FACILITATED BY FTD, LLC

1:26-MC-03368-BMC-JAM

---------------------------------------------------------- x

**Parties**:

Driftwood IX Funding LLC ("Driftwood")

Rule 23(b)(3) Class Plaintiffs (the "Class")

**Counsel**:

Emma K. Burton
Crowell & Moring LLP
600 Fifth Street NW
Washington, DC 20001
(202) 624-5000
eburton@crowell.com
Counsel for Driftwood

Alexandra S. Bernay
Robbins Geller Rudman & Dowd LLP
655 Wests Broadway, Suite 1900
San Diego, CA 92101
(619) 231-1058
xanb@rgrdlaw.com
Class Counsel

I. Background

Driftwood, an entity controlled by Haybeach Partners LLC ("Haybeach"), has secured the right of FTD, LLC ("FTD") to seek to recover proceeds from the damages class settlement in

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 05-MD-01720-BMC-JAM (E.D.N.Y.) ("*MDL 1720*"). *See* Letter from Driftwood to Special Master dated Nov. 13, 2025 ("Driftwood 11/13/25") at 2.[1] On February 3, 2025, Driftwood registered 4,074 Taxpayer Identification Numbers ("TINs") associated with merchants, mostly florists, for whom FTD had processed payment card transactions. The Class Administrator notified Driftwood on April 17, 2025, that it is ineligible to file a claim because FTD acted as a payment facilitator and was therefore not a member of the settlement class. Driftwood disputed that designation in a letter to me, together with supporting exhibits and a memorandum from FTD to Haybeach. *See* Driftwood 11/13/25; *id*. Ex B (Memorandum dated Nov. 3, 2025) ("FTD Memo"). In response to a further notice from the Class Administrator, on March 18, 2026, Driftwood submitted 47 sample contracts between FTD and its client merchants.[2] On July 1, 2026, Driftwood's counsel sent me a letter with exhibits in further support of its position. *See* Driftwood 7/1/26. As explained below, I respectfully recommend that the Court find that FTD is not a class member cards for purposes of the Superseding Settlement Agreement, ECF 7257-2 ("Settlement Agreement") and that as a result, Driftwood may not register the TINs at issue.

---

[1] FTD sold its rights to LW VMC I LLC in June 2020, and the latter sold those rights to Driftwood in September 2022. *See id.*; Letter from Driftwood to Special Master dated July 1, 2026 ("Driftwood 7/1/26") at 1 n.3.

[2] On February 16, 2026, the Class Administrator notified Driftwood that before its dispute could be considered further, it must submit all of FTD's merchant contracts. That was before the Court issued its decision in *In re MDL 1720 Damages Class Settlement Disps.*, 2026 WL 825503, *1 (E.D.N.Y. Mar. 17, 2026) ("*Teleflora R&R*"), *adopted in part*, 2026 WL 1729167, *1 (E.D.N.Y. June 16, 2026) ("*Teleflora*"). There, the Court adopted my recommendation to find that the payment facilitator registrant was not a class member and on that basis declined on mootness grounds to adopt my recommendation to require the company to submit its contracts with each of the thousands of merchants whose TINs it had registered. *See Teleflora* 2026 WL 1729167, at *3; *Teleflora R&R*, 2026 WL 825503, *9-10. In light of that ruling, I suspended the contract-filing requirement so that Driftwood could submit any further argument supporting its position on FTD's class membership.

Four prior decisions, all arising from the litigation in *MDL 1720*, provide the legal context for this dispute. First, when the Court gave final approval to the proposed damages class settlement, it endorsed the settling parties' definition of the class as consisting of "[a]ll persons, businesses, and other entities that have accepted any Visa-Branded Cards and/or Mastercard-Branded Cards in the United States at any time" during the relevant period, with exceptions not pertinent here. *See MDL 1720*, 2019 WL 6875472, at *31 (E.D.N.Y. Dec. 16, 2019) (the "Approval Order") (quoting Superseding Settlement Agreement ¶ 4) ), *aff'd sub nom. Fikes Wholesale, Inc. v. HSBC Bank USA, N.A.*, 62 F.4th 704 (2d Cir. 2023) ("*Fikes*"). In doing so, the Court overruled an objection from a group of franchisee entities that owned and operated gas stations (the "Branded Operators") that the use of "accepted" might allow their franchisor oil company suppliers to supplant them as class members and that uncertainty about that issue made class membership impossible to determine. *See id*.

