UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------ x

| | |
|---|---|
| IN RE MDL 1720 DAMAGES CLASS SETTLEMENT DISPUTES | REPORT AND RECOMMENDATION <u>OF SPECIAL MASTER</u> |
| ------------------------------------------------------------ x | 1:24-MC-03415-BMC-JAM |
| IN RE MDL 1720 DAMAGES CLASS SETTLEMENT APPEAL OF REGISTRANT MERIDIAN COOPERATIVE, INC. | 1:26-MC-03394-BMC-JAM |

------------------------------------------------------------ x

**Parties**:

Meridian Cooperative, Inc. ("Meridian")

Rule 23(b)(3) Class Plaintiffs (the "Class")

**Counsel**:

Theodore (TJ) Castello, Vice President, Financial Services
Meridian Cooperative, Inc.
3 Ravinia Drive NE, Suite P007
Atlanta, GA 30346
(770) 414-8400
theodorec@meridian.coop
Representative of Meridian

Alexandra S. Bernay
Robbins Geller Rudman & Dowd LLP
655 West Broadway, Suite 1900
San Diego, CA 92101
(619) 231-1058
xanb@rgrdlaw.com
Class Counsel

I. <u>Background</u>

On February 29, 2024, Meridian registered eight Taxpayer Identification Numbers ("TINs") with the Class Administrator seeking to recover proceeds from the damages class settlement in *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 05-MD-

01720-BMC-JAM (E.D.N.Y.) ("*MDL 1720*"). The Class Administrator notified Meridian on September 5, 2024, that it is ineligible to file a claim because it is a payment facilitator and not a member of the settlement class. Meridian's counsel sent an email response seeking clarification on September 27, 2024 ("Meridian 9/27/24"). The Class Administrator responded the same day with an email that, among other things, described Judge Brodie's decision in *MDL 1720*, 735 F. Supp. 3d 249 (E.D.N.Y. 2024), *reconsideration denied*, 2025 WL 2490442 (E.D.N.Y. Aug. 29, 2025) ("*PayFacs I*"), *aff'd*, 2026 WL 1210154 (2d Cir. May 4, 2026) ("*PayFacs II*"). In a responsive email dated October 4, 2027, Meridian's counsel noted the possibility that the Second Circuit might reverse *PayFacs I* but did not provide any substantive argument on the issue of class membership. Instead, Meridian asserted that its email constituted a dispute of the Class Administrator's initial determination and a reservation of rights. *See* email dated Oct. 4, 2024 ("Meridian 10/4/24").

Meridian later sent me a letter with substantive arguments in support of its position. *See* undated letter from TJ Castello, attached to email dated July 13, 2026 ("Meridian 7/13/26").[1] In it, Meridian described the service it provides as follows:

---

[1] On May 22, 2025, the Class Administrator notified Meridian that before the dispute could be considered further, it must submit proof of its authority to register each of the relevant TINs. That was before the Court issued its decision in *In re MDL 1720 Damages Class Settlement Disps.*, 2026 WL 825503, *1 (E.D.N.Y. Mar. 17, 2026) ("*Teleflora R&R*"), *adopted in part*, 2026 WL 1729167, *1 (E.D.N.Y. June 16, 2026) ("*Teleflora*"). There, the Court adopted my recommendation to find that the payment facilitator registrant was not a class member and on that basis declined on mootness grounds to adopt my recommendation to require the company to submit its contracts with each of the thousands of merchants whose TINs it had registered. *See Teleflora* 2026 WL 1729167, at *3; *Teleflora R&R*, 2026 WL 825503, *9-10). In light of that ruling, I suspended the contract-filing requirement and asked Meridian to submit any further argument supporting its position on class membership. While Meridian did submit eight contracts, the Class Administrator determined that they did not establish any link between Meridian and the parties to those contracts. I do not address that issue here and Meridian may still dispute the Class Administrator's determination in that regard in the event the Court rejects or modifies the recommendations below.

