UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------- x

| | |
|---|---|
| IN RE MDL 1720 DAMAGES CLASS SETTLEMENT DISPUTES | ORDER OF <u>SPECIAL MASTER</u> |
| ------------------------------------------------------------------- x | 1:24-MC-03415-BMC-JAM |
| IN RE MDL 1720 DAMAGES CLASS SETTLEMENT DISPUTE CONFLICT ID NUMBERS: | 1:26-MC-03794-BMC-JAM |

197694 (HARMS OIL COMPANY).
201686 (SHREE RADHE RADHE INC.).
202164 (MALCHO'S 619 MONROE AVENUE, INC.).
213652 (GM FOOD & FUEL LLC).

------------------------------------------------------------------- x

**Parties and Representatives**:


Claims Compensation Bureau ("CCB")
Amanda Bender
130 Corporate Blvd.
Norfolk, VA 23502
(610) 834-9010
analyst@claimscompensation.com
Representative of CCB

Harms Oil Company ("Harms")
Heidi VanSambeek
337 22nd Ave. S.
Brookings, SD 57006-2856
(605) 696-5000
heidi.vansambeek@harmsoil.com
Representative of Harms

Settlement Recovery Group, LLC (SRG")
on behalf of Shree Radhe Radhe, Inc. ("SRR")
Sumesh Srivastava
222 N. Pacific Coast Highway, Suite 300
El Segundo, CA 90245
(888) 605-7617
claimsfiling@srgllc.com
Representative of SRG

Malcho's 619 Monroe Avenue, Inc. ("Malcho")
Sean Malcho
390 Culver Rd.
Rochester, NY 14607-1604
(585) 721-4711
sean@malchoscarwash.com
Representative of Malcho's

GM Food & Fuel LLC d/b/a GM Food and Gas ("GM")
Sayyad M. Hussain
5465 Babcock Trl.
Inver Grove, MN 55077-2171
(612) 227-6349
sayyadhussain@live.com
Representative of GM

Rule 23(b)(3) Class Plaintiffs (the "Class")
Alexandra S. Bernay
Robbins Geller Rudman & Dowd LLP
655 West Broadway, Suite 1900
San Diego, CA 92101
(619) 231-1058
xanb@rgrdlaw.com
Class Counsel

## I. Background

In each of the instant conflicts, CCB and a merchant have both registered with the Class Administrator to claim a share of the proceeds of the settlement fund in *In re Payment Card Interchange Fee Merchant Discount Antitrust Litigation*, Dkt. no. 05-MD-1720 (E.D.N.Y.) ("*MDL 1720*") arising out of the payment card transactions associated with the merchant's Taxpayer Identification Number ("TIN").[1] The basis for the claims of registrants Harms, SRG

[1] Before submitting a claim to receive the settlement proceeds corresponding to the payment card transactions of a merchant member of the Rule 23(b)(3) Settlement Class (the "Class"), a party must first register that merchant's TIN with the Class Administrator. The registrant must provide proof that it is the owner (or authorized representative of the owner) of the claim corresponding to that merchant TIN. In the absence of supporting documentation, this requirement can also be satisfied by providing the Claimant ID and Control Number printed on the original prepopulated claim forms that were mailed to known class members. Once the registrant establishes such authority, the Class Administrator updates the registrant's status to "approved." If there is only

(on behalf of its merchant client SRR), Malcho, and GM (collectively, the "Four Merchants") is readily apparent: each owns the entity with the TIN associated with the relevant payment card transactions giving rise to the claim.[2] CCB's registration is based on an assertion that it is acting as the authorized third-party filer ("TPF") for the current owner of those claims as the successor in interest to Clark Brands, LLC ("Clark").[3] As discussed below, before issuing a Report and Recommendation, I will afford the parties an opportunity to address an issue not raised in their submissions that may be dispositive.

The record before me includes the following:

A. <u>Documents submitted by CCB and common to all conflicts</u>

- Bill of Sale and Assignment of Claims Agreement dated June 2015 between Clark as seller and Portfolio Recovery Associates, LLC ("PRA") as buyer ("2015 Sale");
- Claim Service Agreement dated June 21, 2016, between CCB as TPF and BearingPoint, Inc. Liquidating Trust ("BearingPoint") as client ("2016 CSA");
- Bill of Sale and Assignment of Claims Agreement dated November 29, 2018, between Oak Point Partners, LLC ("Oak Point") as seller and PRA as buyer ("November 2018 Sale");
- Asset Purchase Agreement dated December 5, 2018, between BearingPoint as seller and Oak Point as buyer ("December 2018 APA");

---

one approved registrant for a given TIN, the registrant may submit a claim for that TIN. In cases where multiple parties have registered the same TIN, the Class Administrator designates the TIN as being in "conflict" and does not permit any registrant to submit a claim until the conflict is resolved.

