UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------- x

| | |
|---|---|
| IN RE MDL 1720 DAMAGES CLASS SETTLEMENT DISPUTES | REPORT AND RECOMMENDATION <u>OF SPECIAL MASTER</u> |
| ------------------------------------------------------- x | 1:24-MC-03415-BMC-JAM |
| IN RE MDL 1720 DAMAGES CLASS SETTLEMENT DISPUTE | 1:26-MC-03531-BMC-JAM |
| APPEAL OF RECOVERMYFEE.COM on behalf of BREADS OF THE WORLD, LLC. | |

------------------------------------------------------- x

**Parties**:

RecoverMyFee.com ("RMF") on behalf of Breads of the World, LLC ("BOTW")
Rule 23(b)(3) Class Plaintiffs (the "Class")

**Representatives**:


Jacob Friedman
RecoverMyFee.com
670 Myrtle Ave., Suite # 6-288
Brooklyn, NY 11205
(203) 489-2521
claims@recovermyfee.com
Representative of RMF

Douglas G. Hickel
Summers Compton Wells LLC
903 S. Lindbergh Blvd., Suite 200
St. Louis, MO 63131
(314) 991-4999
dhickel@scw.law
Counsel making submissions in support of RMF's registration on behalf of BOTW

Alexandra S. Bernay
Robbins Geller Rudman & Dowd LLP
655 West Broadway, Suite 1900
San Diego, CA 92101
(619) 231-1058
xanb@rgrdlaw.com
Class Counsel

I. <u>Background</u>

RMF is a third-party filer ("TPF")[1] that has registered with the Class Administrator to claim a share of the proceeds of the settlement fund in *In re Payment Card Interchange Fee Merchant Discount Antitrust Litigation*, Dkt. no. 05-MD-1720 (E.D.N.Y.) ("*MDL 1720*") arising out of BOTW's payment card transactions.[2] Attorney Douglas G. Hickel ("Hickel"), purporting to represent BOTW, objects to the Class Administrator's determination that RMF has not sufficiently demonstrated its authority to register that claim.[3] As explained below, I respectfully recommend that the Court approve the Class Administrator's determination.

RMF registered on behalf of BOTW on February 4, 2025. Its submission included documentation signed by Doron Berger ("Berger") authorizing RMF to do so. Berger described himself as Vice President of BOTW but his email address ended in "@outlook.com" rather than

---

[1] A TPF is a business that enters into agreements with merchants to register and prosecute their claims of settlement funds in exchange for a portion of the merchants' recovery. *See MDL 1720*, 2014 WL 4966072, at *4 (E.D.N.Y. Oct. 3, 2014) (describing "the business of third-party claims filing companies").

[2] Before submitting a claim to receive the settlement proceeds corresponding to the payment card transactions of a merchant member of the Rule 23(b)(3) Settlement Class (the "Class"), a party must first register that merchant's Taxpayer Identification Number ("TIN") with the Class Administrator. The registrant must provide proof that it is the owner (or authorized representative of the owner) of the claim corresponding to that merchant TIN. In the absence of supporting documentation, this requirement can also be satisfied by providing the Claimant ID and Control Number printed on the original prepopulated claim forms that were mailed to known class members. Once the registrant establishes such authority, the Class Administrator updates the registrant's status to "approved." If there is only one approved registrant for a given TIN, the registrant may submit a claim for that TIN. In cases where multiple parties have registered the same TIN, the Class Administrator designates the TIN as being in "conflict" and does not permit any registrant to submit a claim until the conflict is resolved.

