UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------ x

IN RE MDL 1720 DAMAGES CLASS SETTLEMENT DISPUTES

REPORT AND RECOMMENDATION OF SPECIAL MASTER

------------------------------------------------------ x

1:24-MC-03415-BMC-JAM

IN RE MDL 1720 DAMAGES CLASS SETTLEMENT DISPUTE CONFLICT ID NUMBERS:

156100 (LEAPSET REDWOOD CITY).

1:26-MC-03904-BMC-JAM

------------------------------------------------------ x

**Parties and Representatives**:


Neil Desai
AB CarVal Investors LP ("ABC")
c/o Haybeach Partners LLC, Attn: Darren Yulfo
555 Theodore Fremd Ave., Suite C-303
Rye, NY 10580
(646) 827-4575
abcarvalpcix@haybeach.com
Representative of ABC

Andrew Honnold
Cake Corporation ("Cake") f/k/a Leapset
4040 W Boy Scout Blvd., Floor 10
Tampa, FL 33607
(813) 400-2000
Andrew.honnold@madmobile.com
Representative of Cake

Rule 23(b)(3) Class Plaintiffs (the "Class")
Alexandra S. Bernay
Robbins Geller Rudman & Dowd LLP
655 West Broadway, Suite 1900
San Diego, CA 92101
(619) 231-1058
xanb@rgrdlaw.com
Class Counsel

I. Background

ABC and Cake have both registered with the Class Administrator to claim a share of the proceeds of the settlement fund in *In re Payment Card Interchange Fee Merchant Discount Antitrust Litigation*, Dkt. no. 05-MD-1720 (E.D.N.Y.) ("*MDL 1720*") arising out of the payment card transactions of Leapset Redwood City (Taxpayer Identification Number ("TIN") ending in 7919) ("Leapset").[1] Cake is the business formerly known as Leapset. ABC asserts that it owns the claim as the successor in interest to Leapset's former corporate parent, following a series of transactions in 2019. Specifically, ABC states that in 2019 Claims Compensation Bureau ("CCB") purchased all of the *MDL 1720* claims owned by Sysco Corporation ("Sysco") and its affiliates – including Cake – and then sold those claims to ABC later the same year in 2019. It further asserts that an entity called "Mad Mobile acquired Cake Corporation/Leapset in August of 2020," ABC 5/14/24,[2] by which time Cake had divested itself of the claim at issue here. Cake is not satisfied that the claim originally belonging to Leapset was conveyed as part of the 2019 transactions described above. *See* Cake 5/15/24. As discussed below, I conclude that ABC owns the claim and therefore respectfully recommend that the Court direct the Class Administrator to process ABC's registration and withdraw Cake's.

---

[1] Before submitting a claim to receive the settlement proceeds corresponding to the payment card transactions of a merchant member of the Rule 23(b)(3) Settlement Class, a party must first register that merchant's TIN with the Class Administrator. The registrant must provide proof that it is the owner (or authorized representative of the owner) of the claim corresponding to that TIN. In the absence of supporting documentation, this requirement can also be satisfied by providing the Claimant ID and Control Number printed on the original prepopulated claim forms that were mailed to known class members. Once the registrant establishes such authority, the Class Administrator updates the registrant's status to "approved." If there is only one approved registrant for a given TIN, the registrant may submit a claim for that TIN. Where multiple parties have registered the same TIN, the Class Administrator designates the TIN as being in "conflict" and does not permit any registrant to submit a claim until the conflict is resolved.

[2] I will use "[party] [date]" to refer to the parties' communications.

The record before me includes the following documents:

- Bill of Sale and Assignment of Claims Agreement dated May 20, 2019, between Sysco as seller and CCB as buyer ("2019 CCB Purchase Agreement");

- Assignment of Claims Agreement dated November 8, 2019, between CCB as seller and ABC as buyer ("2019 ABC Purchase Agreement");

- Emails dated April 22-May 16, 2024 among ABC, Cake, and the Claim Administrator; and

- Letter dated August 28, 2025, from ABC to Special Master with exhibits including:

    - Copy of the 2019 ABC Purchase Agreement;

    - Copy of the 2019 CCB Purchase Agreement; and

    - List of ID numbers and TINs of merchants whose claims ABC contends were conveyed from Sysco to CCB and then from CCB to ABC in 2019.

