UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------------- x

IN RE MDL 1720 DAMAGES CLASS SETTLEMENT DISPUTES

REPORT AND RECOMMENDATION OF SPECIAL MASTER

----------------------------------------------------- x

1:24-MC-03415-BMC-JAM

IN RE MDL 1720 DAMAGES CLASS SETTLEMENT DISPUTE
CONFLICT ID NUMBER:

147380 (METROPOLITAN MATTRESS 32).

1:26-MC-03994-BMC-JAM

----------------------------------------------------- x

**Parties and Representatives**:

Keith Goggin
Blue Sturgeon Holdings LLC ("BSH")
5 East 17th St., Apt. 7
New York, NY 10003
(917) 769-6573
pcixclaims@bluesturgeonholdings.com
Representative of BSH

David B. Sloan
Optium Capital, LLC ("Optium")
2193 Fillmore Street
San Francisco, CA 94115
(415) 805-8137
claim@optiumcapital.com
Representative of Optium

Rule 23(b)(3) Class Plaintiffs (the "Class")
Alexandra S. Bernay
Robbins Geller Rudman & Dowd LLP
655 West Broadway, Suite 1900
San Diego, CA 92101
(619) 231-1058
xanb@rgrdlaw.com
Class Counsel

## I. Background

BSH and Optium have both registered with the Class Administrator to claim a share of the proceeds of the settlement fund in *In re Payment Card Interchange Fee Merchant Discount Antitrust Litigation*, Dkt. No. 05-MD-1720 (E.D.N.Y.) ("*MDL 1720*") arising out of the payment card transactions of Metropolitan Mattress 32 (Taxpayer Identification Number ("TIN") ending in 0273) ("Metro").[1] Each asserts that it owns Metro's claim. BSH contends that it bought the claim from Cascade Settlement Services LLC ("Cascade") in 2013 following Cascade's 2011 acquisition of the claim from Mattress Giant Corporation (TIN ending in 7860) ("Mattress Giant"). Optium counters that Metro had been acquired by Mattress Firm—Arizona LLC ("MFA") in 2007 and therefore was not among the assets that Cascade acquired from Mattress Giant in 2013 and later sold to BSH. Instead, Optium asserts that it purchased Metro's claim from Mattress Firm, Inc. ("Mattress Firm") in 2020. In response to the Class Administrator's conflict notice, Optium has submitted arguments and records while BSH has submitted nothing.[2] After reviewing the record I respectfully recommend that the Court direct the Class Administrator to process Optium's registration and withdraw BSH's.

[1] Before submitting a claim to receive the settlement proceeds corresponding to the payment card transactions of a merchant member of the Rule 23(b)(3) Settlement Class, a party must first register that merchant's TIN with the Class Administrator. The registrant must provide proof that it is the owner (or authorized representative of the owner) of the claim corresponding to that TIN. In the absence of supporting documentation, this requirement can also be satisfied by providing the Claimant ID and Control Number printed on the original prepopulated claim forms that were mailed to known class members. Once the registrant establishes such authority, the Class Administrator updates the registrant's status to "approved." If there is only one approved registrant for a given TIN, the registrant may submit a claim for that TIN. Where multiple parties have registered the same TIN, the Class Administrator designates the TIN as being in "conflict" and does not permit any registrant to submit a claim until the conflict is resolved.

[2] Optium has reported "constructive dialogue with BSH" but no resolution. Letters to Special Master dated Sept. 12 & 17, 2026.

