UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------- x

IN RE MDL 1720 DAMAGES CLASS SETTLEMENT DISPUTES

REPORT AND RECOMMENDATION OF SPECIAL MASTER

---------------------------------------------------------- x

1:24-MC-03415-BMC-JAM

IN RE MDL 1720 DAMAGES CLASS SETTLEMENT APPEAL OF REGISTRANT PAYPAL, INC.

1:26-MC-03925-BMC-JAM

---------------------------------------------------------- x

**Parties**:

PayPal, Inc. (“PayPal”)

Rule 23(b)(3) Class Plaintiffs (the “Class”)

**Counsel**:

PayPal, Inc. (“PayPal”)
Alexandra S. Peurach
Alston & Bird LLP (“Alston”)
1201 West Peachtree Street, Suite 4900
Atlanta, Georgia 30309
(404) 881-7000
alex.peurach@alston.com
Counsel for PayPal

Rule 23(b)(3) Class Plaintiffs (the “Class”)
Alexandra S. Bernay
Robbins Geller Rudman & Dowd LLP
655 Wests Broadway, Suite 1900
San Diego, CA 92101
(619) 231-1058
xanb@rgrdlaw.com
Class Counsel

I. Background

On March 22, 2024, Alston registered PayPal’s Taxpayer Identification Number (“TIN”) ending in 0487 to seek to recover proceeds from the damages class settlement in *In re Payment*

*Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 05-MD-01720-BMC-JAM (E.D.N.Y.) ("*MDL 1720*") arising from the transactions of thousands of merchants. On June 4, 2026, the Class Administrator gave notice that it had classified PayPal as a payment facilitator and therefore not a class member. PayPal filed a brief disputing that determination. *See* Class Member PayPal, Inc.'s Dispute of the Class Administrator's Payment Facilitator Determination dated June 22, 2026 ("Br."). In light of this Court's recent decision in *In re MDL 1720 Damages Class Settlement Disps.* ("*Settlement Disputes*"), 2026 WL 1729167 (E.D.N.Y. June 16, 2026) ("*Teleflora*"), on July 22, 2026, at my request, the Class Administrator requested a supplemental submission, including sample copies of each type of contract PayPal used with its merchant customers.[1] Alston then submitted a supplemental letter along with four representative contracts. *See* Letter to Special Master dated Aug. 17, 2026 ("Ltr."). After considering all of the arguments and evidence in the record, for the reasons set forth below, I conclude that PayPal is not a member of the settlement class with respect to the transactions between merchants and their cardholder customers and therefore respectfully recommend that the Court direct the Class Administrator to withdraw PayPal's registration.

## II. Analysis

Four prior decisions, all arising from the litigation in *MDL 1720*, provide the legal context for this dispute. First, when the Court gave final approval to the proposed damages class settlement, it endorsed the settling parties' definition of the class as consisting of "[a]ll persons, businesses, and other entities that have accepted any Visa-Branded Cards and/or Mastercard-

---

[1] In *Teleflora*, the Court adopted my recommendation to find that a payment facilitator was not a class member. *See Settlement Disputes*, 2026 WL 825503 (E.D.N.Y. Mar. 17, 2026) ("*Teleflora R&R*"). As a result of that decision, the Court held that a second recommendation to require the payment facilitator to submit all of its contracts with its merchant customers (rather than a representative sample) was moot. No similar requirement has been imposed here.

Branded Cards in the United States at any time" during the relevant period, with exceptions not pertinent here. *See MDL 1720*, 2019 WL 6875472, at *31 (E.D.N.Y. Dec. 16, 2019) (the "Approval Order") (quoting Superseding Settlement Agreement, ECF 7257-2 ("Settlement Agreement"), ¶ 4) ), *aff'd sub nom. Fikes Wholesale, Inc. v. HSBC Bank USA, N.A.*, 62 F.4th 704 (2d Cir. 2023) ("*Fikes*"). In doing so, the Court overruled an objection from a group of franchisee entities that owned and operated gas stations (the "Branded Operators") that the use of "accepted" might allow their franchisor oil company suppliers to supplant them as class members and that uncertainty about that issue made class membership impossible to determine. *See id*.

Second, in affirming the Approval Order, the Second Circuit likewise rejected the Branded Operators' arguments. After acknowledging the ambiguity of the word "accepted," *Fikes,* 62 F.4th at 715, the court clarified the core question those arguments raised:

> The dispute is not over which group of class members will get the recovery; the dispute is over which claimants are within the class. Whoever "accepted" the payment cards is by definition in the class, gets compensation, and is bound by the release; an entity that did not accept the payment is by definition excluded from the class and is not bound by the settlement.

