UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------- x

IN RE MDL 1720 DAMAGES CLASS SETTLEMENT DISPUTES

REPORT AND RECOMMENDATION OF SPECIAL MASTER

------------------------------------------------------- x

1:24-MC-03415-BMC-JAM

IN RE MDL 1720 DAMAGES CLASS SETTLEMENT DISPUTE
OPT-OUT REVOCATION REQUESTS OF:

1:26-MC-04088-BMC-JAM

5 STAR CAR RENTAL, INC.;
BUDGET OF MOBILE, LLC;
CENTURYLINK, INC.;
MIDWESTERN WHEELS, INC.;
MOBILE's U DRIVE IT, INC.;
NPC INTERNATIONAL, INC.
LIQUIDATING TRUST; and
VARIOUS ENTITIES DOING BUSINESS
AS "TOTAL WINE & MORE"
AND "TOTAL WINSE SPIRITS
BEER & MORE;"

------------------------------------------------------- x

**Parties and Representatives**:

5 Star Car Rental, Inc. ("5 Star")
Andrew J. Kuipers
4550 Terminal Road, Suite 107
Rapid City, SD 57703
(605) 393-8911
akuipers@rapidnet.com
Representative of 5 Star

Budget of Mobile, LLC ("BOM") and
Mobile's U Drive It, Inc. ("MUDI")
Billy C. Bedsole, Jr.
8880 Airport Blvd.
Mobile, AL 36608-9640
(251) 633-4745, Ext. 4
avismob@aol.com
Representative of BOM and MUDI

Class Action Capital Recovery ("CACR")
Steven Giannotti
PO Box 1477
New York, NY 10113
(914) 898-9276
steven@classactioncapital.com
Representative of CACR

Financial Recovery Services, Inc. and
Financial Recovery Services, LLC, both
doing business as Financial Recovery Strategies (collectively, "FRS")
Jeffrey N. Leibell
279 Sylvan Avenue, Suite 2240
Englewood Cliffs, NJ 07632
(201) 853-1246
jleibell@frsco.com
Counsel for FRS

Manor Ventures ("Manor")
Louis Teplis
2870 Peachtree Road, Suite 261
Atlanta, GA 30305
louis.teplis@manorcorp.com
Representative of Manor

Midwestern Wheels, Inc. ("MWI")
Shelley Gerritts
P.O. Box 1935
Appleton, WI 549112-1935
(920)730-7570
Shelley.gerritts@midwesternwheels.com
Representative of MWI

NPC International, Inc. Liquidating Trust ("NPC Trust"),
as successor in interest to NPC International, Inc. (NPC")
Charles N. Braley and James Shen
AlixPartners
909 3rd Avenue
New York, NY 10022
cbraley@alixpartners.com
jshen@alixpartners.com
Representative of NPC Trust

PIRINATE Consulting Group, LLC ("PCG")
as successor in interest to CenturyLink, Inc. ("Century")
Alan Halperin
Halperin Battaglia Benzija, LLP
40 Wall Street, 37th Floor
New York, NY 10005
(212) 765-9100
ahalperin@halperinlaw.net

Various entities doing business as "Total Wine & More" and
"Total Wine Spirits Beer & More" (collectively "Total Wine")
Robert T. Shaffer, III
6600 Rockledge Drive, Suite 150
Bethesda, MD 20817
(301) 795-1000
rshaffer@totalwine.com
Representative of Total Wine

Rule 23(b)(3) Class Plaintiffs (the "Class")
Alexandra S. Bernay
Robbins Geller Rudman & Dowd LLP
655 West Broadway, Suite 1900
San Diego, CA 92101
(619) 231-1058
xanb@rgrdlaw.com
Class Counsel

## I. Background

The merchants listed in the caption all opted out of the Class in 2019 and then later (either directly or through a successor or agent) registered various Taxpayer Identification Numbers ("TINs") with the Class Administrator to claim a share of the proceeds of the settlement fund in *In re Payment Card Interchange Fee Merchant Discount Antitrust Litigation*, Dkt. no. 05-MD-1720 (E.D.N.Y.) ("*MDL 1720*").[1] Each of the registered TINS has been

