UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------- x

IN RE MDL 1720 DAMAGES CLASS SETTLEMENT DISPUTES

REPORT AND RECOMMENDATION OF SPECIAL MASTER

---------------------------------------------------------------- x

1:24-MC-03415-BMC-JAM

IN RE MDL 1720 DAMAGES CLASS SETTLEMENT DISPUTE CONFLICT ID NUMBERS:

1:26-MC-04087-BMC-JAM

201906 (KAZI FOODS of NEW YORK, INC.),
202084 (KAZI FOODS of ANNAPOLIS, INC.),
202115 (KAZI FOODS of MICHIGAN, INC.), and
206033 (KAZI FOODS of FLORIDA, INC.).

---------------------------------------------------------------- x

**Parties and Representatives**:

J.E. Lawrence & Co. ("JEL")
Larry Meltzer
305 Laurel Falls Dr.
Apollo Beach, FL 33573
(201) 978-7691
larry@jelcrs.com
Representative of JEL

Park Interchange LLC ("Park")
Darren Yulfo
c/o/ HBP II LLC ("HBC")
555 Theodore Fremd Ave., Suite C-303
Rye, NY 10580
(646) 846-9105
parkinterchangeoppclaims@haybeach.com
Representative of Park

Rule 23(b)(3) Class Plaintiffs (the "Class")
Alexandra S. Bernay
Robbins Geller Rudman & Dowd LLP
655 West Broadway, Suite 1900
San Diego, CA 92101
(619) 231-1058
xanb@rgrdlaw.com
Class Counsel

I. Background

JEL and Park have both registered with the Class Administrator to claim a share of the proceeds of the settlement fund in *In re Payment Card Interchange Fee Merchant Discount Antitrust Litigation*, Dkt. no. 05-MD-1720 (E.D.N.Y.) ("*MDL 1720*") arising out of the payment card transactions of the following four merchants: Kazi Foods of New York, Inc., which has a Taxpayer Identification Number ("TIN") ending in 5008 ("Kazi-NY"); Kazi Foods of Annapolis, Inc., which has a TIN ending in 1980 ("Kazi-Annapolis"); Kazi Foods of Michigan, Inc., which has a TIN ending in 6310 ("Kazi-MI"); and Kazi Foods of Florida, Inc., which has a TIN ending in 0382 ("Kazi-FL" or, collectively with Kazi-NY, Kazi Annapolis, and Kazi-MI, the "Kazi Merchants").[1]

Park contends that it owns those claims as the result of bankruptcy proceedings and a series of transactions that conveyed the claims from the Kazi Merchants to the bankruptcy

[1] Before submitting a claim to receive the settlement proceeds corresponding to the payment card transactions of a merchant member of the Rule 23(b)(3) Settlement Class, a party must first register that merchant's TIN with the Class Administrator. The registrant must provide proof that it is the owner (or authorized representative of the owner) of the claim corresponding to that TIN. In the absence of supporting documentation, this requirement can also be satisfied by providing the Claimant ID and Control Number printed on the original prepopulated claim forms that were mailed to known class members. Once the registrant establishes such authority, the Class Administrator updates the registrant's status to "approved." If there is only one approved registrant for a given TIN, the registrant may submit a claim for that TIN. Where multiple parties have registered the same TIN, the Class Administrator designates the TIN as being in "conflict" and does not permit any registrant to submit a claim until the conflict is resolved.

estates, then to a Liquidation Trust, then to Oak Point Partners, LLC ("OPP"), and finally to Park.

JEL is a TPF that the Kazi Merchants appointed to serve as their claim filing agent.[2] It asserts that the Kazi Merchants continue to own their *MDL 1720* claims and that it may therefore register their TINs. Specifically, JEL argues that the bankruptcy proceedings resulted in the Kazi Merchants, rather than the Liquidation Trust, owning the claims. It further contends that even if the Liquidation Trust did own the claims at some point, it ceased to exist before purporting to sell the claims to OPP, and that Park was therefore unable to purchase the claims from OPP. As explained below, I conclude that Park owns the *MDL 1720* claims associated with the Kazi Merchants' TINs. I therefore respectfully recommend that the Court direct the Class Administrator to process Park's registration of those TINs and withdraw JEL's.

