UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE MDL 1720 DAMAGES CLASS SETTLEMENT DISPUTES | REPORT AND RECOMMENDATION OF SPECIAL MASTER |
| | 1:24-MC-03415-BMC-JAM |
| IN RE MDL 1720 DAMAGES CLASS SETTLEMENT DISPUTE CONFLICT ID NUMBERS: 144996 (BROWN CUSTOMER DELIGHT GROUP, LP) | 1:26-MC-04116-BMC-JAM |

**Parties and Representatives**:

Brown Customer Delight Group, LP ("BCDG")
Larry Brown
1500 Horton Lane
Overland Park, KS 66223
(612) 716-1979
BCDG.larry219@gmail.com
Representative of BCDG

Park Interchange LLC ("Park")
Darren Yulfo
555 Theodore Fremd Ave., Suite C-303
Rye, NY 10580
(646) 846-9105
parkinterchangeoppclaims@haybeach.com
Representative of Park

Rule 23(b)(3) Class Plaintiffs (the "Class")
Alexandra S. Bernay
Robbins Geller Rudman & Dowd LLP
655 West Broadway, Suite 1900
San Diego, CA 92101
(619) 231-1058
xanb@rgrdlaw.com
Class Counsel

I. <u>Background</u>

BCDG, which has a Taxpayer Identification Number ("TIN") ending in 6987, and Park have both registered with the Class Administrator to claim a share of the proceeds of the settlement fund in *In re Payment Card Interchange Fee Merchant Discount Antitrust Litigation*, Dkt. no. 05-MD-1720 (E.D.N.Y.) ("*MDL 1720*") arising out of the payment card transactions of certain McDonald's restaurants.[1] The parties appear to agree that BCDG originally owned the *MDL 1720* claim associated with its TIN. BCDG contends that it still owns the claim, that Park's registration of the TIN was fraudulent, and that Park has in any event withdrawn its claim. Park asserts that after BCDG filed a bankruptcy petition in 2016, its *MDL 1720* claim became the property of the BCDG Priority and Unsecured Creditors Trust ("Trust"), that the Trust later sold the claim to Oak Point Partners, LLC ("OPP"), and that OPP then sold the claim to Park. As discussed below, I conclude that Park owns the claim and therefore respectfully recommend that the Court direct the Class Administrator to process Park's registration and withdraw BCDG's.

The record before me includes the following documents:

- Voluntary Petition for Non-Individual Filing for Bankruptcy, *In re BCDG, LP*, Case No. 16-02263-als11 ("*BCDG*"), Doc. 1 (Bankr. S.D. Iowa, Nov. 18, 2016) ("Petition");

[1] Before submitting a claim to receive the settlement proceeds corresponding to the payment card transactions of a merchant member of the Rule 23(b)(3) Settlement Class, a party must first register that merchant's TIN with the Class Administrator. The registrant must provide proof that it is the owner (or authorized representative of the owner) of the claim corresponding to that TIN. In the absence of supporting documentation, this requirement can also be satisfied by providing the Claimant ID and Control Number printed on the original prepopulated claim forms that were mailed to known class members. Once the registrant establishes such authority, the Class Administrator updates the registrant's status to "approved." If there is only one approved registrant for a given TIN, the registrant may submit a claim for that TIN. Where multiple parties have registered the same TIN, the Class Administrator designates the TIN as being in "conflict" and does not permit any registrant to submit a claim until the conflict is resolved.

- Debtor's Motion for Order Authorizing Sale of Assets Free And Clear Of Liens, Claims and Encumbrances, *BCDG*, Doc. 45 (Bankr. S.D. Iowa, Dec. 5, 2016) ("Motion for Sale");

- Debtor's Motion for Order Authorizing the Debtor to Assume and Assign Executory Contracts and Unexpired Leases, *BCDG,* Doc. 48 (Bankr. S.D. Iowa, Dec. 5, 2016);

- Order Authorizing Sale of Assets Free and Clear of Liens, Claims and Encumbrances, *BCDG*, Doc. 103 (Bankr. S.D. Iowa, Jan. 4, 2017);

- Official Committee of Unsecured Creditors' Combined Plan of Liquidation and Disclosure Statement, *BCDG*, Doc. 149 (Bankr. S.D. Iowa, Mar. 22, 2017);

