UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------- x

IN RE MDL 1720 DAMAGES CLASS SETTLEMENT DISPUTES

REPORT AND RECOMMENDATION OF SPECIAL MASTER

---------------------------------------------------------------- x

1:24-MC-03415-BMC-JAM

IN RE MDL 1720 DAMAGES CLASS SETTLEMENT DISPUTE CONFLICT ID NUMBER:

146607 (NORTHEAST VALLEY HEALTH CORP.)

1:26-MC-04265-BMC-JAM

---------------------------------------------------------------- x

**Parties and Representatives**:

Class Action Capital Recovery ("CACR")
Steven Giannotti
PO Box 1477
New York, NY 10113
(914) 898-9276
steven@classactioncapital.com
Representative of CACR

Claims Compensation Bureau ("CCB")
Amanda Bender
130 Corporate Blvd.
Norfolk, VA 23502
(610) 834-9010
analyst@claimscompensation.com
Representative of CCB

Rule 23(b)(3) Class Plaintiffs (the "Class")
Alexandra S. Bernay
Robbins Geller Rudman & Dowd LLP
655 West Broadway, Suite 1900
San Diego, CA 92101
(619) 231-1058
xanb@rgrdlaw.com
Class Counsel

I. Background

CACR and CCB have both registered with the Class Administrator to claim a share of the proceeds of the settlement fund in *In re Payment Card Interchange Fee Merchant Discount Antitrust Litigation*, Dkt. no. 05-MD-1720 (E.D.N.Y.) ("*MDL 1720*") arising out of the payment card transactions of Northeast Valley Health Corp. ("NEVH"), which has a Taxpayer Identification Number ("TIN") ending in 0632.[1] Each registrant is a TPF that has signed a claim filing service agreement with NEVH.[2] NEVH has not responded to any notices about the instant conflict and neither has specified the TPF it now authorizes to act as its claim filing agent. I respectfully recommend that the Court direct the Class Administrator to withdraw both registrations without prejudice to either registrant's right to refile its registration with a Merchant Third-Party Authorization Form ("MAF") completed by and authorized representative of NEVH authorizing the registrant to serve as NEVH's agent.

The record before me includes the following documents:

- Claim Recovery Authorization dated December 7, 2018, between CACR and NEVH, signed by Chief Financial Officer Patricia Moraga on NEVH's behalf;

[1] Before submitting a claim to receive the settlement proceeds corresponding to the payment card transactions of a merchant member of the Rule 23(b)(3) Settlement Class, a party must first register that merchant's TIN with the Class Administrator. The registrant must provide proof that it is the owner (or authorized representative of the owner) of the claim corresponding to that TIN. In the absence of supporting documentation, this requirement can also be satisfied by providing the Claimant ID and Control Number printed on the original prepopulated claim forms that were mailed to known class members. Once the registrant establishes such authority, the Class Administrator updates the registrant's status to "approved." If there is only one approved registrant for a given TIN, the registrant may submit a claim for that TIN. Where multiple parties have registered the same TIN, the Class Administrator designates the TIN as being in "conflict" and does not permit any registrant to submit a claim until the conflict is resolved.

[2] A TPF is a business that enters into agreements with merchants to register and prosecute their claims of settlement funds in exchange for a portion of the merchants' recovery. *See MDL 1720*, 2014 WL 4966072, at *4 (E.D.N.Y. Oct. 3, 2014).

- Claim Service Agreement dated December 13, 2022, between CCB and NEVH, signed by CFO Patricia Moraga on NEVH's behalf;
- Class Administrator's Conflict Notice dated April 5, 2024;
- Email dated May 23, 2024, from CCB to NEVH (with copies to CACR and the Class Administrator) notifying NEVH of the conflict and requesting response authorizing CCB to proceed as NEVH's agent;
- Class Administrator's Conflict Determination Notice dated February 11, 2025 ("CA 2/11/25");
- Undated, untitled table of merchant names and associated conflict numbers, submitted by CACR along with the Claim Recovery Authorization in response to CA 2/11/25;
- Email dated December 2, 2025, to Class Administrator seeking Special Master's review, including an attached spreadsheet listing all conflicts as to which CCB seeks such review;
- Class Administrator's Appeal Notice dated December 12, 2025; and
- Letter dated January 22, 2026, from CCB to Class Administrator.

II. Analysis

NEVH has authorized both CACR and CCB to act as its claim filing agent, and both have now registered NEVH's TIN. The Class Administrator can process only one of those registrations. Neither TPF has an inherent advantage in this conflict – each has entered into what appears to be a facially valid agency agreement with NEVH. Where the parties cannot resolve such conflicts on consent, the Class Administrator sends them a Conflict Determination Notice explaining what a TPF must do by a specified deadline in order to proceed with the registration. Those requirements include (1) submitting a signed contract or power of attorney authorizing the filer to act on the merchant's behalf, (2) a completed MAF executed by an authorized principal or officer of the merchant and designating the TPF the merchant chooses to proceed on its behalf, and (3) all correspondence among the filers and the merchant concerning the conflict. *See*

CA 2/11/25. The notice goes on to explain how the conflict will be handled after the submission deadline:

> The Special Master has instructed the Class Administrator that in any case in which one filer fulfills these requirements by [deadline] and the other filer(s) do not, the Special Master's preliminary determination in these circumstances is that the authorization request submitted by the former will be processed and the other(s) will be withdrawn. If no filer fulfills the above requirements, the claim will remain on hold due to the conflict until one filer fulfills all of these requirements. Please note this is not a determination on the validity of any representation contract you may have with the Merchant.