Second, in affirming the Approval Order, the Second Circuit likewise rejected the Branded Operators' arguments. After acknowledging the ambiguity of the word "accepted," *Fikes,* 62 F.4th at 715, the court clarified the core question those arguments raised:

> The dispute is not over which group of class members will get the recovery; the dispute is over which claimants are within the class. Whoever "accepted" the payment cards is by definition in the class, gets compensation, and is bound by the release; an entity that did not accept the payment is by definition excluded from the class and is not bound by the settlement.

*Id*. at 717. Because that dispute did not implicate the requirement that a class must have ascertainable membership to be certified, the court did not need to decide who – as between franchisors and franchisees – had "accepted" payment cards and were therefore class members. *See id*. at 718.

Third, in *MDL 1720*, 735 F. Supp. 3d 249 (E.D.N.Y. 2024), *reconsideration denied*, 2025 WL 2490442 (E.D.N.Y. Aug. 29, 2025) ("*PayFacs I*"), *aff'd*, 2026 WL 1210154 (2d Cir. May 4,

2026) ("*PayFacs II*"), Judge Brodie ruled that two payment facilitators – Block, Inc., f/k/a Square, Inc. ("Square"), and Intuit Inc. and Intuit Payment Solutions, LLC (collectively, "Intuit") – had not "accepted" payment cards used to pay for goods and services sold by their merchant clients and therefore were not members of the class. *See* 735 F. Supp. 3d at 252. To reach that conclusion, Judge Brodie considered several factors, as summarized on review by the Second Circuit:

> (1) Square's merchant agreement, which states that Square allows merchants "to *accept* Cards from customers," *id.*; (2) Square's Complaint, which alleges that Square "helps Sellers (merchants who utilize Square to *accept* payment cards ...) start, run, and grow their businesses, including by enabling Sellers to *accept* card payments," *id.*; (3) Visa's rules, which distinguish between a "Payment Facilitator" and a "Merchant" and provide that an entity cannot simultaneously act as both a payment facilitator and a merchant, *id.* at 265; (4) Mastercard's rules, under which Sellers "accept" payment cards while payment facilitators facilitate the acquiring of transactions, *id.* at 266; (5) the Square Sellers' own declarations, which describe themselves as businesses that *accept* credit and debit cards, *id.*; (6) the "way real-world transactions are conducted" in which the "cardholder hands her card to a Seller, who 'accepts' it for payment at the point of sale," *id.* at 264; and (7) the incongruence of interpreting the word "accepted" to mean that Square "'accepts' a payment card, but the [Square] Seller 'accepts' cash, for two otherwise identical transactions," *id.* at 265.

*PayFacs II*, 2026 WL 1210154, at *1.[3]

Finally, in *Teleflora*, as in this case, a payment facilitator ("Teleflora") challenged the Class Administrator's determination that it was not a class member and therefore ineligible to register a claim. In seeking my review, Teleflora noted a number of ways in which its contracts with merchant clients differed from the contracts between Square and Intuit and their respective

---

[3] In affirming Judge Brodie's analysis, the court observed that "[f]ew persons are in a better position to understand the meaning of a settlement than the district judge who oversaw and approved it[.]" *Id*. at *2 (quoting *W. Alton Jones Found. v. Chevron U.S.A., Inc.*, 97 F.3d 29, 33 (2d Cir. 1996) (cleaned up)). At the time Judge Brodie oversaw and approved the *MDL 1720* damages class settlement, I was the magistrate judge assigned to the case. In that role, I sat on the bench with Judge Brodie for oral argument of the objections to the proposed settlement. *See MDL 1720*, ECF 7774 (minute entry dated Nov. 7, 2019).