> Meridian has for many years (including the class period) provided centralized electronic payment processing services for its member electric cooperatives and other utility customers. Meridian has been a cooperative throughout its existence, and its members are primarily electric distribution cooperatives that provide electric service directly to retail consumers. Meridian itself does not sell electricity or other utility services to consumers. Meridian's payment processing services are not its primary line of business, but are instead a single component of the integrated software suite ("Meridian Suite") it provides to its members. The Meridian Suite calculates utility bills, manages payment processing and accepts electronic payments, maintains customer accounts, meter information and billing records, and provides financial information system services. Meridian's payment processing services were therefore ancillary to its role as an enterprise utility software provider.

Meridian 71/3/26 at 1.

A Meridian member who uses Meridian's payment processing service enter into a "Third Party Payment Processing Agreement." *See id*., Attachment ("Payment Processing Agreement"). That form agreement "was not materially changed during the class period." Meridian 7/13/26 at 2. As set forth in its preamble, that contract describes the "services" Meridian will provide to its "Customer" (*i.e*., the member of the Meridian cooperative seeking Meridian's assistance with payment processing) "in connection with *the acceptance by Customer of credit card/e-check payments* by its customers ('End Users')[.]" Payment Processing Agreement at 1 (emphasis added); *see also id*. § 1(u) (defining "Transaction" as "the acceptance of an End User's credit card … payment by Meridian … *on behalf of Customer*") (emphasis added); *id*. § 2.1 (describing specific services Meridian will provide "in connection with *Customer's acceptance of credit card ... payments* from End Users") (emphasis added); *id*. § 2.2(a) (providing for specific circumstances in which "Customer … accepts a credit or debit card").

Meridian acknowledges that its members who entered into these Payment Processing Agreements "issued utility bills directly to their customers and maintained the underlying customer accounts and billing relationships." Meridian 7/13/26 at 2. Meridian does not say what

happens when those utility customers pay their bills with cash or a non-electronic check, but nothing in the Payment Processing Agreement suggests that Meridian plays any role in such transactions. Customers using payment cards for their utility bills "typically initiated the payment process through the *member's* website" rather than Meridian's. *Id*. (emphasis added). From there, cardholder's would be "redirected to Meridian's secure payment portal to complete the payment transaction." *Id*.

Based on these facts, as explained below, I respectfully recommend that the Court find that Meridian is not a class member because it did not "accept" payment cards for purposes of the Superseding Settlement Agreement, ECF 7257-2 ("Settlement Agreement").

II. Analysis

Four prior decisions, all arising from the litigation in *MDL 1720*, provide the legal context for this dispute. First, when the Court gave final approval to the Settlement Agreement, it endorsed the settling parties' definition of the class as consisting of "[a]ll persons, businesses, and other entities that have accepted any Visa-Branded Cards and/or Mastercard-Branded Cards in the United States at any time" during the relevant period, with exceptions not pertinent here. *See MDL 1720*, 2019 WL 6875472, at *31 (E.D.N.Y. Dec. 16, 2019) (the "Approval Order") (quoting Settlement Agreement ¶ 4) ), *aff'd sub nom. Fikes Wholesale, Inc. v. HSBC Bank USA, N.A.*, 62 F.4th 704 (2d Cir. 2023) ("*Fikes*"). In doing so, the Court overruled an objection from a group of franchisee entities that owned and operated gas stations (the "Branded Operators") that the use of "accepted" might allow their franchisor oil company suppliers to supplant them as class members and that uncertainty about that issue made class membership impossible to determine. *See id*.

Second, in affirming the Approval Order, the Second Circuit likewise rejected the Branded Operators' arguments. After acknowledging the ambiguity of the word "accepted," *Fikes,* 62 F.4th at 715, the court clarified the core question those arguments raised:

> The dispute is not over which group of class members will get the recovery; the dispute is over which claimants are within the class. Whoever "accepted" the payment cards is by definition in the class, gets compensation, and is bound by the release; an entity that did not accept the payment is by definition excluded from the class and is not bound by the settlement.

*Id*. at 717. Because that dispute did not implicate the requirement that a class must have ascertainable membership to be certified, the court did not need to decide who – as between franchisors and franchisees – had "accepted" payment cards and were therefore class members. *See id*. at 718.