[2] Specifically, Harms has registered a TIN ending in 2132, SRG has registered SRR's TIN ending in 6796, Malcho has registered a TIN ending in 0058, and GM has registered a TIN ending in 9328.

[3] A TPF is a business that enters into agreements with merchants to register and prosecute their claims of settlement funds in exchange for a portion of the merchants' recovery. *See MDL 1720*, 2014 WL 4966072, at *4 (E.D.N.Y. Oct. 3, 2014) (describing "the business of third-party claims filing companies").

- Notice of Transfer and Assignment of Rights dated March 8, 2021, to Class Administrator from CCB as seller and Park Interchange LLC ("Park") as buyer reporting transfer of ownership of MDL 1720 claims associated with multiple entities including Clark ("2021 Assignment");

- Declaration dated March 24, 2024, by Park's authorized representative on behalf of Park and CCB providing a list of merchants (including the Four Merchants) whose MDL 1720 claims were transferred to Park under the 2021 Assignment ("Park Declaration");

- Email from Park to the Class Administrator dated March 28, 2024, providing a copy of the Park Declaration and advising that CCB is serving as its TPF;

- Letter dated August 8, 2025 from CCB to Class Administrator describing its authority to register the TINs of the Four Merchants ("CCB 8/8/25").

B. Conflict ID No. 197694 (Harms)

- Email dated August 28, 2024 from CCB to Harms;.

- Emails dated August 28-29, 2024, between CCB and Harms;

- Emails dated August 28-Septmber 26, 2025, among Harms, CCB, and the Class Administrator; and

- Email dated February 3, 2025 from Harms to the Class Administrator.

C. Conflict ID No. 201686 (SRR)

- Representation agreement dated May 24, 2024, between SRG (a.k.a. Brownstone Recovery Group, Inc.) and SRR;

- Email dated July 24, 2024, from CCB to SRR;

- Emails dated February 3-6, 2025, between SRG and the Class Administrator, with attached spreadsheet listing conflict-related data including SRR's name and TIN;

D. Conflict ID No. 202164 (Malcho)

- Email dated October 17, 2024 from CCB to Malcho.

E. Conflict ID No. 213652 (GM)

- Email from Sayyad M. Hussein ("Hussein") to Class Administrator dated March 23, 2019;

- Email dated December 11, 2024 from CCB to Hussain and Class Administrator; and
- Email from Hussein to Class Administrator dated January. 9, 2025.

II. Analysis

The question in each of the instant conflicts is who owns the claim associated with the merchant's TIN: the merchant, or CCB's client. In each case, CCB relies on the same series of transactions in support of its position. The first of those transactions is the 2015 Sale in which Clark conveyed "all of [its] right title and interest in and to any and all [*MDL 1720*] Claims[.]" 2015 Sale, Recital D; *see id*., § 1 ("[Clark] hereby absolutely and unconditionally sells, transfers and assigns unto Buyer, its successors and assigns, all right, title and interest in and to the Claims"). The later transactions in the series further conveyed Clark's former *MDL 1720* claims, ultimately to CCB's client. As a result, the critical question here is whether, at the time of the 2015 Sale, Clark owned the *MDL 1720* claims arising from the Four Merchants' payment card transactions.[4]

In the 2015 Sale agreement, Clark described itself as an entity that "licenses the 'Clark' and 'Crown' trademarks and other trademarks and trade names to independent marketers and retailers throughout the United States (the 'Clark Licensees') and *processes certain credit and debit card transactions* for the Clark Licensees and other third parties ('Clark Processing Customers')." 2015 Sale, Recital B (emphasis added).[5] The agreement then recited that Clark

---

[4] CCB has relied on the 2015 Sale of Clark's *MDL 1720* claims as the basis for registering over 1500 TINs in addition to those of the Four Merchants. A finding that Clark did not own the *MDL 1720* claims it purported to convey in the 2015 Sale could affect the validity of those other registrations as well.

[5] That description is consistent with the way Clark continues to hold itself out. As it states in the first sentence on the home page of its company website, "Clark is a trusted petroleum payment processing solution for petroleum marketers and retailers throughout the United States." https://www.clarkbrands.com/company/ (visited Sept. 23, 2026).

owned the *MDL 1720* claims being sold "[a]s a result of transactions or relationships to which [it] currently is and/or prior to the date hereof has been a party[.]" *Id*., Recital C. It went on to identify those claims with greater specificity:

> [A]ny of [Clark's] actual or potential claims, causes of action, choses in action, and rights of [Clark] as of the date hereof, in each case solely in respect of the subject matter of such class-action litigation proceedings and based on transactions or relationships to which Seller is or has been a party, including without limitation the transactions represented in the Previously Provided Transaction Data, as defined below, whether or not specifically identified or identifiable as of the date hereof … are referred to herein collectively as the "Claims"[.]

*Id*.