[3] Mr. Hickel identifies himself as BOTW's counsel and has never claimed to represent RMF. As explained below, however, BOTW no longer exists. It therefore has no ability to appear in this litigation through counsel or in any other way. RMF has neither objected to Mr. Hickel's submissions nor made any of its own. Although Mr. Hickel appears to have no formal authority to represent RMF or BOTW, in an abundance of caution I consider his submissions as if they had been made by RMF.

with a domain name that suggested any affiliation with BOTW. On March 11, 2025, the Class Administrator asked RMF to provide more information about its authorization to act on BOTW's behalf. Jay Kagan ("Kagan") of RMF responded as follows:

> We verified that Mr. Doron Berger, former VP of Breads of the World, did indeed hired [sic] us for our services.
>
> We spoke with him, and he confirmed that the company was sold to Panera Bread around 2017 and dissolved in 2022, along with all associated email addresses. His former email was doron.berger@breadsoftheworld.com.
>
> Doron and his late partner, Ken Rosenfeld (who passed away this February 14), built the company to about 90 locations across multiple states. He provided extensive details on its formation, operations, and key dates. He has also saved emails related to government contracts and has documents proving his partnership.
>
> We are fully confident that this is a legitimate and valid claim filed by the correct person.

RMF 3/11/25;[4] *see also* email from RMF 3/18/25 (attaching documents sent by Berger "with his name on it for verification purposes").

On March 18, the Class Administrator acknowledged that the documents RMF had provided "do link Mr. Berger to [BOTW]" but did not include BOTW's Tax Identification Number ("TIN") as required. Class Administrator 3/18/25. A few weeks later, in response to Kagan's request for an update, the Class Administrator reported that RMF's registration

> remains deficient because the documents that you provided do not show that Mr. Berger has the authority to sign for this merchant/TIN at this time. Based on the documentation and your notes below, the company was sold in 2017. You and Mr. Berger need to establish that he retained the rights to this claim.

Class Administrator 4/11/25.

[4] I will use "[sender] [date]" to refer to emails in the record before me.

RMF's Kagan responded by asking the Class Administrator for "some clarification on a general question, to help guide how we proceed." RMF 4/24/25. Specifically, Kagan asked, "In a situation where a business was sold … who has the right to claim for interchange fees paid prior to the sale?" *Id*. Kagan then provided an answer to his own question:

> It seems logical that the previous owner should retain that right, since they were the one who actually paid those fees. In most cases, when a business is sold, a new entity and Tax ID are created for the buyer. The original Tax ID typically remains with the seller, and since these claims are tracked by Tax ID, only the previous owner would even have access to that claim.
>
> If the previous owner isn't allowed to file, it could effectively mean no one is able to claim, which seems counter to the intention of the settlement. I understand that depending on the deal structure, there may be situations where the new owner has a claim as well, but I hope you can clarify the court's position on this issue.

*Id*. The Class Administrator answered by correctly noting the answer would depend on the terms of the asset sale. Class Administrator 4/24/25.

"After discussing the matter thoroughly" with Berger, Kagan reported the following:

- Breads of the World LLC was formed in Missouri on March 6, 1997, and operated as a franchisee of Panera Bread, owning and managing bakery cafes in Ohio, Colorado, and Kentucky. (Articles of Organization are attached.)
- The company sold the last of its assets—the Panera Bread cafes in Colorado—in April 2018, with prior sales of the Ohio and Kentucky locations occurring in 2016.[5]
- All these transactions were asset sales; crucially, the legal entity Breads of the World LLC itself continued to exist after these sales.
- Mr. Berger continued with the company for several years following the last asset sale, overseeing the winding down of business operations.
- The company was only formally dissolved on September 14, 2023. (Articles of Termination attached.)

RMF 5/21/25.

[5] Documents submitted after the date of this email show that BOTW sold its Ohio locations in 2014 rather than 2016.

The Class Administrator determined that RMF's registration remained deficient for two reasons. First, it noted that nothing in the supplemental documents established that Berger was authorized to speak for BOTW. Class Administrator 5/23/25 (citing BOTW's Articles of Termination dated Sept. 14, 2023 (signed by "Bow Family Holdings LLC, a Majority Class A Interest, by The Kenneth J. Rosenthal RLT u/t/a dated June 3, 1993, Manager – Kenneth Rosenthal Trustee")). Second, the Class Administrator observed that "legal claims can be considered an asset" and that RMF had not submitted anything that showed BOTW retained its *MDL 1720* claims after the asset sales Kagan had mentioned. *Id*.