II. Analysis

The parties' dispute turns on whether Leapset's *MDL 1720* claim was conveyed from Sysco to CCB and then to ABC in 2019. The answer cannot be found within the four corners of the two relevant purchase agreements (or at least not within the portions of those documents in the record before me). Specifically neither the name "Leapset" nor the Leapset TIN ending in 7919 appears in either document. If that were the extent of the record, I would defer making a report and recommendation and ask the parties to provide further evidence that Sysco did or did not own Leapset's claim at the time of the 2019 CCB Purchase Agreement. I conclude, however, that enough information is available to answer that question in the affirmative.

Cake does not appear to contest that it was a Sysco subsidiary in 2019. Cake's Legal Advisor has referred to the 2019 CCB Purchase Agreement as "an assignment of certain claims by Cake Corporation's former parent company." Cake 5/2/24. In addition, Cake has pointed to

Sysco's SEC filings for "the full list of Sysco Corporations subsidiaries … for the year ended June 19, 2019[.]" Cake 5/6/24 (providing link to SEC filing). That list includes Cake Corporation.[3]

What Cake does appear to contest is that its *MDL 1720* claim was among those that Sysco to CCB in 2019. Its argument in that regard is reproduced below:

> 1-According to the Notice of Assignment document (the "Original NOA") Sysco Corporation ("Party 1 - the Delaware entity) assigned/transferred its rights to CCB *and CCB's subsidiaries* (Party 2). See attached excerpt. But contrary to your statements below the Original NOA itself does not state that Sysco assigned the rights of all of its "subsidiaries and affiliates".
>
> 2-Concededly, there is some ambiguity as to the intent of the attachment labeled "Sysco Location Information for Authorization Agreement" which is comprised of a table listing a subset of Sysco's subsidiaries/addresses in 2019. The second paragraph to the Original NOA indicates "Seller has provided Buyer with merchant identification information listed in attached Schedule 1"and it may be that this is intended to refer to the "Sysco Location Information for Authorization Agreement." Unclear. But if this table represents Sysco Corporation assignment of claims of some of its legally separate subsidiaries it would seem safe to assume that the assignment is limited - limited to the "merchants" expressly identified in the table. Cake Corporation is not included in this table (nor Leapset nor any other name associated with Cake Corporation). [This] exclusion suggests Cake's claims were not assigned/transferred.

Cake 5/15/24.

Both parts of Cake's argument are flawed. The first misconstrues the excerpt of the notice it quotes. That document, entitled "Notice of Transfer and Assignment of Rights" (or, as Cake labels it, the "Original NOA") was among the exhibits attached to the 2019 CCB Purchase Agreement, a copy of which was in turn an exhibit to the 2019 ABC Purchase Agreement. *See*

---

[3] The parties' apparent agreement that Leapset had been renamed as Cake Corporation and was a Sysco subsidiary at the time of the 2019 CCB Purchase Agreement is consistent with the way Cake currently holds itself out to the public. The "About Us" page of Cake's website recites that Mad Mobile was founded in 2010 and acquired Cake from Sysco in 2020. *See* https://trycake.com/about-us (visited Sept. 28, 2026).

2019 ABC Purchase Agreement at 15 (Schedule III); *id*. at 19th page of pdf document (copy of Notice). Cake has annotated that Original NOA as reproduced here:


PCIX Notice of Assignment_Sysco Corp (Via CCB) to CarVal.pdf – Page 3 of 6

an assist with filling out this form.

PCIX Notice of Assignment_Sysco Corp (Via CCB) to CarVal.pdf

**NOTICE OF TRANSFER AND ASSIGMENT OF RIGHTS**

To: Claims Administrator of Settlement Arising from In re Payment Card Interchange Fee and Merchant-Discount Antitrust Litigation, Case Number 1:05-md-01720-JG-JO, pending before the Eastern District of New York (the "Litigation")

We hereby give notice that pursuant to that certain May 20, 2019 Bill of Sale and Assignment of Claims Agreement ("Sale Agreement"), executed by and between Sysco Corporation ("Buyer") and Claims Compensation Bureau, LLC, a Delaware limited liability company, on behalf of itself and its subsidiaries ("Seller"), Seller has absolutely and unconditionally transferred and assigned to Buyer all of Seller's right, title, and interest in and to, or associated with, or connected in any manner to, any claim against and settlement arising from the Litigation.

The rights assigned to Buyer include, but are not limited to, Seller's right to file a claim in the Litigation and to challenge any and all estimates for payment of that claim. Seller has provided Buyer with merchant identification information listed on the attached Schedule 1.


*Id*. (annotation supplied by Cake).