The record before me includes the following documents, set forth in chronological order:

- Article dated March 7, 2007 in unidentified publication entitled, "Rival to Acquire Mattress Discounters," reporting that "Mattress Firm, of Houston, has in recent months acquired Phoenix-based Metropolitan Mattress[;]"

- Documents submitted by BSH in a single .pdf file including

  - March Notice of Assignment dated October 11, 2011, notifying Class Administrator of assignment to Cascade as Purchaser of Mattress Giant's *MDL 1720* claim ("2011 Assignment") (15th page of file);

  - Master Origination and Service Agreement dated July 15, 2013, between Cascade as Seller and BSH as Purchaser conveying litigation claims of several entities, including the *MDL 1720* claim of Mattress Giant ("2013 BSH Purchase Agreement") (1st-11th pages of file);

  - Asset Order No. 4 between Cascade and BSH (undated and redacted) (12th-14th pages of file); and

  - Schedule (undated) with seven lines listing the names and TINs of several entities including Mattress Giant and Metro;

- Signature Bank Statement for August 2013 (redacted) showing wire transfer from BSH to Cascade on August 26, 2013;

- Copy of Exhibit 21.1 of the 2014 SEC form 10K filed by Mattress Firm Holding Corp. ("MFHC") dated March 27, 2014, Exhibit 21.1, showing Metro as a wholly-owned subsidiary of MFA, which in turn is shown as a subsidiary (through intermediate owners including Mattress Firm) of MFHC;[3]

- Claim Purchase Agreement dated April 17, 2020, between "Mattress Firm, Inc. as 'Parent Seller' and affiliated entities of Parent Seller listed on Exhibit D to this Agreement ('Affiliated Sellers' and, collectively, together with Parent Seller, the 'Seller' or 'Sellers')" and Seaport Loan Products LLC ("Seaport") as Purchaser, with Metro listed as one of the Sellers ("2020 Seaport Purchase Agreement");

- Claim Purchase Agreement dated April 17, 2020, between Seaport as Seller and Optium as Purchaser ("2020 Optium Purchase Agreement");

[3] The copy supplied by Optium is not dated and does not by itself reflect its source. However, I have confirmed that it is an accurate copy of the record so described as publicly available from the SEC. *See* http://sec.gov/Archives/edgar/data/1419852/000104746914003037/a2219241zex-21_1.htm (visited October 4, 2026).

- Notice of Transfer and Assignment of Rights dated April 17, 2020, notifying Class Administrator of assignment of *MDL 1720* claims of "Mattress Firm, Inc., and certain of its Affiliated Sellers set forth in Schedule 1" to Optium pursuant to the 2020 Seaport Purchase Agreement and the 2020 Optium Purchase Agreement ("2020 Assignment");

- Emails dated September 6, 2023, between BSH and the Class Administrator reflecting receipt of BSH assignment notice related to Asset Order No. 4;

- Spreadsheet sent by BSH to Class Administrator as attachment to email dated September 6, 2023, listing TINs of claims that BSH asserts Cascade assigned to BSH, including both Mattress Giant and Metro;

- Class Administrator's Conflict Notice dated April 5, 2024;

- Class Administrator's Special Master Review Notices dated July 29, 2025;

- Letter dated August 28, 2025, from Optium to Special Master (including as exhibits copies of the 2020 Optium Purchase Agreement, the 2020 Seaport Purchase Agreement, the 2013 BSH Purchase Agreement, the 2007 article, and Ex. 21.1 of 2014 SEC form 10K);

- Letter dated September 12, 2025, from Optium to Special Master; and

- Letter dated September 17, 2025, from Optium to Special Master.

## II. Analysis

While the record provides some support for each registrant's position, I conclude that the best reading of all of the documents together favors Optium. The 2013 BSH Purchase Agreement clearly contemplates that Cascade will convey to BSH a bundle of litigation claims that Cascade had purchased from the original claim owners. *See* 2013 BSH Purchase Agreement, Recitals A-E. But the document does not specify which claims are being sold. The agreement then goes on to provide as follows:

> Scope. Each of Cascade's asset orders will specify the description of the Assets available, including the Original Claimant, Purchase Price, Litigation and Transfer Date and will include fully executed copies of each of the associated purchase agreements (the "Asset Order"). Each Asset Order shall: (i) be in the form of an asset order substantially similar to the form attached hereto and incorporated herein as Exhibit A; and (ii) be consecutively numbered with respect to all prior Asset Orders. Both Parties understand and agree that this Agreement does not commit either Purchaser to purchase any Assets from Cascade or

> Cascade to sell any Assets to Purchaser. Cascade and Purchaser each agree that only an Asset Order signed by both Parties shall constitute a legal, valid and binding obligation of both Parties.