*Id*. at 717. Because that dispute did not implicate the requirement that a class must have ascertainable membership to be certified, the court did not need to decide who – as between franchisors and franchisees – had "accepted" payment cards and were therefore class members. *See id*. at 718.

Third, in *MDL 1720*, 735 F. Supp. 3d 249 (E.D.N.Y. 2024), *reconsideration denied*, 2025 WL 2490442 (E.D.N.Y. Aug. 29, 2025) ("*PayFacs I*"), *aff'd*, 2026 WL 1210154 (2d Cir. May 4, 2026) ("*PayFacs II*"), Judge Brodie ruled that two payment facilitators – Block, Inc., f/k/a Square, Inc. ("Square"), and Intuit Inc. and Intuit Payment Solutions, LLC (collectively, "Intuit") – had not "accepted" payment cards used to pay for goods and services sold by their merchant

clients and therefore were not members of the class. *See* 735 F. Supp. 3d at 252. To reach that conclusion, Judge Brodie considered several factors, as summarized on review by the Second Circuit:

> (1) Square's merchant agreement, which states that Square allows merchants "to *accept* Cards from customers," *id.*; (2) Square's Complaint, which alleges that Square "helps Sellers (merchants who utilize Square to *accept* payment cards ...) start, run, and grow their businesses, including by enabling Sellers to *accept* card payments," *id.*; (3) Visa's rules, which distinguish between a "Payment Facilitator" and a "Merchant" and provide that an entity cannot simultaneously act as both a payment facilitator and a merchant, *id.* at 265; (4) Mastercard's rules, under which Sellers "accept" payment cards while payment facilitators facilitate the acquiring of transactions, *id.* at 266; (5) the Square Sellers' own declarations, which describe themselves as businesses that *accept* credit and debit cards, *id.*; (6) the "way real-world transactions are conducted" in which the "cardholder hands her card to a Seller, who 'accepts' it for payment at the point of sale," *id.* at 264; and (7) the incongruence of interpreting the word "accepted" to mean that Square "'accepts' a payment card, but the [Square] Seller 'accepts' cash, for two otherwise identical transactions," *id.* at 265.

*PayFacs II*, 2026 WL 1210154, at *1.[2]

Finally, in *Teleflora*, as in this case, a payment facilitator ("Teleflora") challenged the Class Administrator's determination that it was not a class member and therefore ineligible to register a claim. In seeking my review, Teleflora noted a number of ways in which its contracts with merchant clients differed from the contracts between Square and Intuit and their respective clients. I analyzed those arguments in detail and concluded that they either replicated arguments by Square and Intuit that Judge Brodie explicitly rejected in *PayFacs I* or were not meaningfully different for purposes of determining class membership. *See In re MDL 1720 Damages Class*

---

[2] In affirming Judge Brodie's analysis, the court observed that "[f]ew persons are in a better position to understand the meaning of a settlement than the district judge who oversaw and approved it[.]" *Id*. at *2 (quoting *W. Alton Jones Found. v. Chevron U.S.A., Inc.*, 97 F.3d 29, 33 (2d Cir. 1996) (cleaned up)). At the time Judge Brodie oversaw and approved the *MDL 1720* damages class settlement, I was the magistrate judge assigned to the case. In that role, I sat on the bench with Judge Brodie for oral argument of the objections to the proposed settlement. *See MDL 1720*, ECF 7774 (minute entry dated Nov. 7, 2019).

*Settlement Disputes*, 24-MC-03415-BMC-JAM (E.D.N.Y.), ECF 2 at 5-11 (Mar. 17, 2026). I therefore recommended that this Court find that Teleflora had not accepted payments for its merchant clients' transactions and was not a class member. *Id*. at 17. This Court adopted that recommendation, reasoning as follows:

> Teleflora points to a number of factors that purportedly distinguish its situation from the situation presented in *PayFacs I*. The Court disagrees, and not just because many of these factors were actually considered in *PayFacs I*. Rather, it simply does not matter how many and in what ways Teleflora differs from Square and Intuit because they are the same in the one respect that matters: they don't accept payment cards.

*Teleflora* 2026 WL 1729167, at *2.

Applying the reasoning of the cases discussed above, PayPal plainly did not accept payment cards within the meaning of the Settlement Agreement. PayPal relies on some of the same types of arguments that other providers of payment processing services have previously advanced without success, as well as some unique to its particular form of payment processing. In particular, PayPal notes several features of its payment processing service that it contends distinguish it from payment processing services like Teleflora, Square, and Intuit.