[1] Before submitting a claim to receive the settlement proceeds corresponding to the payment card transactions of a merchant member of the Rule 23(b)(3) Settlement Class, a party must first register that merchant's TIN with the Class Administrator. The registrant must provide proof that it is the owner (or authorized representative of the owner) of the claim corresponding to that TIN. In the absence of supporting documentation, this requirement can also be satisfied by providing the Claimant ID and Control Number printed on the original prepopulated claim forms

classified as an excluded party and each of the registrants now seeks to revoke the prior decision to opt out and participate in the settlement. As discussed below, I conclude that in the circumstances here, the Court should not permit such revocation. I therefore respectfully recommend that the Court direct the Class Administrator to deny the revocation requests at issue.

A. 5 Star

5 Star timely notified the Class Administrator of its decision to opt out of membership in the Class in 2019. It later registered its TIN on January 18, 2024. Third party claim filing service ("TPF") CACR registered the same TIN on February 10, 2024.[2] The Class Administrator notified both registrants that 5 Star had been classified as an excluded party and provided information about how to dispute that classification. CACR has not responded to the notice. 5 Star sent a response that the Class Administrator received on May 15, 2025.[3] In its letter, 5 Star did not argue that the Class Administrator had erred in classifying it as an excluded party. Instead, 5 Star simply stated that it "will opt in the settlement class" and that "[a]ll other outside pending claims are now closed and will not interfere with 5 Star Car Rental's wishes to be back in the settlement class."

The record before me includes the following documents:

- Letter dated July 19, 2019, from 5 Star to Class Administrator opting out of class membership; and

---

that were mailed to known class members. Once the registrant establishes such authority, the Class Administrator updates the registrant's status to "approved." If there is only one approved registrant for a given TIN, the registrant may submit a claim for that TIN. Where multiple parties have registered the same TIN, the Class Administrator designates the TIN as being in "conflict" and does not permit any registrant to submit a claim until the conflict is resolved.

[2] A TPF is a business that enters into agreements with merchants to register and prosecute their claims of settlement funds in exchange for a portion of the merchants' recovery. *See MDL 1720*, 2014 WL 4966072, at *4 (E.D.N.Y. Oct. 3, 2014).

[3] The letter from 5 Star is dated December 16, 2021, which appears to be a typographical error.

- Letter dated December 16, 2021 (but received on May 15, 2025), from 5 Star to Class Administrator opting in to the Class.

B. BOM and MUDI

BOM and MUDI share common ownership. Each timely notified the Class Administrator of its decision to opt out of membership in the Class in 2019. On February 3, 2025, each registered its TIN, and the Class Administrator sent a notification that the TINs had been classified as excluded parties, along with information about how to dispute the classification. On the same day, each responded with an unsigned letter attributed to the companies' common owner in which the author wrote: "I have decided to rescind the opt out letter of July 22, 2019, and join the class [.]"

The record before me includes the following documents:

- Letter dated July 22, 2019, from BOM to Class Administrator opting out of class membership;
- Letter dated July 22, 2019, from MUDI to Class Administrator opting out of class membership;
- Minutes and Resolution of Special Meeting of Mobile's U Drive It, Inc. dated November 22, 2019, appointing authorized representative;
- Letter dated February 23, 2025, from BOM to Class Administrator opting in to the class; and
- Letter dated February 23, 2025, from MUDI to Class Administrator opting in to the class.

C. Century

Century timely notified the Class Administrator in 2019 of its decision, on behalf of itself and hundreds of affiliates and retail locations listed in its submission, to opt out of membership in the Class. On January 2, 2025, TPF Manor registered two TINs that were included in the Century's list of affiliates that it was excluding from the settlement. On February 3, 2025, Class

Administrator notified Manor that those two TINs had been classified as Excluded Parties. In response, PCG provided the following information:

> [PCG is] the plan Administrator of the estate of CTI Liquidation Co., Inc. (f/k/a Cyxtera Technologies, Inc.) ("Cyxtera") and its affiliated debtors and debtors in possession (the "Debtors"). The Debtors filed voluntary petitions for relief under Chapter 11 of title 11 of the United States Code in the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court") [on] June 4, 2023 (Case No. 23-14853 (JKS)). The Plan Administrator became the sole representative of the Debtors on January 12, 2024, the Chapter l1 plan effective date.