The record before me includes the following documents:

- *In re Kazi Foods of Michigan, Inc., et al.*, Case No. 11-43971-tjt ("*Kazi-MI*"), Doc. 48 (Bankr. E.D. Mich. Feb. 4, 2011) (debtors' application);
- *Kazi-MI*, Doc. 48 (Bankr. E.D. Mich. Feb. 24, 2011) (amended debtors' application);
- *Kazi-MI*, Doc. 107 Bankr. (Bankr. E.D. Mich. Mar. 18, 2011) (order granting amended debtors' application);
- Asset Purchase Agreement dated February 20, 2012, between the Kazi Merchants as sellers and Star KFC Realco Two, LLC and Star Partner Enterprises Two, LLC as purchasers ("2012 Kazi-Star APA");
- *Kazi-MI*, Doc. 673 (Bankr. E.D. Mich. Feb. 28, 2012) (order authorizing sale of debtors' assets and approving assignments of contracts);
- *Kazi-MI*, Doc. 735 (Bankr. E.D. Mich. Apr. 16, 2012) (motion for order authorizing settlement);

---

[2] A TPF is a business that enters into agreements with merchants to register and prosecute their claims of settlement funds in exchange for a portion of the merchants' recovery. *See MDL 1720*, 2014 WL 4966072, at *4 (E.D.N.Y. Oct. 3, 2014).

- *Kazi-MI*, Doc. 774 (Bankr. E.D. Mich. May 29, 2012) (order authorizing settlement;

- *Kazi-MI*, Doc. 877 (Bankr. E.D. Mich. Aug. 27, 2012) (Amended Combined Plan of Liquidation and Disclosure Statement) ("Plan");

- *Kazi-MI*, Doc. 957 (Bankr. E.D. Mich. Nov. 1, 2012) (order approving Plan) ("Approval Order");

- *In re Kazi Foods of New York, Inc.*, Case No. 11-47551-tjt ("*Kazi-NY*"), Doc. 103 (Bankr. E.D. Mich. Dec. 4, 2013) (order authorizing Liquidation Trust to distribute claims);[3]

- *Kazi-NY*, Doc. 106 (Bankr. E.D. Mich. Dec. 4, 2013) (stipulation for entry of order authorizing Liquidation Trust to distribute claims);

- Asset Purchase Agreement dated September 16, 2019, between the Liquidation Trust as Seller and Oak Point Partners, LLC ("OPP") as Purchaser ("2019 Trust-OPP APA");[4]

- Claim Sale Agreement dated November 17, 2020, between OPP as seller and Park as purchaser ("2020 OPP-Park CSA");

- Emails dated October 6, 2023, between HBP and the Class Administrator reflecting HBP's assignment of Kazi-MI's *MDL 1720* claim to Park;

- Email dated October 10, 2023, from HBP on behalf of Park to the Class Administrator providing a list of the alternative names/DBAs and addresses of the companies Park acquired from OPP; including an attached spreadsheet;

- Multiple Locations Client Agreement dated May 5, 2024, between Kazi Food, Inc. as Client and JEL concerning claim filing services for the Kazi Merchants among others ("2024 JEL TPF Agreement");

- Emails dated July 10-December 4, 2024, among the parties and the Class Administrator;

---

[3] The same Bankruptcy Judge presided over both *Kazi MI Bkr.* and *Kazi NY Bkr*.

[4] The 2019 Trust-OPP APA is not dated. On its last page, above the signature blocks, the document provides that it "has been duly executed as of the day and year first above written." *Id.* at 5. However, the only dates written above that provision appear in two "Whereas" recitations describing preceding events (specifically, the filing of the debtors' petitions on February 17, 2011, and the filing of the Approval Order on November 12, 2012). Park asserts that the agreement is dated September 16, 2019. Park Ltr. at 1. JEL does not dispute the date (indeed, it relies on the proposition that the sale occurred in 2019), and I have no reason to doubt it.

- Class Administrators Special Master Review Notices dated July 29, 2025, to each of JEL and Park;
- Merchant Authorization Form dated August 12, 2025, from Kazi-Annapolis designating JEL as its claim filing agent;
- Letter dated August 28, 2025, from Park to Special Master ("Park Ltr."), with attached copy of Mich. Comp. L. § 700.7817;
- Undated, unsigned, and unpaginated memorandum without addressee, "Re: Kazi Food / Oak Point / PCI," received by Class Administrator from JEL on August 28, 2025 ("JEL Memo");[5] and
- Letter dated September 12, 2025, from Park to Special Master ("Park Supp. Ltr.").