- Notice of Revised Exhibit 1.2.28 to Plan, *BCDG*, Doc. 159 (Bankr. S.D. Iowa, Mar. 29, 2017);

- Modification to Official Committee of Unsecured Creditor's Combined Plan of Liquidation and Disclosure Statement, *BCDG*, Doc. 178 (Bankr. S.D. Iowa, May 4, 2017);

- Order Confirming Chapter 11 Plan, *BCDG*, Doc. 191 (Bankr. S.D. Iowa, May 17, 2017);

- Asset Purchase Agreement dated January 8, 2019, between BCDG Priority and Unsecured Creditors Trust ("Trust") as Seller and Oak Point Partners, LLC ("OPP") as Purchaser ("2019 Trust-OPP APA");

- Claim Sale Agreement dated November 29, 2021, between OPP as Seller and Park as Buyer ("2021 OPP-PARK CSA")

- Notice of Assignment date November 30, 2021, notifying Class Administrator of OPP's assignment of claims to Park ("2021 OPP-Park Assignment");

- Emails from BCDG to Class Administrator dated:

    - August 2, 2024;

    - October 18, 2024;

    - October 22, 2024;

    - January 10, 2025; and

    - January 29, 2025;

- Letter dated July 30, 2025, from BCDG to Special Master ("BCDG 7/30/25";

- Letter dated August 28, 2025, from BCDG to Special Master ("BCDG 8/28/25");
- Letter dated August 28, 2025, from Park to Special Master ("Park 8/28/25");
- Undated supplemental letter from BCDG to Special Master received by Class Administrator on August 29, 2025 ("BCDG 8/29/25"); and
- Supplemental letter dated September 12, 2025, from Park to Special Master ("Park 9/12/25").[2]

II. Analysis

BCDG filed a voluntary bankruptcy petition on November 18, 2016.[3] At that point, its assets, including its *MDL 1720* claim, became the property of the bankruptcy estate. On December 5, 2016, the BCDG Debtor sought leave to sell assets that it briefly described as "substantially all of the Debtor's assets used in connection with the operation of each of" several McDonald's franchises to McDonald's Restaurants of Iowa, Inc. ("MRI"). Motion for Sale ¶ 4. The motion included a copy of the proposed sale agreement (the "Debtor-MRI APA"). *See id*. at 11th page (first page of Debtor-MRI APA). The latter document had a more detailed description of the assets to be sold:

> Assets To Be Sold Hereunder. SELLER agrees upon the terms and conditions set forth herein to grant, convey, sell, assign and transfer to PURCHASER on the EFFECTIVE DATE, all of the tangible and intangible assets, excluding certain assets as listed below, affecting, or used in connection with and in the conduct and operation of the RESTAURANT of every kind and description wherever located including, but not limited to: (a) any and all franchise rights and agreements,

[2] Park reports that it has not received copies of BCDG's submissions, which BCDG was required to provide. Park 9/12/25 at 1. Park asks for an opportunity to review and respond to BCDG's submissions. While I respectfully request that the Class Administrator provide copies of BCDG's submissions to Park, I deny as unnecessary Park's request to respond to them. Park remains free to respond to BCDG's arguments in litigating any objections to this report and recommendation.

[3] The petition identified the Debtor as "BCDG, LP" with a TIN ending in 6987. Petition at 1. Larry Brown signed the document as President of Brown Customer Delight Group, Inc., which in turn was identified as the General Partner and authorized representative of BCDG, LP. *Id*. at 4. Mr. Brown is also the author of all of BCDG's emails to the Class Administrator and letters to me.

> including, but not limited to, license(s), offers of new term franchise(s), exclusive territory rights, rights of first refusal, option(s), sublease(s), lease(s), and all other rights received or obtained from McDonald's USA, LLC, its parent, predecessor, subsidiaries or affiliates (hereinafter collectively referred to as "McDonald's"); and (b) all RESTAURANT operating supplies, uniforms, promotional material, food and paper goods inventory, gift certificates, cash on hand, equipment, furniture, machinery and signs. The following are excluded from the assets conveyed to PURCHASER: (a) cash in banks; (b) accounts and notes receivable; (c) vehicles; (d) investment securities; (e) worker's compensation and utility deposits; and (f) office equipment and supplies.