*Id*.

CACR and CCB have both submitted their TPF agreements with NEVH, but neither has submitted a completed MAF designating it as NEVH's preferred agent. The Class Administrator therefore has not yet processed or withdrawn either party's registration of NEVH's TIN. On December 2, 2025, CCB sought my review of the matter. The Class Administrator then sent a notice to CCB and CACR setting a deadline for any further submissions. CCB submitted a letter noting that it had satisfied the first and third requirements of the Conflict Determination Notice but did not submit a completed MAF or acknowledge the requirement to do so. CACR did not submit anything further.

In setting deadlines and specifying the filing requirements described above, the Class Administrator implemented conflict resolution procedures that I have developed, working in conjunction with the Class Administrator, to protect class members' rights. The Court has explicitly authorized me to institute such dispute-resolution procedures. *See* Revised Order Appointing Special Master, 1:24-MC-03415-BMA-JAM, Doc. 3, ¶ 2 ("Subject to the procedures set forth herein, the Special Master shall have discretion to determine the appropriate procedures for resolution of all matters within his or her appointment and shall have the authority to take all appropriate measures to perform the assigned duties.").

The MAF requirement reflects my view that where multiple parties register the same TIN, the existence of a prior contract between a merchant and a TPF is not a sufficient basis to process any of those registrations. On the other hand, the submission of a valid, completed MAF is a sufficient basis to do so because it is blackletter law that a principal generally has the power to revoke an agent's authority, regardless of the existence of any contract between the two under which that revocation may constitute a breach. *See*, *e.g.*, *United Ins. Co. v. World Wide Web*, 2011 WL 1870599, at *2-3 (E.D.N.Y. Apr. 27, 2011) ("a principal has an inviolate right to revoke its agency at any time[;]" if "in doing so, the principal violates its obligations to the agent under their contract, the agent retains the legal recourse of bringing a breach of contract claim") (citing cases), *report and recommendation adopted* 2011 WL 1843280 (E.D.N.Y. May 16, 2011); Restatement (Third) Of Agency § 3.06 (2006).[3] Thus, in cases where a merchant has appointed multiple claim filing agents, the MAF requirement empowers the merchant to resolve the conflict by exercising its power to revoke the agency of any TPF it no longer wishes to act on its behalf.

The requirement further reflects my concern that allowing multiple registrations to proceed on the basis of overlapping TPF appointments would be unworkable. It would risk delay, double payment, and an improper diminution of the funds available to other merchants.

Where a merchant is notified of the kind of conflict present here and fails to select a preferred agent, I conclude that the best course of action is to direct the Class Administrator to

---

[3] The general rule does not apply when the agent's authority is a "power given as a security." *See*, *e.g.*, *Gov't Guarantee Fund of Republic of Finland v. Hyatt Corp.*, 95 F.3d 291, 300 (3d Cir. 1996). However, a merchant's claim filing agreement with a TPF does not create such a power; it creates no more than a revocable agency relationship. *See* Restatement (Third) Of Agency § 3.12, illus. 4 (2006) (patent filing agent who will receive a share of the profits does not hold a power given as security).

withdraw all registrations without prejudice to renewal upon the submission of a valid, completed MAF. Such a resolution incentivizes each TPF to renew its efforts to communicate with the merchant and incentivizes the merchant to make a selection. If the merchant is defunct or otherwise unable to work with an agent to prosecute a claim, the resolution I propose avoids the need for any TPF to engage in needless work to prosecute the merchant's claim. It also avoids depleting the settlement fund by making a payment that belongs in the first instance to the merchant but that the merchant is unable to accept. Making such a payment to a defunct merchant's previously appointed TPF (who is not a class member) would give settlement funds to the TPF for performing work that cannot benefit a merchant member of the class.

## III. Recommendation

For the reasons set forth above, I respectfully recommend that the Court direct the Class Administrator to withdraw the registrations of both CACR and CCB without prejudice to either registrant's right to refile its registration with a valid, completed MAF authorizing the registrant to serve as NEVH's agent.

## IV. Objections

This Report and Recommendation will be served on CACR and CCB via the Court's ECF system, and the Class Administrator will also promptly provide a copy to both. Any interested party shall have 21 days from today's date to file objections to the Special Master's report and recommendation with the Court. Such objections should be filed only on the dispute-specific miscellaneous docket (1:26-MC-04265-BMC-JAM). Any responses to objections may be filed within 21 days thereafter. No replies regarding objections shall be filed without the Court's permission. If any party objects to this Report and Recommendation, the evidence considered by the Special Master in making or recommending any findings of fact shall be filed

on the dispute-specific miscellaneous docket. Such evidence may be filed under seal to protect confidentiality and the identities of claimants, as appropriate. The Court shall review the Special Master's reports and recommendations *de novo*. *See* Revised Order Appointing Special Master, 1:24-MC-03415-BMC-JAM, Doc. 3, ¶ 4.

Dated: October 21, 2026

*/s/ James Orenstein*
Special Master