clients. I analyzed those arguments in detail and concluded that they either replicated arguments by Square and Intuit that Judge Brodie explicitly rejected in *PayFacs I* or were not meaningfully different for purposes of determining class membership. *See In re MDL 1720 Damages Class Settlement Disputes*, 24-MC-03415-BMC-JAM (E.D.N.Y.), ECF 2 at 5-11 (Mar. 17, 2026). I therefore recommended that this Court find that Teleflora had not accepted payments for its merchant clients' transactions and was not a class member. *Id*. at 17. This Court adopted that recommendation, reasoning as follows:

> Teleflora points to a number of factors that purportedly distinguish its situation from the situation presented in *PayFacs I*. The Court disagrees, and not just because many of these factors were actually considered in *PayFacs I*. Rather, it simply does not matter how many and in what ways Teleflora differs from Square and Intuit because they are the same in the one respect that matters: they don't accept payment cards.

*Teleflora* 2026 WL 1729167, at *2.

II. Analysis

Applying the reasoning of the cases discussed above, FTD plainly did not accept payment cards within the meaning of the Settlement Agreement. As a result, neither it nor its successor in interest Driftwood is a class member. The facts of this case are in all material respects the same as in *Teleflora*. Like Teleflora, FTD enters into arrangements with florists under which customers can go to the florist's shop or website to order flowers and FTD then processes payments made with payment cards and pays the associated interchange fees directly to the relevant bank. In the FTD Memo, FTD described the transactions of its florist "sub-merchants" as follows:

> *When a sub-merchant's customer places an order on their website or in their store*, or other means, FTD receives the funds, and pays all associated fees, and then pays the sub-merchant under the individual merchant's standard agreement with FTD, the form of which has previously been provided to Haybeach. *The sub-merchant is the merchant of record.* In some cases, the order is routed through the

> FTD network and dispatches it to the nearest member florist, or sub-merchant, for physical fulfillment.

FTD Memo at 2 (emphasis added).

The form agreement FTD mentions is a short document that informs florists that, among other things, "*[t]he more orders you send to FTD*, the greater your credit card processing savings!" Driftwood 7/1/26 Ex. 3 at 2 (FTD Credit Card Processing Agreement dated Mar. 24, 2011) (emphasis added). Such language bolsters the proposition that prior to Judge Brodie's decision in *PayFacs I*, FTD and its florist clients both viewed payment card transactions as the florist's orders. The contract's title – "Credit Card Processing Agreement" – similarly reflects the reality that florists "accepted" card payments from its customers and that FTD's role was to provide a processing service for those payments that the florists accepted.

Moreover, Driftwood says nothing in its submissions about cash transactions, and its sample contracts likewise make no provision for such transactions. The latter fact supports the inference that when a florist's customer paid for flowers in cash, the florist accepted the payment from the customer and FTD was not involved in the transaction in any way. This too undermines Driftwood's contention that it "accepted" card payments. As the Second Circuit noted in *PayFacs II*, Judge Brodie based her decision in part on "the incongruence of interpreting the word 'accepted' to mean that Square 'accepts' a payment card, but the [Square] Seller 'accepts' cash, for two otherwise identical transactions," *PayFacs II*, 2026 WL 1210154, at *1 (quoting *PayFacs I*, 735 F. Supp. 3d at 265) (cleaned up).

In *Teleflora*, this Court summed up the relevant holding of the *PayFacs I* decision, "which withstood Second Circuit review." 2026 WL 1729167, at *2. First "only one entity in a payment chain can be a class member." *Id.* Second, "in a payment chain containing a merchant

who accepts cards, and a payment facilitator who enables the merchant to accept cards, the merchant is the class member and the payment facilitator is not." *Id*. As the Court concluded:

> The question before the Court is whether Teleflora gets to be a class member not by virtue of its own sales, but by virtue of its member florists' sales which it facilitates. Logic must prevail here: Teleflora is not the one accepting cards for the member florists' transactions, so Teleflora is not the one that gets to "accept" the settlement proceeds relating to those transactions.