Third, in *PayFacs I*, Judge Brodie ruled that two payment facilitators – Block, Inc., f/k/a Square, Inc. ("Square"), and Intuit Inc. and Intuit Payment Solutions, LLC (collectively, "Intuit") – had not "accepted" payment cards used to pay for goods and services sold by their merchant clients and therefore were not members of the class. *See id*. 735 F. Supp. 3d at 252. To reach that conclusion, Judge Brodie considered several factors, as summarized on review by the Second Circuit:

> (1) Square's merchant agreement, which states that Square allows merchants "to *accept* Cards from customers," *id.*; (2) Square's Complaint, which alleges that Square "helps Sellers (merchants who utilize Square to *accept* payment cards ...) start, run, and grow their businesses, including by enabling Sellers to *accept* card payments," *id.*; (3) Visa's rules, which distinguish between a "Payment Facilitator" and a "Merchant" and provide that an entity cannot simultaneously act as both a payment facilitator and a merchant, *id.* at 265; (4) Mastercard's rules, under which Sellers "accept" payment cards while payment facilitators facilitate the acquiring of transactions, *id.* at 266; (5) the Square Sellers' own declarations, which describe themselves as businesses that *accept* credit and debit cards, *id.*; (6) the "way real-world transactions are conducted" in which the "cardholder hands her card to a Seller, who 'accepts' it for payment at the point of sale," *id.* at 264; and (7) the incongruence of interpreting the word "accepted" to mean that Square "'accepts' a payment card, but the [Square] Seller 'accepts' cash, for two otherwise identical transactions," *id.* at 265.

*PayFacs II*, 2026 WL 1210154, at *1.[2]

Finally, in *Teleflora*, a payment facilitator ("Teleflora") challenged the Class Administrator's determination that it was not a class member and therefore ineligible to register a claim. In seeking my review, Teleflora noted a number of ways in which its contracts with merchant clients differed from the contracts between Square and Intuit and their respective clients. I analyzed those arguments in detail and concluded that they either replicated arguments by Square and Intuit that Judge Brodie explicitly rejected in *PayFacs I* or were not meaningfully different for purposes of determining class membership. *See Teleflora R&R*, 2026 WL 825503, at *4-7. I therefore recommended that this Court find that Teleflora had not accepted payments for its merchant clients' transactions and was not a class member. *Id*. at *10. This Court adopted that recommendation, reasoning as follows:

> Teleflora points to a number of factors that purportedly distinguish its situation from the situation presented in *PayFacs I*. The Court disagrees, and not just because many of these factors were actually considered in *PayFacs I*. Rather, it simply does not matter how many and in what ways Teleflora differs from Square and Intuit because they are the same in the one respect that matters: they don't accept payment cards.

*Teleflora* 2026 WL 1729167, at *2.

Applying the reasoning of the cases discussed above, Meridian is plainly not a class member. It is instead a service provider that acts as its merchant clients' agent in processing the card payments that those clients accepted from their respective customers. It is the clients, not

[2] In affirming Judge Brodie's analysis, the court observed that "[f]ew persons are in a better position to understand the meaning of a settlement than the district judge who oversaw and approved it[.]" *Id*. at *2 (quoting *W. Alton Jones Found. v. Chevron U.S.A., Inc.*, 97 F.3d 29, 33 (2d Cir. 1996) (cleaned up)). At the time Judge Brodie oversaw and approved the *MDL 1720* damages class settlement, I was the magistrate judge assigned to the case. In that role, I sat on the bench with Judge Brodie for oral argument of the objections to the proposed settlement. *See MDL 1720*, ECF 7774 (minute entry dated Nov. 7, 2019).

Meridian, who determine the amount and forms of payment they will accept in exchange for goods and services. Moreover, where customers may payments with cash or non-electronic checks, it is the clients who physically accept the payments, while Meridian plays no role at all. As the Second Circuit noted in *PayFacs II*, Judge Brodie based her decision in part on "the incongruence of interpreting the word 'accepted' to mean that Square 'accepts' a payment card, but the [Square] Seller 'accepts' cash, for two otherwise identical transactions," *PayFacs II*, 2026 WL 1210154, at *1 (quoting *PayFacs I*, 735 F. Supp. 3d at 265) (cleaned up).