The agreement defined the term "Previously Provided Transaction Data" to be the transaction date "attached hereto as Exhibit C." *Id*., § 1. The title page of Exhibit C to the 2015 Sale describes the content of that exhibit as follows: "Previously Provided Transaction Data (copies of emails including the electronic files that comprise the Previously Provided Transaction Data are attached[.]" *Id*., Ex C. The record before me includes copies of four emails, each of which refers to "an attached zip file [that] will be a part of Exhibit C" but does not include the electronic attachments to which those emails refer. I assume for purposes of analysis that those files included the payment card transaction data for all of the Four Merchants.[6]

Nothing in the 2015 Sale agreement, or in any of CCB's other submissions, suggests that Clark ever owned any of the Four Merchants or accepted the payment cards as payment for their transactions. Nor does anything in the record before me suggest that the Four Merchants conveyed their *MDL 1720* claims to Clark in exchange for licenses to use Clark's trademarks and

[66] CCB does not explicitly assert that the Four Merchants' transaction data was included in Exhibit C, but it does assert that its client owns the Four Merchants' claims and its submissions support the inference that the ultimate source of the client's ownership is the 2015 Sale. *See* 2021 Assignment; Park Declaration; CCB 8/8/25.

trade names. Instead, it appears that Clark purported to own the *MDL 1720* claims associated with merchants' transactions based on its role as an entity that "processes certain credit and debit card transactions for the Clark Licensees and other third parties ('Clark Processing Customers')." 2015 Sale, Recital B. But providing such payment processing service does not necessarily give rise to a cognizable claim based on membership in the settlement class.

Under paragraph 4 of the Superseding Settlement Agreement (*MDL 1720* , ECF 7257-2) ("Settlement Agreement"), a class member is an entity that "accepted" Visa and Mastercard payment cards during the class period. *See MDL 1720*, 2019 WL 6875472, at *31 (E.D.N.Y. Dec. 16, 2019) (settlement approval order), *aff'd sub nom. Fikes Wholesale, Inc. v. HSBC Bank USA, N.A.*, 62 F.4th 704 (2d Cir. 2023). This Court has repeatedly endorsed the proposition that "in a payment chain containing a merchant who accepts cards, and a payment facilitator who enables the merchant to accept cards, the merchant is the class member and the payment facilitator is not." *In re MDL 1720 Damages Class Settlement Disps.* ("*MDL 1720 Disputes*"), 2026 WL 1729167, *2 (E.D.N.Y. June 16, 2026) ("*Teleflora*") (adopting in pertinent part report and recommendation finding Teleflora LLC not to be a class member in its capacity as a payment processor); *see also MDL 1720*, 735 F. Supp. 3d 249 (E.D.N.Y. 2024) (holding same with respect to Square and Intuit payment processing services), *reconsideration denied*, 2025 WL 2490442 (E.D.N.Y. Aug. 29, 2025), *aff'd*, 2026 WL 1210154 (2d Cir. May 4, 2026); *MDL 1720 Disputes*, Order dated Sept. 15, 2026 (adopting report and recommendation finding same with respect to FTD, LLC); *id.*, Order dated Sept. 9, 2016 (same with respect to Allpaid, Inc.); *id.*, Order dated Aug. 31, 2016 (same with respect to RoyalPay, Inc.); *id.*, Order dated Aug. 18, 2016 (same with respect to ACI Worldwide).

As the Court concluded in *Teleflora*:

> The question before the Court is whether Teleflora gets to be a class member not by virtue of its own sales, but by virtue of its member florists' sales which it facilitates. Logic must prevail here: Teleflora is not the one accepting cards for the member florists' transactions, so Teleflora is not the one that gets to "accept" the settlement proceeds relating to those transactions.

*Teleflora*, 2026 WL 1729167, *2. The same logic appears to apply here: based on the record before me, it appears that CCB seeks to prevail in the instant conflicts because of the transactions Clark facilitated rather than by virtue of Clark's own sales. However, none of the parties to the instant conflicts have discussed that issue in their submissions. Accordingly, before issuing a report and recommendation, I will afford each of the parties an opportunity to address whether Clark was a class member with respect to the merchant transactions it processed.[7]

## III. Conclusion

For the reasons set forth above, I invite the parties an opportunity to submit arguments as to whether Clark owned the Four Merchants' *MDL 1720* damages claims at the time it entered into the 2015 Sale. Each party may submit a brief of no more than 25 pages, exclusive of exhibits, by October 14, 2026. After reviewing the submissions, I will issue a report and recommendation to the Court.

Dated: September 23, 2026

/s/ James Orenstein
Special Master

---

[7] To the extent Clark may have accepted payment cards as payment for goods and services that it directly sold to others, such transactions do not appear to be at issue here. CCB's client may well be a member of the class with respect to such transactions. *See Teleflora*, 2026 WL 1729167, at *3 n.2. To the extent such transactions exist, it would support registering Clark's TIN only for the purpose of seeking recovery based on those specific transactions.