Kagan later forwarded two emails to the Class Administrator in further support of RMF's registration. RMF 8/18/25. The first was an email dated August 7, 2025, from Hickel to Kagan, with copies to Berger at an "@outlook.com" address and Raymond Battocletti ("Battocletti") at an address ending in "@solasalons.com." Hickel described himself "[a]s the attorney for [BOTW]" and asserted that "Berger is the former VP of Administration & RE Development and has full authority to act on behalf of [BOTW]." *Id*. The second email Kagan attached was dated earlier the same day and was from Battocletti to Kagan, with copies to Berger and Hickel. In one font (consistent with that of the address and signature blocks) Battocletti began, "Jay, Doron passed your email along to me. Please be advised that Doron Berger is". The sentence then continued in a larger font, "authorized as former VP of Administration & RE Development, to act on behalf of Breads of the World LLC. in all matters pertaining to this claim." *Id*. In the signature block, Battocletti identified himself as "CFO" of "Breads of the World LLC." *Id*.[6]

[6] Battocletti's signature block also included a telephone number that does not appear to be associated with BOTW in any of the supporting documents RMF has submitted. A Google search for "Breads of the World LLC" and the telephone number in the signature block produced no matching results.

Over the next several months, RMF continued exchanging emails with, and providing additional documents to the Class Administrator, to no avail. The supplemental documents included a redacted copy of one of three asset purchase agreements from 2014-2018 disposing of BOTW's assets (the "APAs") and a document dated September 4, 2020, entitled "Resolutions of a Majority Class A Interest of Breads of the World, L.L.C." (the "Resolutions"). As relevant here, the Resolutions included the following text:

> The undersigned, being a Majority Class A Interest of Breads of the World, L.L.C., a Missouri limited liability company (the "Company"), does hereby adopt the following resolutions and does authorize and consent to the Company executing such documents and performing all acts necessary to carry out the intent of such resolutions:
>
> RESOLVED, that the Company is authorized to dissolve in accordance with the laws of the State of Missouri by filing Notice of Winding Up and Articles of Termination with the Missouri Secretary of State, and publish notice of same.
>
> …
>
> FURTHER RESOLVED, that Kenneth J. Rosenthal, as Trustee of The Kenneth J. Rosenthal Revocable Living Trust u/t/a dated June 3, 1993, as Manager of BOW Family Holdings LLC, as a Majority Class A Interest of the Company, and Doron Berger, as Vice President of the Company, are hereby authorized and empowered, for and on behalf of the Company, to execute any and all documents, agreements or instruments as they deem necessary, and to take such actions as they deem advisable in order to dissolve the Company.
>
> …
>
> CONSENTED TO:
>
> BOW Family Holdings LLC, a Majority Class A Interest
>
> By: The Kenneth J. Rosenthal Revocable Living Trust u/t/a dated June 3, 1993, Manager

Resolutions at 1.

The Class Administrator informed RMF that it could ask me to review the determination that it has not established authority to register on behalf of BOTW. Hickel has since supplemented the record before me by providing full, unredacted copies of all three APAs.

II. Analysis

A. BOTW Has Sold Its *MDL 1720* Claim

The three APAs are all similar in structure. Each conveys a different set of Panera Cafe locations to the buyer. The 2014 APA sells the locations in the area of Dayton, Ohio; the 2016 APA sells the locations in the area of Cincinnati, Ohio; and the 2018 APA sells the locations in in Colorado. All three of the APAs include each of the following provisions:

- Section 1.1, which provides that BOTW is selling to the purchaser all of the "right, title and interest of Seller in and to the properties, assets and rights of every nature typically used in the operation of a Panera Cafe, whether real, personal, tangible, intangible or otherwise and whether now existing or hereafter acquired (other than the Excluded Assets) located at the locations shown on Exhibit A and relating to or used or held for use in connection with the Business (collectively, the "Assets"), including all such items in the following categories."[7]

- Section 1.2(a) which defines the "Excluded Assets" in a series of subsections, each defining a different category of assets. As relevant are two such provisions:

  - Subsection (a): "the assets listed on Schedule 1.2" and

  - Subsection (f) in the 2014 and 2016 APAs, and subsection (h) of the 2018 APA: "any and all rebates and incentives from vendors of the Business arising from or related to the operation of the Business prior to Closing, including without limitation any rebate or incentive provided by any vendor of the Business which, pursuant to the applicable contract with any such vendor, is determined at any time following the Closing but which is based, in whole or in part, on Seller's operation of the Business prior to Closing[.]"[8]

[7] All three APAs have 13 subsections within Section 1 that are substantively similar categories of assets. The 2016 APA also includes a subsection that defines an office facility lease in the Cincinnati area as part of the included assets. 2016 APA § 1.1(e). The 2018 APA has a similar additional subsection with respect to an office facility lease in the Denver area. *See* 2018 APA § 1.1(e). It also has one more additional subsection that defines the assets being sold to include "all claims, causes of action, choices in action, rights of recovery, and rights of Seller relating to the Assets, excluding any claims to collect accounts receivable of Seller."

[8] The 2018 version adds an exception to this provision that excludes "the pro-rated portion of any rebate or incentive to the extent it relates to a post-Closing period[.]" 2018 APA § 1.1(h).

- Schedule 1.2, which specifies the "Excluded Assets." In each of the three APAs, Schedule 1.2 lists one or more specific rebates due to BOTW under specific contracts. The 2018 APA also includes a catchall "Item 4" that refers to "[a]ny other rebates due to Seller pursuant to any agreement or other understanding with any vendor, supplier or third party for the period prior to the Closing Date."

Read together in the context of the entire agreements, I easily conclude that each of the APAs included BOTW's *MDL 1720* claims within the assets sold to the purchaser. In each case, the contract defines the "Assets" being sold as an expansive array of "all rights, title and interest" before setting out a list of specific categories of assets that fall within the scope of that bundle of "all rights, title and interest." It then goes on to recite that only certain specifically listed "Excluded Assets" are not within the bundle of assets so conveyed. Each APA defines several specific categories of such "Excluded Assets" and also includes by reference everything listed on Schedule 1.2. In none of the agreements does anything in the categories of excluded assets or Schedule 1.2 refer in any way to BOTW's pending legal claims.

RMF has suggested that BOTW's *MDL 1720* claims fall within the scope of excluded assets because of the APA's provisions regarding rebates – namely, Section 1.1(f) in the 2014 and 2016 APAs and Section 1.1(h) as well as Item 4 of Schedule 1.2 in the 2018 APA. *See* RMF 1/8/26.[9] That position is unpersuasive for the simple reason that the Superseding Settlement Agreement, ECF 7257-2 ("Settlement Agreement") does not bestow rebates pursuant to any agreement BOTW had with any vendor. Instead, the Settlement Agreement creates a settlement fund (among other remedies) in exchange for Rule 23(b)(3) Class's release of its members'

[9] At the time of this email, RMF had submitted only a redacted version of the 2018 APA, in which Schedule 1.2 includes the catchall rebate item described above. RMF's email quoted that item without mentioning that it had no counterpart in the 2014 and 2016 APAs. Any misimpression that may have been created at the time that the provision appeared in all three APAs has dissipated now that Hickel has complied with my request to see all three APAs in unredacted form.

claims for damages. The sole mention of “rebates” in the entire Settlement Agreement underscores that point. *See* Settlement Agreement at I-2 (Appendix I, Plan of Administration and Distribution, § II.B: “the Plan proposes to determine the amount of Interchange Fees Paid attributable to each Claimant during the Class Period … and allocate the settlement fund based on Interchange Fees Paid, with no reductions based on rebates, marketing support or promotional payments, or other consideration received.”).