Cake's interpretation of that notice rests on an obvious error in its text: although Sysco was the "Seller" in the 2019 transaction and CCB was the "Buyer," *see* 2019 CCB Purchase Agreement at 1 (preamble), the notice form erroneously reverses those two names in describing the parties. No reasonable reader viewing the Original NOA in context – that is, as an attachment to the underlying contract – would misunderstand it the way Cake purports to do. More substantively, the Notice is just that: a notification to others of what the agreement itself accomplished. The document that governs the parties respective rights is the agreement, and that document is unambiguous.

The 2019 CCB Purchase Agreement explicitly contemplated the transfer by Sysco ("Seller") and all of its affiliated entities ("Seller Affiliate Parties") of all of their respective

*MDL 1720* claims to CCB ("Buyer"). In particular, as part of the agreement, Sysco made the following representation:

> (h) Seller owns, has and is hereby selling to Buyer good, valid and sole legal and beneficial title to the [*MDL 1720*] Claims, free and clear of any and all liens, security interests, encumbrances or claims of any kind or nature whatsoever, including without limitation any applicable rights to payment owned by any of Seller's parent whatsoever, including without limitation any applicable rights to payment owned by any of Seller's parent entities, subsidiaries, affiliates, partnerships, retail alliances, franchisees, licensees, joint venturers, individuals, subcontractors, agents and/or employees (the "Seller Affiliate Parties").

2019 CCB Purchase Agreement, § 3.

Cake's second is no stronger. Like the first, it rests on the text of the Original NOA rather than the actual agreement it memorializes. Cake notes that the merchant identification information listed in the notice's Schedule 1 does not include any reference to Leapset or Cake and that the underlying agreement therefore did not transfer the Leapset's (or Cake's) *MDL 1720* claim. Cake 5/15/24. ABC notes that Cake's corporate parent in 2019 was the Sysco entity named Sysco Ventures, Inc. and that the latter entity was included in the schedule to which Cake refers. *See* ABC 8/28/25 at 2 & Ex. C at 8. Cake has not sought to refute that assertion.

In any event, it does not matter whether Leapset or Cake was mentioned in the Original NOA or its attachment. The most salient and uncontested facts are (1) Sysco owned Cake at the time of the 2019 CCB Purchase Agreement, and (2) under the latter transaction, Sysco sold all of the *MDL 1720* claims owned by itself and all of its affiliates to CCB. As a result of that transaction, Sysco no longer owned the *MDL 1720* claim associated with Cake's TIN. Sysco therefore did not own that claim when it sold Cake to Mad Mobile in 2020. For that reason, neither Cake nor Mad Mobile owns the claim now. Because Cake does not own the *MDL 1720* claim associated with its TIN, it has no right to register that TIN with the Class Administrator.

I do not discount the possibility that Cake or Mad Mobile may have some enforceable right against some other party arising out of the disposition of Leapset's *MDL 1720* claim. But any such claim must be asserted directly against the allegedly liable party rather than as a direct claim for a portion of the settlement fund. Cake has not mentioned the possibility of any such lawsuit, and I do not address its merits here. Further, I would recommend against adjudicating any such claim within the *MDL 1720* litigation. As this Court has already held, such ancillary claims "do not fall under this Court's retained settlement jurisdiction" but must instead be litigated "in independent lawsuits, outside of MDL 1720." *MDL 1720 Disputes*, 2026 WL 2389790, at *1 (E.D.N.Y. Aug. 17, 2026).

III. Recommendation

For the reasons set forth above, I respectfully recommend that the Court direct the Class Administrator to process ABC's registration and withdraw MMI's.

IV. Objections

This Report and Recommendation will be served on ABC and MMI via the Court's ECF system, and the Class Administrator will also promptly provide a copy to both. Any interested party shall have 21 days from today's date to file objections to the Special Master's report and recommendation with the Court. Such objections should be filed only on the dispute-specific miscellaneous docket (1:26-MC-03904-BMC-JAM). Any responses to objections may be filed within 21 days thereafter. No replies regarding objections shall be filed without the Court's permission. If any party objects to this Report and Recommendation, the evidence considered by the Special Master in making or recommending any findings of fact shall be filed on the dispute-specific miscellaneous docket. Such evidence may be filed under seal to protect confidentiality and the identities of claimants, as appropriate. The Court shall review the Special Master's

reports and recommendations *de novo*. *See* Revised Order Appointing Special Master, 1:24-MC-03415-BMC-JAM, Doc. 3, ¶ 4.

Dated: September 28, 2026

/s/ *James Orenstein*
Special Master