*Id.* § 2.1. The agreement goes on to provide that the transfer of the assets listed in "Asset Order No. 1, attached hereto as Exhibit B, will be consummated" on or before July 15, 2013, and that transfers under subsequent Asset Orders would "take place on or before the date specified in the respective Asset Order." *Id.* § 2.4(a)(i), (b)(i). Nothing in the agreement refers in any way to Metro's *MDL 1720* claim.

The .pdf file BSH submitted containing the 2013 BSH Purchase Agreement has sixteen pages, only the first eleven of which appear to be part of the agreement itself. The undated "Asset Order No. 4" begins on the twelfth page of the file, and the next two pages also appear to be part of the same document. The thirteenth page is marked as "*[Signature Page to Asset Order No. 4]*" (italics and brackets in original). The fourteenth page is titled "Schedule 1 to Asset Order No. 4." Under that heading is the text "Purchase Agreements [attached]" (brackets in original); the only other text on that page is a footer reading "*[Schedule 1 to Asset Order No. 4]*" (italics and brackets in original). Notwithstanding that text, however, the remaining pages of the file do not include any Purchase Agreements (and BSH has submitted none separately). The next page of the file (the fifteenth) is an entirely different document: the 2011 Assignment. That document is not a purchase agreement, but rather a notification to the Class Administrator that Mattress Giant has assigned its *MDL 1720* claim to Cascade. It makes no mention of Metro. Finally, the sixteenth page of the .pdf file is a schedule with seven lines listing the names and TINs of various entities including Mattress Giant and Metro (which is listed in two identical, consecutive lines without explanation). Nothing on that page indicates a connection with any other document in the record, and no other document in the record mentions it.

BSH has submitted nothing to me to explain how the four distinct documents that it submitted as one file to the Class Administrator (also without explanation), support its position. That can and should end the matter. However, in an abundance of caution, I will assume for purposes of analysis the following facts, even though the record does not establish them:

- BSH and Cascade signed the undated Asset Order No. 4 pursuant to the 2013 BSH Purchase Agreement and not under some other agreement;
- The 2011 Assignment, although not a "Purchase Agreement" as described on the title page of Schedule 1 to Asset Order No. 4, was appended to that schedule to demonstrate that Mattress Giant's *MDL 1720* claim was among the assets conveyed under Asset Order No. 4; and
- Someone appended the undated "Schedule" to the 2011 Assignment to convey the assertion that Mattress Giant had purported to assign to Cascade not only its own *MDL 1720* claim but also those belonging to all of the entities listed on the Schedule, including Metro; and
- The Signature Bank Statement showing a wire transfer from BSH to Cascade on August 26, 2013 (submitted as a separate .pdf file) reflects BSH's payment to Cascade for the claims conveyed under Asset Order No. 4.[4]

Even if all of those factual assertions are true, it would establish no more than that Mattress Giant purported to assign Metro's *MDL 1720* claim to Cascade in 2011 and that Cascade then purported to sell it to BSH. It would not establish the proposition that Metro's *MDL 1720* claim actually belonged to Mattress Giant at the time of the 2011 Assignment. And if Mattress Giant did not own Metro's *MDL 1720* claim, its assignment of the claim to Cascade was illusory, as was Cascade's later sale of that claim to BSH.

For its part, Optium relies on a series of transactions in 2020 to show that (1) Mattress Firm sold its own *MDL 1720* claim, and those of its affiliated companies, to Seaport; (2) that

[4] The record does not establish that proposition in part because even though the bank statement reveals the amount of the wire transfer, BSH has redacted from Asset Order No. 4 the "Purchase Price" for Mattress Giant's *MDL 1720* claim. I therefore cannot verify that the two amounts match.