First, rather than being a "payment facilitator," PayPal describes itself as a "staged digital wallet operator" ("SDWO") that '"accepted Visa and Mastercard cards for millions of transactions through its SDW functionality" from cardholders who are paying for goods and services sold by merchants. Br. at 6. But the label a payment processing service applies to itself does not help answer the only question that matters under the Settlement Agreement: as between a merchant and its payment processing service, who "accepts" a customer's Visa or Mastercard credit card as payment for the merchant's goods and services? In that regard, I note that the

Settlement Agreement makes no mention of either payment facilitators or SDWOs (or of payment processing services generally).[3]

Second, PayPal notes that the Visa and Mastercard network rules treat an SDWO as a merchant. *See* Br. at 7-9; Ltr. at 3. While that fact does distinguish processors such as Square and Inuit from PayPal, it is likewise inapposite. Just as the label PayPal applies to itself is not dispositive, the label Visa and Mastercard use for PayPal's service sheds no light on how the Settlement Agreement applies to transactions in which PayPal processes a customer's Visa or Mastercard payment for a merchant's goods and services.

Third, after trying to rely on the way network rules classify its service, PayPal argues *against* relying on the way networks classify transaction data. *See* Br. at 9-11. PayPal does not satisfactorily explain why "the Visa and Mastercard Rules discussed above—not internal data entry and production practices—should govern the Special Master's analysis of whether PayPal 'accepted' payment cards during the Class Period." Either both aspects of how the networks' practices are informative in interpreting the Settlement Agreement or both are not. I agree that the way the networks label services and transactions does not determine who "accepted" credit card payments within the meaning of the Settlement Agreement. But to the extent the networks' practices are informative, I draw a different inference from the record than PayPal does.

---

[3] In addition, the issue before the Court is not whether the Class Administrator's use of the "Payment Facilitator" designation precisely capture the difference between the way that a staged digital wallet operator like PayPal operates and the operations of a payment processor like Teleflora. That designation reflects the fact that the Class Administrator used the term discussed in *PayFacs* in establishing a classification of registrants who seek settlement proceeds based on transactions between the registrant's payment processing merchant clients and the customers of those merchants. Whether a different label would better capture the range of ways that businesses can provide such processing services is of no moment here.

In particular, I note that the networks require payment facilitators and SDWOs alike to record the name and TIN of the merchants for whom those services process transactions in which the customer uses a credit card for payment. That is, when a processing service – whether PayPal or a self-described payment facilitator like Square – sends information about a credit card transaction, both Visa nor Mastercard require more than just the name of the processor and the amount of the transaction. Instead, the networks also require the processor to provide the name and TIN of the processor's merchant client. PayPal does not explain why that information is of any use to the networks if, as PayPal contents, the merchant does not accept the card payment in any meaningful sense. Indeed, PayPal notes that "[t]he common format used by Visa and Mastercard for transaction messages … has limited data fields," Br. at 10-11, but does not acknowledge that such a limitation makes the networks' insistence on including the merchants' names and TINs all the more perplexing.

Fourth, as other payment processors have done, PayPal argues that the language of its contracts supports its position. Here again, the language PayPal chooses to include in its contract does not answer the interpretive question under the Settlement Agreement. But even assuming that contractual language can answer the question, I conclude that – as with Teleflora and other payment processors – PayPal's contracts demonstrate that in receiving money from customers' credit card accounts to pay for merchants' goods and services, PayPal acts as a processor to transfer payment from the customer to the merchant. *See*, *e.g.*, Ltr. Ex. A (2004 version of PayPal user agreement), § 2.1 ("PayPal acts as a facilitator to help you accept payments from … third parties. We act as your agent based upon your direction and your requests to use our Services that require us to perform tasks on your behalf."); *id.* ("the [PayPal] Service is a payment processing service"); Ltr. Ex. B (2009 version), § 1.1 ("PayPal is only a Payment

Service Provider. PayPal helps you … accept payments from third parties. PayPal … acts as your agent only with respect to the custody of your funds."); Ltr. Ex. C (2015 version), § 1.1 ("PayPal helps you … accept payments from third parties."); Ltr. Ex D. (2018 version) at 1 ("All PayPal accounts let you do things like … [a]ccept debit card, credit card … or other payment methods from others.").

Fifth, PayPal emphasizes the way it structures the flow of funds. Payment facilitators like Square receive money from a cardholder and send it on to a merchant via an account established under an agreement between the payment facilitator and the merchant. PayPal, however, receives money from a cardholder and sends it on to the merchant via *two* accounts – one established under an agreement between PayPal and the merchant and another established under an agreement between PayPal and the cardholder. *See* Br. at 2; Ltr. at 2. But that does not change the underlying reality that, in PayPal's own words, "PayPal acts as a facilitator to help" a merchant "accept payment from … third parties." Such language acknowledges that the credit card payment PayPal enables a merchant to "accept" comes from "third parties" – not from PayPal.