Letter dated February 7, 2025, from PCG to Class Administrator at 1. PCG stated that it had "no records indicating that the companies [associated with the two excluded TINs] ever opted-out of such a settlement or was a party to any sort of action that would have resulted in an exclusion to this settlement" and asked for records confirming the opt-out request. *Id*. The letter continued that

> prior to its bankruptcy, Cyxtera purchased the Century Link entities and is the owner/entity of these rights. To the extent Century Link did file an opt-out, the rights now belong to the wind down estates, and the Plan Administrator wants to remove/rescind the opt-out and participate, and our Agent is authorized to take the necessary steps to confirm the opt-in.

*Id*.

The record before me includes the following documents:

- Letter dated July 1, 2019, from Century to Class Administrator opting out of class membership on behalf of itself and the affiliates and locations listed in exhibits attached to the letter; and
- Letter dated February 7, 2025, from PGC to Whom It May Concern and received by the Class Administrator on March 5, 2025.

D. <u>MWI</u>

MWI timely notified the Class Administrator of its decision to opt out of membership in the Class in 2019. When it then registered its TIN in 2024, the Class Administrator notified MWI that it had been classified as an excluded party and provided information about how to dispute

that classification. In response, MWI explained that it is a licensee of the Avis Budget Group and opted out based on advice from the Avis Budget Payless Licensee Association ("ABPLA") "because there was concern that it would impair our merchant contract that was a part of the Avis Budget Group's corporate contract." Letter dated Dec. 30, 2024, from MWI to Class Administrator at 1. In 2021, ABPLA sent an email to group members about the possibility of rejoining the class. MWI tried to do so but experienced some delays in registering its TIN.[4]

The record before me includes the following documents:

- Letter dated July 22, 2019, from MWI to Class Administrator opting out of class membership;
- Payment Card Interchange Fee Settlement Additional Information Sheet for Opt Out dated August 15, 2019, sent by MWI in response to Class Administrator's Notice of Incomplete Opt-Out Submission dated August 9, 2019;
- Letter dated September 27, 2021, from MWI to Class Administrator authorizing communications with Avis Budget Payless Licensee Association ("ABPLA");
- Email dated September 27, 2021, from ABPLA to "Licensee Member" discussing information needed to request to rejoin class;
- Email dated September 27, 2021, among MWI employees about pursuing effort to rejoin class;
- Letter dated August 9, 2024, from MWI to Class Administrator designating authorized representative;
- Letter dated December 30, 2024, from MWI to Class Administrator seeking to rejoin class.

E. NPC

NPC timely notified the Class Administrator in 2013 of its decision, on behalf of 1,253 Pizza Hut Restaurants listed in its submission, to opt out of membership in the Class. On January

---

[4] I do not consider the delay from 2021 to 2024 to be a reason to deny MWI's request.

24, 2025, TPF AlixPartners registered NPC's single TIN for NPC International. The Class Administrator notified AlixPartners on March 7, 2025, that NPC's TIN had been classified as an excluded party and provided information about how to dispute that classification. By memorandum dated March 5, 2025, the NPC Trust explained the basis for its dispute.

First, the trust explained that when NPC made the decision to opt out, it had different owners and leaders who did not know how long it would take to resolve "this issue" (presumably the *MDL 1720* litigation). Now, however, the company's new owner and beneficiaries prefer "to be included in this settlement rather than pursue a separate action against the defendants." *Id*. at 1. Second, the NPC Trust noted that NPC filed for bankruptcy protection in 2020 and that the request for reinstatement has the court-appointed plan administrator's approval. *Id*. The trust notes that it "is focused on providing maximum recoveries to the creditors" and opines that "the decision to opt out … is not aligned with the interest of the current NPC entities and beneficiaries" *Id*. at 2.

The record before me includes the following documents:

- Letter dated May 28, 2013, from NPC to Class Administrator opting out of class membership on behalf of 1,253 Pizza Hut Restaurant's associated with NPC's TIN; and
- Memorandum dated March 5, 2025, from NPC Trust to Class Administrator titled Notice of Dispute for Excluded Party Status.