II. Analysis

Each of the Kazi Merchants filed a bankruptcy petition in the United States Bankruptcy Court for the Eastern District of Michigan in early 2011. *See Kazi MI Bkr.*, Doc. 1 (Bankr. E.D. Mich. Feb. 17, 2011); *In re Kazi Foods of Florida, Inc.*, Case No. 11-43986-tjt, Doc. 1 (Bankr. E.D. Mich. Mar. 21, 2011); *Kazi NY Bkr.*, Doc. 1 (Bankr. E.D. Mich. Mar. 21, 2011); *In re Kazi Foods of Annapolis, Inc.*, Case No. 11-47556-tjt, Doc. 1 (Bankr. E.D. Mich. Mar. 21, 2011). Upon the filing of those petitions, all of the Kazi Merchants' assets, including their respective *MDL 1720* claims, became the property of the bankruptcy estate. The four petitions were later administratively consolidated.

In 2012, the debtors proposed, and the bankruptcy court then confirmed, a liquidation plan. *See Kazi-MI*, Doc. 877 (Plan); *id.*, Doc. 957 (Approval Order). Late the next year, by which point the four Kazi Merchants' petitions had been administratively consolidated, the bankruptcy

[5] The JEL appears to be an internal memo from someone writing in the first person making recommendations to someone else about what arguments to make here. *See*, *e.g.*, *id.* at 2nd unnumbered page (observing that "I can find no evidence that the Trust took any action after 2013" and advising that "we should attempt to nullify the claims of Park"). I nevertheless assume that the arguments set forth in the JEL Memo represent the legal basis for its position here.

court confirmed the debtors' liquidation plan. As relevant here, the approved Plan established the Liquidation Trust and vested in it all of the Kazi Merchants' causes of action and any other assets of the bankruptcy estate that had not previously been sold. *See* Plan §§ 1.13 (defining "Causes of Action"), 1.46 (defining "Liquidation Trust"), 1.49 (defining "Liquidation Trust Assets"), 6.3 (vesting Liquidation Trust Assets in the Liquidation Trust as of the Plan's effective date).[6] Thus, as of the Plan's effective date, the Liquidation Trust owned the *MDL 1720* claims associated with the Kazi Merchants' TINs.

JEL argues to the contrary and in particular contends that under the Plan, the reorganized Kazi Merchants owned (and therefore still own) the *MDL 1720* claims associated with their TINs. JEL makes the following argument:

> All of the Kazi entities were corporations. The Plan specifically states "In the case of a corporation that is liquidating and not continuing business, as in this case: Claims and interests will not be discharged. Creditors and shareholders will not be prohibited from asserting their claims or interests in the debtors or its assets." (ECF 377, Section III, E, 2). Because it was the specific intent of the Kazi entities to reorganize, not liquidate under Chapter 7, the Kazi entities maintain the right to pursue interests – including this settlement.

JEL Ltr. at 2nd unnumbered page.[7] That argument has two fundamental flaws.

First, JEL's quotation is misleadingly selective. In particular it omits the introductory text "Except as provided in the Plan:" – a phrase that makes the language on which JEL relies irrelevant. What is "provided in the Plan" is that the causes of action previously belonging to the debtors, such as those at issue here, become the property of the Liquidation Trust. Thus even if

---

[6] An earlier court-approved sale of certain assets did not convey ownership of the Kazi Merchants' causes of action. *See id*., Doc. 561 (emergency motion to sell certain assets filed on Dec. 19, 2011); *id*., Doc. 577 (order granting motion dated Dec. 22, 2011); 2012 Kazi-Star APA.

[7] The document JEL cites, ECF 377, has no relevance here. The quoted text is from Section III.E.2 of the Plan, which is document number 877.

the text of the provision JEL cites had anything to do with the Kazi Merchants' *MDL 1720* claims – which it does not, as discussed below – it would not override the Plan's conveyance of those causes of action to the Litigation Trust.

Second, even taking JEL's improperly truncated quotation at face value (that is, by ignoring the text JEL omitted), it does not support JEL's conclusion. Section III.E.2 explicitly applies only to "[c]reditors and shareholders" and to those creditors' and shareholders' rights to assert "claims or interests *in the debtors* or its assets." Plan at 39, § III.E.2 (emphasis added). The Kazi Merchants were not creditors or shareholders, they were debtors.[8] Further, the *MDL 1720* claims associated with the Kazi Merchants' TINs were not "claims or interests *in* the debtors," they were claims *of* the debtors against others. The provision JEL cites simply does not pertain to those claims.