Debtor-MRI APA § 1.2. That list of assets made no explicit mention of any pending litigation claims that BCDG might possess, including its rights as a member of the then putative class in *MDL 1720*.[4] The bankruptcy court granted the motion on January 4, 2017. *See BCDG*, Doc. 103.

The *BCDG* Official Committee of Unsecured Creditors submitted a proposed liquidation plan on March 22, 2017, and modified the proposal on March 29 and May 4, 2017. *See BCDG*, Docs. 149, 159, 178. The bankruptcy approved the proposed plan, as modified (the "Plan") on May 17, 2017. *See id.*, Doc. 191. As approved, the Plan created a Creditors Trust, *see* Plan § 1.2.28, and vested in that trust "all assets of the Debtor, Debtor-in-Possession and the Estate, not otherwise sold or transferred in the Bankruptcy Case by a Final Order of the Court, wherever situated[.]" *Id* § 4.2. The Plan further contemplated the Creditors Trust's appointment of a Liquidating Agent, *see id*. §4.4, to whom was assigned "all rights of the Debtor to commence and pursue any and all Causes of Action[.]" *Id*. § 4.6. Thus, upon the Plan's effective date, the

[4] BCDG does not contend that the *MDL 1720* claim associated with its TIN was among the assets conveyed to MRI and disavows any relationship between itself (or its owner and CEO Larry Brown) and MRI. *See* BCDG Supp. Ltr. at 1. There thus appears to be no disagreement among the parties that the relevant *MDL 1720* claim remained the property of the bankruptcy estate after the Debtor-MRI APA. In that regard, I note that there is nothing in the record to suggest that any party notified the Class Administrator that BCDF (or anyone else) had assigned that claim to MRI.

Creditors Trust owned the *MDL 1720* claim associated with BCDG's TIN, and the trust's Liquidating Agent had authority to dispose of that claim.

The Creditors Trust, acting through its Liquidating Agent, sold the claim to OPP on January 8, 2019. *See* 2019 Trust-OPP APA. OPP then sold the claim to Park in 2021. *See* 2021 OPP-Park CSA. Pursuant to the latter sale, on November 30, 2021, OPP notified the Class Administrator that it had transferred the claim to Park. *See* 2021 OPP-Park Assignment.

Based on the foregoing, I conclude that Park owns the claim associated with BCDG's TIN and properly registered it. In arguing to the contrary, BCDG does not dispute any of the facts about the bankruptcy proceedings or subsequent claim sales recited above. Instead, it simply makes unexplained and unsupported assertions that Park has committed fraud and has in any event withdrawn its claim. *See* BCDG 7/30/25 at 1; BCDG 8/28/25 at 1-2; BCDG 8/29/25 at 1. Nothing in the record before me in any way supports either of those assertions. To the contrary, the record of the bankruptcy proceedings and subsequent transactions support Park's position, and Park's submissions to the Class Administrator and to me belie the proposition that it has ever withdrawn its claim.

III. <u>Recommendation</u>

For the reasons set forth above, I respectfully recommend that the Court direct the Class Administrator to process Park's registration and withdraw BCDG's.

IV. <u>Objections</u>

This Report and Recommendation will be served on BCDG and Park via the Court's ECF system, and the Class Administrator will also promptly provide a copy to both. Any interested party shall have 21 days from today's date to file objections to the Special Master's report and recommendation with the Court. Such objections should be filed only on the dispute-specific

miscellaneous docket (1:26-MC-04116-BMC-JAM). Any responses to objections may be filed within 21 days thereafter. No replies regarding objections shall be filed without the Court's permission. If any party objects to this Report and Recommendation, the evidence considered by the Special Master in making or recommending any findings of fact shall be filed on the dispute-specific miscellaneous docket. Such evidence may be filed under seal to protect confidentiality and the identities of claimants, as appropriate. The Court shall review the Special Master's reports and recommendations *de novo*. *See* Revised Order Appointing Special Master, 1:24-MC-03415-BMC-JAM, Doc. 3, ¶ 4.

Dated: October 13, 2026

*/s/ James Orenstein*
Special Master