*Id*. So, too, here: in registering the TINs at issue, Driftwood seeks to have FTD be treated as a class member because of the florists' transactions it facilitated rather than by virtue of its own sales. Under the reasoning of both *PayFacs* and *Teleflora*, the Court should reject that position and find that FTD is not a class member and therefore ineligible to register merchant TINs.[4]

III. Recommendation

For the reasons set forth above, I respectfully recommend that the Court find that FTD is not a member of the settlement class with respect to the transaction of FTD's florist clients, and that the Class Administrator therefore need not grant Driftwood, as FTD's successor in interest, the authority to submit to register the TIN's of FTD's client florists.

---

[4] To the extent FTD may have accepted payment cards as payment from its clients or others for goods and services that it sold to them, such transactions are not at issue here. FTD may well be a member of the class with respect to such transactions. *See Teleflora*, 2026 WL 1729167, at *3 n.2. Further, I acknowledge the possibility that in some cases, a cardholder might order flowers directly from FTD on its website, and that FTD would then arrange for a client florist in the cardholder's vicinity to deliver the flowers in exchange for a fee payment by FTD for that delivery service. To the extent transactions occurred in that manner, which FTD would have the burden to establish, Driftwood would have a stronger argument that FTD had "accepted" payment cards for purposes of the Settlement Agreement. *See Teleflora R&R*, 2026 WL 825503, at *7. On the record before me, however, such an argument would rest on speculation rather than evidence. Moreover, even if the record established a factual basis for that argument, it would support registering only FTD's TIN for the purpose of seeking recovery based on those specific transaction. It would not support allowing FTD to seek recovery (under any TIN, whether FTD's or a florist's) for the sales of the thousands of florists whose TINs Driftwood has registered.

IV. Objections

This Report and Recommendation will be served on FTD via the Court's ECF system and also by the Class Administrator.[5] Any interested party shall have 21 days from today's date to file objections to the Special Master's report and recommendation with the Court. Such objections should be filed only on the dispute-specific miscellaneous docket (1:26-MC-03368-BMC-JAM). Any responses to objections may be filed within 21 days thereafter. No replies regarding objections shall be filed without the Court's permission. If any party objects to this Report and Recommendation, the evidence considered by the Special Master in making or recommending any findings of fact shall be filed on the dispute-specific miscellaneous docket. Such evidence may be filed under seal to protect confidentiality and the identities of claimants, as appropriate. The Court shall review the Special Master's reports and recommendations *de novo*. *See* Revised Order Appointing Special Master, 1:24-MC-03415-BMA-JAM, ECF 1, ¶ 4.

Dated: August 20, 2026

*/s/ James Orenstein*
Special Master

[5] Driftwood, as the only registrant currently before me on this matter, is the only party to be served in the first instance. While the thousands of merchants associated with the TINs Driftwood has registered (or their successors in interest) may have a potential interest in the outcome here, neither the Class Administrator nor I (nor the Court) necessarily has contact information for all of them. If the Court adopts the foregoing recommendations, the lack of notice will not prejudice any such merchant. However, in the event the Court rejects or modifies the recommendation there may arise cases in which Driftwood's registration of a TIN may be in conflict with other filers' registrations of the same TINs. In that regard, I note that Driftwood previously estimated that there are approximately 500 TINs that both it and some other filer registered, and that "[t]o alleviate administrative burdens, FTD [sic] is prepared to waive these few [sic] overlapping claims in favor of the affected florists." Driftwood 11/13/25 at 4. Should conflicts arise between Driftwood and other filers over individual TINs, I respectfully recommend that the Class Administrator should provide a copy of the Court's decision and this report and recommendation to all parties to the conflict. I further recommend that merchants involved in such conflicts retain the right to contest FTD's class membership on the ground that it did not accept payment cards within the meaning of the Settlement Agreement.