Meridian makes a number of arguments that other payment facilitators have made in *PayFacs*, *Teleflora*, and other disputes, all of which I have previously found to be insufficient to establish class membership. They include policy arguments as well as arguments about the precise mechanics of the payment processing service and the precise ways in which the money transferred by payment cards to pay for merchants' goods and services flows to the merchant, the payment processing service, and the relevant bank. This Court has likewise rejected all of those arguments except for one that is currently under review. *See In Re MDL 1720 Damages Class Settlement Disputes*, 24-MC-03415-BMC-JAM, ECF 9 at 5-6 (E.D.N.Y. Aug. 6, 2026) (report and recommendation of Special Master rejecting arguments of payment facilitator including its reliance on having received service fees directly from cardholders).

In *Teleflora*, this Court summed up the relevant holding of the *PayFacs I* decision, "which withstood Second Circuit review." 2026 WL 1729167, at *2. First "only one entity in a payment chain can be a class member." *Id.* Second, "in a payment chain containing a merchant who accepts cards, and a payment facilitator who enables the merchant to accept cards, the merchant is the class member and the payment facilitator is not." *Id*. As the Court concluded:

> The question before the Court is whether Teleflora gets to be a class member not by virtue of its own sales, but by virtue of its member florists' sales which it

> facilitates. Logic must prevail here: Teleflora is not the one accepting cards for the member florists' transactions, so Teleflora is not the one that gets to "accept" the settlement proceeds relating to those transactions.

*Id*. So, too, here: Meridian seeks to be treated as a class member because of the client transactions it facilitated rather than by virtue of its own sales. Under the reasoning of both *PayFacs* and *Teleflora*, the Court should reject that position and find that Meridian is not a class member, and therefore ineligible to register merchant TINs.[3]

III. Recommendation

For the reasons set forth above, I respectfully recommend that the Court find that Meridian is not a member of the settlement class and that the Class Administrator therefore need not grant Meridian the authority to register the TINs at issue.

IV. Objections

This Report and Recommendation will be served on Meridian via the Court's ECF system and also by the Class Administrator.[4] Any interested party shall have 21 days from

---

[3] To the extent Meridian may have accepted payment cards as payment from its clients or others for goods and services that it sold to them, such transactions are not at issue here. Meridian may well be a member of the class with respect to such transactions. *See Teleflora*, 2026 WL 1729167, at *3 n.2. To the extent such transactions exist, it would support registering Meridian's own TIN only for the purpose of seeking recovery based on those specific transactions. It would not support allowing Meridian to seek recovery under any TIN, whether Meridian's or a client's, for the payments to the utilities whose TINs Meridian has registered.

[4] Meridian, as the only registrant currently before me on this matter, is the only party to be served in the first instance. While Meridian's clients (or their successors in interest) may have a potential interest in the outcome here, neither the Class Administrator nor I (nor the Court) necessarily has contact information for all of them. If the Court adopts the foregoing recommendations, the lack of notice will not prejudice any such client. However, in the event the Court rejects or modifies the recommendation Meridian's registration may be in conflict with other filers' registrations. I respectfully recommend that where such conflicts arise, the Class Administrator should provide a copy of the Court's decision and this report and recommendation to all parties to the conflict. I further recommend that class members involved in such conflicts retain the right to contest Meridian's class membership on the ground that it did not accept payment cards within the meaning of the Settlement Agreement.

today's date to file objections to the Special Master's report and recommendation with the Court. Such objections should be filed only on the dispute-specific miscellaneous docket (1:26-MC-03394-BMC-JAM). Any responses to objections may be filed within 21 days thereafter. No replies regarding objections shall be filed without the Court's permission. If any party objects to this Report and Recommendation, the evidence considered by the Special Master in making or recommending any findings of fact shall be filed on the dispute-specific miscellaneous docket. Such evidence may be filed under seal to protect confidentiality and the identities of claimants, as appropriate. The Court shall review the Special Master's reports and recommendations *de novo*. *See* Revised Order Appointing Special Master, 1:24-MC-03415-BMC-JAM, ECF 1, ¶ 4.

Dated: August 21, 2026

*/s/ James Orenstein*
Special Master