When BOTW sold all of its assets in the three APAs, it disposed of all of its legal rights aside from those reserved as Excluded Assets. Those legal rights included its damages claim in *MDL 1720*, which cannot remotely be considered to be among the Excluded Assets. Because BOTW divested itself of its claim, it is no longer a member of the class because a claim purchaser stands in the shoes of a merchant who sells its claim. As a result, the record before me does not support RMF’s registration of BOTW’s TIN.[10]

B. RMF Has Not Established Berger’s Authority to Make Decisions for BOTW

An independent reason to endorse the Class Administrator’s determination is that the record before me does not suffice to show that Berger – who engaged RMF to register BOTW’s TIN – has any legal right to dispose of any assets BOTW may have. First, *no one* can dispose of BOTW’s assets because no such assets can exist. BOTW was dissolved in 2023 and as a result is no longer able to own any property or take any action. Second, even if BOTW could register its TIN with the Class Administrator (or engage a TPF like RMF to do so), there is nothing in the record that establishes Berger’s right to take such action on its behalf.

[10] RMF’s Kagan expressed the concern that “[i]f the previous owner isn't allowed to file, it could effectively mean no one is able to claim.” RMF 4/24/25. That is incorrect. If the Court adopts my recommendation, that will not prevent the claim’s current owner from registering BOTW’s TIN as BOTW’s successor in interest.

RMF has acknowledged – based on information provided by Berger himself – that Berger is a "former" Vice President of BOTW, that he no longer has an email address associated with BOTW, and that BOTW has been dissolved. *See* RMF 3/11/25. Attorney Hickel has likewise acknowledged that Berger is BOTW's "former" Vice President, even while insisting that Berger "has" authority to act for BOTW. Hickel 8/7/25. Battocletti also acknowledged that Berger is a "former" BOTW officer, albeit while asserting, like RMF's counsel, that Berger "is" authorized to act on BOTW's behalf. Battocletti 8/7/25. What neither RMF, nor Hickel, nor Battocletti can explain is how Berger could possibly still have such authority. As far as the record establishes, the only authority BOTW conferred on Berger was that it empowered him to act for a limited purpose: "to execute … documents, agreements or instruments … and to take such action as [he deems] advisable in order to dissolve the Company." Resolution at 1. That authority necessarily ended when BOTW dissolved.

I do not mean to suggest that anyone is dissembling in describing Berger's former position with BOTW or that anyone -- Berger, RMF, Hickel, or Battocletti – has acted in bad faith in asserting that Berger could properly engage RMF to register BOTW's TIN. But their good faith belief in that regard does not suffice; any registrant must be able to demonstrate its actual authority to register any merchants TIN. Because RMF cannot demonstrate that it was engaged by someone with such authority, the Class Administrator has properly declined to process RMFs registration of BOTW's TIN.

III. <u>Recommendation</u>

For the reasons set forth above, I respectfully recommend that the Court approve the Class Administrator's determination that RMF is not authorized to register BOTW's TIN and therefore direct the Class Administrator to withdraw that registration.

IV. Objections

This Report and Recommendation will be served on all registrants who are parties to the instant conflict via the Court's ECF system, and the Class Administrator will also promptly provide a copy to all such registrants.[11] Any interested party shall have 21 days from today's date to file objections to the Special Master's report and recommendation with the Court. Such objections should be filed only on the dispute-specific miscellaneous docket (1:26-MC-03531-BMC-JAM). Any responses to objections may be filed within 21 days thereafter. No replies regarding objections shall be filed without the Court's permission. If any party objects to this Report and Recommendation, the evidence considered by the Special Master in making or recommending any findings of fact shall be filed on the dispute-specific miscellaneous docket. Such evidence may be filed under seal to protect confidentiality and the identities of claimants, as appropriate. The Court shall review the Special Master's reports and recommendations *de novo*. *See* Revised Order Appointing Special Master, 1:24-MC-03415-BMC-JAM, Doc. 3, ¶ 4.

Dated: September 1, 2026

*/s/ James Orenstein*
Special Master

[11] In this case, where the issue is a single registrant's status rather than a conflict between two or more registrants, the only party to be served in the first instance is RMF. Non-party attorney Hickel will also be served. If the Court rejects or modifies the foregoing recommendation, a conflict may arise if some other entity registers BOTW's TIN. I respectfully recommend that in the event such a conflict arises, the Court direct the Class Administrator to provide a copy of the Court's decision and this report and recommendation to all parties to the conflict. I further recommend that any merchants involved in such a conflict retain the right to contest the issues addressed here.