Seaport resold the claims to Optium the same day; and (3) that, also on the same day, all three entities signed an agreement assigning those claims to Optium. The documents in the record confirm that each of those transactions included a specific reference to Metro as one of the subsidiaries whose claims were conveyed. Optium has also established that, according to SEC records, Metro was a subsidiary of Mattress Firm, Inc. in 2014. Standing alone, that does not preclude the possibility that Mattress Firm acquired Metro only after the 2013 BSH Purchase Agreement that purported to convey Metro's *MDL 1720* claim from Cascade to BSH, or after the 2011 Assignment that purported to convey it from Mattress Giant to Cascade.[5] However, I have confirmed that the relevant SEC filings from before and after each of those events show that Metro was Mattress Firm's subsidiary at all relevant times.[6]

Optium has thus established that it secured the *MDL 1720* claims of Mattress Firm and its subsidiaries in 2020, that Metro was a subsidiary of Mattress Firm, and that as a result, Metro's claim was not Mattress Giant's to sell to Cascade in 2011 or Cascade's to sell to BSH in 2013. I therefore conclude that Optium, not BSH, owns Metro's claim and may register it.

I do not discount the possibility that BSH may have some enforceable right against some other party arising out of the 2013 BSH Purchase Agreement. But BSH must assert any such claim against whatever party is liable to it rather than as a direct claim for a portion of the settlement fund. BSH has not mentioned the possibility of any such lawsuit, and I do not address

[5] I give no weight to the assertion in the 2007 article that "Mattress Firm, of Houston, has in recent months acquired Phoenix-based Metropolitan Mattress." The record includes nothing to establish the reliability of that report.

[6] *See* https://www.sec.gov/Archives/edgar/data/1419852/000104746911005788/a2204426zex-21_1.htm; https://www.sec.gov/Archives/edgar/data/1419852/000104746912008954/a2211050zex-21_1.htm; https://www.sec.gov/Archives/edgar/data/1419852/000104746913003752/a2214031zex-21_1.htm; https://www.sec.gov/Archives/edgar/data/1419852/000104746914003037/a2219241zex-21_1.htm; (Ex. 21.1. from each of the following MFHC SEC filings: S-1 filed June 10, 2011; S-1 filed Sept. 20, 2012; 10-K filed Apr, 21, 2013; 10-K filed Mar. 27, 2014) (each visited Oct. 4, 2026).

its merits here. Further, I would recommend against adjudicating any such claim within the *MDL 1720* litigation. As this Court has already held, such ancillary claims "do not fall under this Court's retained settlement jurisdiction" but must instead be litigated "in independent lawsuits, outside of MDL 1720." *In re MDL 1720 Damages Class Settlement Disputes*, 2026 WL 2389790, at *1 (E.D.N.Y. Aug. 17, 2026).

III. Recommendation

For the reasons set forth above, I respectfully recommend that the Court direct the Class Administrator to process Optium's registration of Metro's TIN and withdraw BSH's.

IV. Objections

This Report and Recommendation will be served on BSH and Optium via the Court's ECF system, and the Class Administrator will also promptly provide a copy to both. Any interested party shall have 21 days from today's date to file objections to the Special Master's report and recommendation with the Court. Such objections should be filed only on the dispute-specific miscellaneous docket (1:26-MC-03994-BMC-JAM). Any responses to objections may be filed within 21 days thereafter. No replies regarding objections shall be filed without the Court's permission. If any party objects to this Report and Recommendation, the evidence considered by the Special Master in making or recommending any findings of fact shall be filed on the dispute-specific miscellaneous docket. Such evidence may be filed under seal to protect confidentiality and the identities of claimants, as appropriate. The Court shall review the Special Master's reports and recommendations *de novo*. *See* Revised Order Appointing Special Master, 1:24-MC-03415-BMC-JAM, Doc. 3, ¶ 4.

Dated: October 5, 2026

*/s/ James Orenstein*
Special Master