PayPal's arguments – and the underlying mechanisms of its processing service – do differ in some respects from those of previous processing services the Court has considered but not "in the one respect that matters[.]" *Teleflora* 2026 WL 1729167, at *2. The fact that a merchant says that it "accepts" PayPal is not dispositive. Nor is it dispositive that a customer selects the "pay using PayPal" option on an online payment screen. The critical fact is that in all of the transactions at issue here, a customer used a Visa or Mastercard credit card as the source of payment for a merchant's goods and services, and the merchant, with the assistance of PayPal's

processing service, accepted that payment. In all of those transactions, PayPal did not accept the payment cards in "the one respect that matters."

As this Court has consistently recognized, "in a payment chain containing a merchant who accepts cards, and a payment facilitator who enables the merchant to accept cards, the merchant is the class member and the payment facilitator is not." *Teleflora*, 2026 WL 1729167, *2 (E.D.N.Y. June 16, 2026); *see also PayFacs I*; *Settlement Disputes*, Dkt. No. 24-MC-03415-BAM-JAM, Order dated Sept. 15, 2026 (adopting report and recommendation finding same with respect to FTD, LLC); *id*., Order dated Sept. 9, 2016 (same with respect to Allpaid, Inc.); *id*., Order dated Aug. 31, 2016 (same with respect to RoyalPay, Inc.); *id*., Order dated Aug. 18, 2016 (same with respect to ACI Worldwide).[4]

Because PayPal did not "accept" payment cards in transactions between its merchant clients and those merchants' customers as that term is used in the Settlement Agreement, it is not a member of the class with respect to those transactions. I therefore respectfully recommend that the Court direct the Class Administrator to withdraw the registration of PayPal's TIN.[5]

III. Recommendation

For the reasons set forth above, I respectfully recommend that the Court find that PayPal is not a member of the settlement class with respect to the transactions it facilitated between

---

[4] In the case involving Allpaid, Inc., a payment processor sought to recover settlement funds based on the transactions of all of its merchant clients by registering them under one TIN (its own) rather than by claiming authority to register the TINS of each merchant client. *See id*., ECF 11 at 2. I nevertheless concluded, and the Court agreed, that the processor was not a member of the settlement class. *See id*. at 2; *id*., Order dated Sept. 9, 2016. I therefore conclude that the fact that "PayPal does not … seek to submit claims under the TINs for its merchant customers[,]" Ltr. at 3, does nothing to support PayPal's position.

[5] To the extent PayPal may have accepted payment cards as payment for goods and services it sold to others, such transactions are not at issue here. PayPal may well be a member of the class with respect to such transactions. *See Teleflora*, 2026 WL 1729167, at *3 n.2.

merchants and their customers, and that the Class Administrator should therefore withdraw the registration of PayPal's TIN.

IV. Objections

This Report and Recommendation will be served on PayPal via the Court's ECF system and also by the Class Administrator.[6] Any interested party shall have 21 days from today's date to file objections to the Special Master's report and recommendation with the Court. Such objections should be filed only on the dispute-specific miscellaneous docket (1:26-MC-03925-BMC-JAM). Any responses to objections may be filed within 21 days thereafter. No replies regarding objections shall be filed without the Court's permission. If any party objects to this Report and Recommendation, the evidence considered by the Special Master in making or recommending any findings of fact shall be filed on the dispute-specific miscellaneous docket. Such evidence may be filed under seal to protect confidentiality and the identities of claimants, as appropriate. The Court shall review the Special Master's reports and recommendations *de novo*. *See* Revised Order Appointing Special Master, 1:24-MC-03415-BMA-JAM, ECF 1, ¶ 4.

Dated: October 6, 2026

*/s/ James Orenstein*
Special Master

[6] PayPal, as the only party currently before me on this matter, is the only party to be served in the first instance. If the Court adopts the foregoing recommendations, the lack of notice will not prejudice any such merchant. However, in the event the Court rejects or modifies the recommendation, conflicts may arise involving those merchants and PayPal. Should that happen, I respectfully recommend that the Class Administrator should provide a copy of the Court's decision and this report and recommendation to all parties to the conflict. I further recommend that merchants involved in such conflicts retain the right to contest PayPal's class membership on the ground that it did not accept payment cards within the meaning of the Settlement Agreement.