F. Total Wine

Total Wine timely notified the Class Administrator of its decision to opt out of membership in the Class in 2019. On January 27, 2025, Total Wine and TPF FRS registered 59 TINs associated with Total Wine. The Class Administrator then notified both registrants on February 3, 2025, that 52 such TINs have been classified as excluded parties and provided

information about how to dispute that classification.[5] Total Wine did not directly respond to the notice, but on March 4, 2025, the Class Administrator received a response from FRS. The response included copy of an agreement under which Total Wine appointed FRS as its claim filing agent as well as a letter from Total Wine asking the Class Administrator to revoke the earlier decision to opt out.[6] In that letter, Total Wine's General Counsel explained that the company's initial decision to opt out of the settlement

> was based, in part, on insufficient information from which to make an informed business decision regarding whether it was in our best interest to participate in or opt out of the then-proposed Class Action Settlement. The safest decision seemed to be to opt-out and afford our businesses additional time to consider the matter. Having now done so, the Total Wine Entities have reconsidered and wish to revoke their prior decision to opt-out. With your and the Court's permission, Total Wine Entities would respectfully request the opportunity to participate in the putative Rule 23(b)(3) Settlement Class in the referenced matter.

Letter dated January 17, 2025, at 1.[7]

The record before me includes the following documents:

---

[5] For reasons not apparent from the record, seven of the TINs that Total Wine and FRS registered were not flagged as excluded parties in the Class Administrator's records. As a result, the Class Administrator sent notices of excluded party status to only 52 of the 59 registered TINs. Nevertheless, the analysis below applies with equal force to all 59 TINs. I therefore respectfully recommend that the Court include all 59 of the TINs that Total Wine and FRS registered within the scope of its order on the instant matter.

[6] FRS's submission listed the 52 TINs as to which the Class Administrator had issued excluded party notices. The letter from Total Wine's counsel listed all 59 of the registered TINs (many associated with multiple business names and locations), as well as information about one additional entity that did not exist during the Class Period for which a TIN had been applied but not yet received.

[7] The letter's date of January 17, 2025, is anomalous. Total Wine's appointment of FRS bears the same date, and both documents predate the Class Administrator's notice of Total Wine's excluded party status. The accuracy of the date on counsel's letter has no bearing on my analysis of its merits. Similarly, I note that counsel reports that Total Wine's initial opt-out decision "was based, in part on insufficient information" but does not describe either the other reasons for the decision or the relative weight of the perceived lack of information in Total Wine's decision-making. I do not speculate about the nature of those other unspecified reasons or consider them in my analysis.

- Letter dated July 18, 2019, from Total Wine to Class Administrator providing a list of associated entities opting out of class membership;
- Undated letter (bearing a "Received" date of September 27, 2019) from Class Administrator to Total Wine acknowledging the decision to opt out and seeking proof of authority to act on behalf of all of the associated entities;
- Email dated October 1, 2019, from Total Wine to Class Administrator responding to request for proof of authority;
- Letter dated January 17, 2025, from FRS to Class Administrator asking to revoke Total Wine's opt-out decision;
- Exclusive Claims Management Agreement dated January 17, 2025, between Total Wine and FRS;
- Undated response from FRS to excluded party notice, received by Class Administrator on March 4, 2025; and
- Emails dated February 11, 2026, from FRS to Class Administrator regarding the status of the revocation request.

## II. Analysis

Each of the merchants at issue here was given proper notice of the Superseding Settlement Agreement, ECF 7257-2 ("Settlement Agreement") and of its right to participate in or opt out of the Class's recovery. None of the merchants now before the Court claims to have misunderstood its rights or to have been misled or prevented in any other way from making a decision based on all available information about whether to remain in the Class or opt out. Some of the parties seek to revoke that decision without any explanation at all, and others have submitted arguments that amount to no more than an assertion that rejoining the class would be advantageous to them.

Allowing the relatively few merchants at issue here to rejoin the Class and receive settlement funds would not directly prejudice the current members of the Class. Under the Settlement Agreement, the Settlement Fund was to be reduced by an amount based on the value of total Visa and Mastercard sales during the Class Period attributable to merchants who made a

timely decision to opt out of the Class (the "Class Exclusion Takedown Payments"). That takedown, however, was capped at $700,000,000 even if the total sales attributable to opt-outs would have produced a larger amount. The final calculation of opt-out sales did trigger that cap. The Class Administrator has calculated that the Class Exclusion Takedown Payments would have been capped regardless of whether the merchants at issue here had opted out of the Class.