Thus, it was the Liquidation Trust, not the Kazi Merchants, that owned the relevant *MDL 1720* claims at the end of the bankruptcy proceedings. That fact alone suffices to defeat JEL's position. JEL contends that at the time of the 2019 Trust-OPP APA, the Liquidation Trust no longer existed and thus was unable to sell the *MDL 1720* claims associated with the Kazi Merchants' TINs to OPP. Even if that is true – and as discussed below, it is not – that does not

---

[8] JEL cannot reasonably have believed otherwise. Immediately below the text it partially quotes, the Plan explicitly identifies all of the Kazi Merchants as "Debtors" as reproduced below:

> WHEREFORE, the Debtors, respectfully submit this Combined Plan and Disclosure Statement.
>
> Respectfully submitted,
> Kazi Foods of Michigan, Inc.
> Kazi Foods of Florida, Inc.
> Kazi Foods of New York, Inc.
> Kazi Foods of Annapolis, Inc.

*Id*.

mean that the Kazi Merchants regained ownership of those claims and may therefore have their agent JEL register them. Instead, even assuming that the Liquidation Trust's expiration made its 2019 sale of *MDL 1720* claims to OPP invalid, JEL would still have the burden to show how the Kazi Merchants, who did not own such claims at the end of the bankruptcy proceedings, came to possess them now. It has made no attempt to do so.

In any event, JEL's argument that the 2019 Trust-OPP APA was invalid is meritless. JEL accurately points out that under the Plan, "Termination of the Liquidation Trust shall automatically occur no later than one (1) year after the Effective Date, unless the Bankruptcy Court shall approve an extension based upon a finding that such an extension is necessary for the Liquidation Trust to complete its purpose." Plan § 6.14 (cited in JEL Ltr. at 1st page). JEL also acknowledges that under the applicable law of Michigan, a trustee has authority to wind up a trust's affairs after the trust terminates. *See* JEL Ltr. at 1st page; Plan § 11.1 (choice of law provision); Mich. Comp. L. § 700.7817(nn) (empowering trustee "[o]n termination of the trust, to exercise the powers appropriate to wind up the administration of the trust and distribute the trust property to the persons entitled to it."). On its face, that law authorizes the Liquidation Trustee to wind down the Liquidation Trust by selling its assets even after the trust expires.

JEL's argument to the contrary is unpersuasive. It starts by misconstruing an inapposite case from the Fifth Circuit:

> The Courts have held that documents forming a trust are to be treated as contracts. The term of the Trust is limited by the formation instrument (in this case, the Plan) and any subsequent amendment (here, none). Golding [sic] v. Barholow [sic],[ ]166 F.3d 710 (5th Cir 1999).

JEL Ltr. at 1st page.

As best I can understand the argument, JEL's point is that the Plan is a "document[] forming a trust" and it therefore must be treated as a binding contract, the terms of which

supersede any applicable law concerning the powers of a trustee. That is not what the case JEL cites holds or even remotely suggests. In *Goldin v Bartholow*, the court did not hold that "documents forming a trust are to be treated as contracts." What it said on the matter was no more than that "we interpret trust instruments as we do contracts" – that is, using the same interpretive tools in both contexts. 166 F.3d at 715. The court went on to observe that "[t]he interpretation of a contract is a question of law which we review *de novo*" and that the trust instrument at issue in that case "by its express terms, is to be construed under Texas law." *Id*. Applying that principal here would lead directly to the conclusion JEL seeks to avoid; namely, that the Plan is to be interpreted under Michigan law, which authorizes a trustee to wind down a trust's affairs after the trust's expiration.[9]

JEL's argument that the 2019 Trust-OPP APA was invalid also relies on a misapplication of the *ECD* opinion. JEL correctly observes that in *ECD*, "the Trust document expressly provided the Trustee the authority and duty to continue prosecuting an adversarial proceeding after the termination of the trust. There is no such provision in the current trust." JEL Ltr. at 1st