I nevertheless recommend against allowing these merchants to rejoin the class for four reasons. First, granting the merchants' requests would risk unfairness to other opt-outs and undue burden to the Class Administrator (the costs of which are borne by the Class). If these merchants are allowed to rejoin the Class despite having offered no reason to do so other than self-interest, there would be no reason to deny a similar request by any other merchant who in hindsight came to regret the decision to opt out. But without a new notice program – which has not been suggested and which would itself impose significant needless burdens on the Class – some merchants would be less able than others to take advantage of that decision.

Second, with or without a supplemental notice program, allowing the merchants at issue here to rescind their opt-out decisions would almost certainly prompt a great many other merchants to seek to do the same. That would result in administrative burdens on the Class Administrator, an allocation of additional settlement funds to pay for those costs, and a risk that the additional rescissions could materially affect the calculation of the Class Exclusion Takedown Payments.[8]

[8] If the Court does allow the merchants here to rejoin the Class, I respectfully recommend that the Court make clear that going forward, only those merchants who timely submitted revocation requests in response to the Class Administrator's Excluded Party notifications will be considered for similar readmission. Doing so will reduce the administrative burdens and lessen the likelihood that such revocations of opt-out decisions will materially affect the Settlement Fund.

Third, allowing opt-outs to rejoin the Class and receive settlement funds creates the risk that some such merchants will unfairly receive a double recovery. The Court could of course require any merchant seeking readmission to the Class to submit a declaration or affidavit attesting to the fact that it had not received any benefit for opting out. If the Court does permit these opt-outs or any others to rejoin the Class, I respectfully recommend it do so. But that requirement would be an illusory protection, as it would be difficult for the Class Administrator or any other interest party to effectively assess the veracity of such statements.

Finally, the relief the merchants and their successors and representatives seek here is not necessary to correct a mistake or right a wrong. In each case, the merchant making the request was offered a choice between exchanging a release of its antitrust claims against the network defendants for a share of an unknown amount of settlement funds to be distributed at some unknown time in the future. In each case, the merchant decided that its best interest at the time was served by retaining those claims rather than releasing them. And in each case the merchant who opted out of the Class (or its successor in interest) had the opportunity to litigate those antitrust claims and try to achieve a better outcome than it would secure under the settlement. On the other hand, each merchant who did not opt out of the Class was offered the same choice and took the converse risk that it was releasing its claims for a smaller recovery than it might receive through separate litigation. But those merchants who remained in the Class have no ability to reconsider their decisions and revoke their releases. Fairness does not require giving one group of merchants an opportunity for undoing its choices that is unavailable to the other.

## III. Recommendation

For the reasons set forth above, I conclude that in the circumstances here, the Court should not allow parties here to revoke their decisions (or those of their predecessors in interest)

to opt out of the Class and thereby participate in the settlement. I therefore respectfully recommend that the Court direct the Class Administrator to deny the revocation requests at issue.

IV. Objections

This Report and Recommendation will be served on all of the parties to the instant matter via the Court's ECF system, and the Class Administrator will also promptly provide a copy to each. Any interested party shall have 21 days from today's date to file objections to the Special Master's report and recommendation with the Court. Such objections should be filed only on the dispute-specific miscellaneous docket (1:26-MC-04088-BMC-JAM). Any responses to objections may be filed within 21 days thereafter. No replies regarding objections shall be filed without the Court's permission. If any party objects to this Report and Recommendation, the evidence considered by the Special Master in making or recommending any findings of fact shall be filed on the dispute-specific miscellaneous docket. Such evidence may be filed under seal to protect confidentiality and the identities of claimants, as appropriate. The Court shall review the Special Master's reports and recommendations *de novo*. *See* Revised Order Appointing Special Master, 1:24-MC-03415-BMC-JAM, Doc. 3, ¶ 4.

Dated: October 13, 2026

*/s/ James Orenstein*
Special Master