[9] As another case JEL cites acknowledged, "[t]he liquidating trust in *Goldin* did not contain any provision giving any winding-up authority after termination, and the court relied on Texas law governing trusts to conclude that no such winding-up authority existed." *In re Energy Conversion Devices, Inc.*, 634 B.R. 537, 541 (Bankr. E.D. Mich. 2021) ("*ECD*"). Here, in contrast, applicable Michigan law does confer such wind-up authority. *Goldin* is materially dissimilar to this case in other ways as well. In particular, the plaintiff in *Goldin* was the trustee of a liquidating trust who sought to keep his own adversary proceeding against the debtor's officers and directors alive by asking the bankruptcy court to extend the trust's term. The district court (after withdrawing the referral to the bankruptcy court) denied the request and ordered the trustee to turn over all trust assets to the district court clerk. *See id*. at 714. Thus, the issue in *Goldin* had nothing to do with the interplay between the trust's scheduled termination date and the trustee's statutory authority to continue taking action to wind down the trust's affairs after that date. Instead, the issue there was a trustee's attempt to advance his personal interest by seeking a court-ordered extension of the trust's termination date. Even if a Fifth Circuit's decision applying Texas law could be considered authoritative in a case in the Eastern District of New York applying the law of Michigan (which it is not), *Goldin* would offer no relevant guidance here.

page. JEL appears to argue that because the Plan had no comparable provision explicitly conferring wind-down authority on the Liquidation Trustee, such authority cannot be provided by the Michigan statute. Neither logic nor anything in the *ECD* opinion supports that argument.

If the Plan explicitly denied the Liquidation Trustee authority to wind down the Liquidation Trust's affairs after the termination date, both Michigan law and the decision in *ECD* would compel the conclusion that the trustee lacked such authority notwithstanding the text of Section 700.7817(nn). *See ECD*, 634 B.R. at 542 ("with exceptions not applicable here, the terms of the trust itself 'prevail over any provision' in the Michigan statutes" (citing Mich. Comp. L § 700.7105(2)). But the Plan does not deny such authority to the trustee; it simply does not address the matter. There is thus no Plan provision that is inconsistent with, and must therefore prevail over, Section 700.7817(nn). If JEL's interpretation were correct, the entirety of Section 700.7817, which confers a number of powers on a trustee, would be a dead letter. The only way a trustee could have such powers would be to have them spelled out in a trust document because the failure to do it would be deemed inconsistent with state law. JEL's interpretation must therefore be rejected because it nullifies a statute.

I therefore conclude that notwithstanding the termination of the Liquidation Trust, the Liquidation Trustee had the authority to convey the *MDL 1720* claims at issue here to OPP in 2019. OPP then sold those claims to Park in 2020. *See* 2020 OPP-Park CSA. As the current owner of those claims, Park has the authority to register the *MDL 1720* claims associated with the Kazi Merchants' TINs with the Class Administrator.

I do not discount the possibility that the Kazi Merchants may have some enforceable right against some other party arising out of the disposition of their *MDL 1720* claims. But the Kazi Merchants must assert any such claim against whatever party is liable to them rather than as a

direct claim for a portion of the settlement fund. JEL has not mentioned the possibility of any such lawsuit, and I do not address its merits here. Further, I would recommend against adjudicating any such claim within the *MDL 1720* litigation. As this Court has already held, such ancillary claims "do not fall under this Court's retained settlement jurisdiction" but must instead be litigated "in independent lawsuits, outside of MDL 1720." *In re MDL 1720 Damages Class Settlement Disputes*, 2026 WL 2389790, at *1 (E.D.N.Y. Aug. 17, 2026).

III. Recommendation

For the reasons set forth above, I respectfully recommend that the Court direct the Class Administrator to process Park's registration of the Kazi Merchants' TINs and withdraw JEL's.

IV. Objections

This Report and Recommendation will be served on JEL and Park via the Court's ECF system, and the Class Administrator will also promptly provide a copy to both. Any interested party shall have 21 days from today's date to file objections to the Special Master's report and recommendation with the Court. Such objections should be filed only on the dispute-specific miscellaneous docket (1:26-MC-04087-BMC-JAM). Any responses to objections may be filed within 21 days thereafter. No replies regarding objections shall be filed without the Court's permission. If any party objects to this Report and Recommendation, the evidence considered by the Special Master in making or recommending any findings of fact shall be filed on the dispute-specific miscellaneous docket. Such evidence may be filed under seal to protect confidentiality and the identities of claimants, as appropriate. The Court shall review the Special Master's

reports and recommendations *de novo*. *See* Revised Order Appointing Special Master, 1:24-MC-03415-BMC-JAM, Doc. 3, ¶ 4.

Dated: October 9, 2026

*/s/ James Orenstein*
Special Master